# PLAINTIFF'S EXHIBIT G

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,
Plaintiff,          Case No.: 23-11851
                    Hon. Shalina D. Kumar
-vs-
CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

Defendant.

_____/

The deposition of Byron Turnquist, a Witness in the above-entitled cause, taken before Katelyn Frost Ranbarger, CER-7876, Certified Electronic Reporter and Notary Public in and for Oakland County, Michigan, via Zoom videoconference, in West Bloomfield, Michigan on the 15th day of April 2024 pursuant to the Michigan Court Rules.

APPEARANCES:

For Plaintiff:     JAN JEFFREY RUBINSTEIN (P57937)
                   THE RUBINSTEIN LAW FIRM
                   30665 Northwestern Highway, Suite 165
                   Farmington Hills, MI  48334
                   (248) 220-1415 / (248) 213-6394 Fax
                   jjr@therubinsteinfirm.com
For Defendant:     MATTHEW J. ZALEWSKI (P72207)
                   ROSATI SCHULTZ JOPPICH &
                   AMTSBUECHLER PC
                   27666 Executive Drive, Suite 250
                   Farmington Hills, MI  48331
                   (248) 489-4100 / (248) 489-1726 Fax
                   Mzalewski@rsjalaw.com

Page  1

## TABLE OF CONTENTS

                                                        PAGE

WITNESS:

BYRON TURNQUIST
    Examination by Mr. Rubinstein          3


EXHIBITS:
    Plaintiff's Exhibit Number 1           10
    Plaintiff's Exhibit Number 2           12
    Plaintiff's Exhibit Number 3           16
    Plaintiff's Exhibit Number 4           17
    Plaintiff's Exhibit Number 5           19
    Plaintiff's Exhibit Number 6           21
    Plaintiff's Exhibit Number 7           22
    Plaintiff's Exhibit Number 8           23
    Plaintiff's Exhibit Number 9           26
    Plaintiff's Exhibit Number 10          32
    Plaintiff's Exhibit Number 11          34
    Plaintiff's Exhibit Number 12          38
    Plaintiff's Exhibit Number 13          42

Page  2

West Bloomfield, Michigan

Monday, April 15, 2024

At or about 9:01 a.m.

COURT REPORTER:  Can I first have stipulation of counsel that we are taking this via Zoom videoconferencing and that I will be swearing the witness remotely?

MR. RUBINSTEIN:  So stipulated.

MR. ZALEWSKI:  And stipulated for the township.

BYRON TURNQUIST, having been first duly sworn to tell the truth was examined and testified as follows:

MR. RUBINSTEIN:  Thank you.

EXAMINATION

BY MR. RUBINSTEIN:

Q   Good morning, Mr. Turnquist.

A   Good morning.

Q   Am I saying your last name right, Turnquist?

A   Yes.

Q   All right.  My name is Jan Rubinstein.  I'm the attorney for plaintiff in this case, Gary Grossman.

A   Nice to meet you.

Q   Nice to meet you.  Have you ever been deposed before?

A   Yes.

Q   Okay.  So you know a little bit about the procedure or process?

Page  3

A   A little bit, yes.

Q   Okay.  I'll give you some brief instructions.  It's a verbal question and answer period.  I say verbal questions and answers because a lot of times in conversation we might use non-verbal communication, like shrugging our shoulders, nodding our heads, things like that.  Even speech patterns, if we use, you know, uh-hmm, uh-huh to respond to a question, I may clarify and stop you and ask you, is that a yes, is that a no, something like that.  So we do need verbal answers.

Your attorney may object at various points in time.  Typically if there is an objection, the question would still be answered unless you receive an instruction from your attorney not to answer, okay?

A   Yes.

Q   All right.  And this deposition has been noticed up pursuant to Michigan Court Rule 2.306(b)(5) and may be used for any purpose under the Court Rules and Michigan Rules of Evidence.

Do you have any questions at all?

A   Not at this time.

Q   Okay.  You said you've been deposed before; about how many times?

A   Five or six.

Q   Has it always been in the context of your capacity as fire

Page  4

MEADOWBROOK COURT REPORTING
(248) 334-6300

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

**Page 9**

Q   Okay.

A   But lots of continuing ed for fire prevention, fire safety, and, and fire investigation over the years.

Q   How often do you do continuing ed?

A   Several times a year.  Just spent three days last week in Mt. Pleasant at the fire inspector conference.  I've got a fire investigation school coming up in the beginning of May and then another one at the end of May.  And then there's local seminars and conferences that we attend for continuing ed credits.

Q   Okay.  I'm going to periodically show you just a handful of documents starting now.  I'm showing you —

MR. RUBINSTEIN:  And actually Matt, I did not send these out a hard copy yet, so I will just after we're done here.

BY MR. RUBINSTEIN:

Q   Fire Marshal Turnquist, I'm going to show you documents on my screen.  If at some point it looks like it might be easier just to get you a hard copy, let me know and we'll take a break and I'll e-mail these over to your attorney and he can forward them to you if you want to print them out.

Can you see the document that I'm now looking at on my screen?

A   I can see it.  It's kind of small.

**Page 10**

(Plaintiff's Exhibit Number 1 was marked for identification.)

BY MR. RUBINSTEIN:

Q   Okay.  On the bottom it says Plaintiff's Exhibit 1?

A   Yes.

Q   Okay.  And I'm going to make it bigger.  As we're going through these documents on the screen if it is small, if you have trouble reading it, if you want it bigger, if you want me to scroll, I sort of have control over where we go with this document so you let me know, okay?

A   Okay.  Yep.

Q   Have you ever seen this document before?

A   Yeah, I believe so.  I believe that was forwarded to me.

Q   Okay.  And this is a deposition notice for your deposition for this morning?

A   Correct.

Q   Okay.  Did you bring any documents with you?

A   No, I did not.

MR. ZALEWSKI:  And Jan, just as I did last time, I'll, I'll object to the document request as duplicative of prior discovery and not within this deponent's possession to produce, and that anything responsive has already or will be produced through the township.

MR. RUBINSTEIN:  Okay.  Thank you.

BY MR. RUBINSTEIN:

**Page 11**

Q   Fire Marshal Turnquist, how long have you known Gary Grossman?

A   Couple years ago, he gave me a — or he made a phone call and wanted me to come out and talk about access on his property, and that was the first time that I met him.  So it was probably in, I don't know, '20 or '21.

Q   Prior to that you never met him before?

A   No, I don't remember meeting him before that.

Q   Okay.  And prior to that introduction with Mr. Grossman, did you have any contact or knowledge of the property 6221 Maple Road, West Bloomfield?

A   Not significant knowledge.  I, I knew there was a, a residence back there.  At one time I believe there were a group home there that I heard firefighters talk about, but no real specific knowledge of that site.

Q   All right.  And prior to coming in contact with Mr. Grossman did you have occasion to go to that location —

A   No.

Q   — for any reason that you recall?

A   No.

Q   All right.  And when you did first — when you were first contacted by Mr. Grossman, what was the context of that contact, what was it about?

A   He wanted me to come out and evaluate access to, to his property.  I think we had a couple phone call exchanges,

**Page 12**

maybe an e-mail or two to set up an appointment to meet him out there.  And I, I remember meeting him out there.  It was pouring rain so we were out there with our umbrellas and trying not to get soaked.

Q   Okay.  Do you know why he had asked you to come evaluate the access to the property?

A   I, I don't, I don't remember the specifics of the conversation but we were looking at a bridge that was on the driveway for his property.

And then we looked at secondary egress through a — the neighborhood behind him, possibly using — he asked the, the possibility of a fire apparatus driving through an easement, which we said doesn't work.  You know, when there's snow a fire truck's not going to make it, while it's pouring rain and the ground's soft, a fire truck will just sink.  That was pretty much our — most of our conversation.  Then we also talked, I think, about the, the brush and the overgrowth on the driveway the — that restricts access.

(Plaintiff's Exhibit Number 2 was marked for identification.)

BY MR. RUBINSTEIN:

Q   Okay.  And you met with Mr. Grossman at that property more than once; is that true?

A   One other time, I believe.

3 (Pages 9 to 12)

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

(Plaintiff's Exhibit Number 4 was marked for identification.)

BY MR. RUBINSTEIN:

Q   Now we're going to just scroll to Exhibit 4.

A   Yep.

Q   Do you see my --

A   Yep.

Q   -- Plaintiff's Exhibit 4 stamp?

A   Yes.

Q   All right. Take a look at this e-mail and let me know when you're finished.

A   Yes, I'm finished.

Q   Okay. It looks like from this e-mail string that within the next couple days yourself and Mr. Grossman made arrangements for you to come back out to the property?

A   Correct.

Q   What was the purpose if you know of the second meeting?

A   I believe we were looking at some improvements that he had made to the bridge and we went back out -- we met him back out on site and discussed the bridge, looked at the bridge.

Q   And you think it was right around this time, right around April 8th or April 9th?

A   Yeah, I -- yes.

Q   Okay. What was your conclusion about the bridge after the second meeting, if you know?

Page 17

A   There was some work that had been done to the bridge, some improvements. The one thing that always stuck out in my mind was that there was some new -- I, I don't remember if it was concrete or just crushed gravel on top of some plywood that was installed underneath between the, the bridge structure and the roadway, so to say, and I questioned what happens when that plywood starts to, to deteriorate over time.

And then I believe I still requested that we had some documentation or that he could provide some documentation that it would support the weight of our apparatus.

Q   What kind of documentation regarding weight of your apparatus? What were you looking for specifically?

A   Something from an engineer or bridge expert that would -- said that -- that, that would say that that would support our -- the, the weight of our vehicles.

Q   Overall did you -- did the bridge appear to be improved?

A   It was better than it was, yes.

Q   All right. And just --

A   Like I said, I'm not --

Q   -- to be clear -- I'm sorry --

A   I'm, I'm not a bridge expert. I, I, I don't -- but it did look better than what it did the first time.

Q   Now just to be clear, Mr. Grossman did not rebuild the

Page 18

bridge or change any of the structure or the location of it, did he?

A   That I don't know. The location, no, it was in the same area. But as far as the, the base structure of the bridge, I'm not aware of what was changed or what was not changed. It was just pretty obvious that the, the top layer that would -- the vehicles would be driving on specifically had been changed.

Q   Okay. So the top layer of concrete was, was maintained; -
-

A   Yeah, and like --

Q   -- is that correct?

A   -- I said I remember the, the, the plywood sticking out from underneath the, the roadway surface.

Q   And as far as you know as you sit here today, you don't have any actual knowledge that there was anything done to the structure or the beams or anything like that?

A   Correct.

(Plaintiff's Exhibit Number 5 was marked for identification.)

BY MR. RUBINSTEIN:

Q   Okay. I'm showing you what I've marked as Plaintiff's Exhibit 5; you see that?

A   Yep.

Q   This is a blank page with the initial address information.

Page 19

Looks like there was an e-mail sent from yourself to a Robert Primeau of EGLE.

Are you familiar with this e-mail?

A   No.

Q   Okay. This was June 1 of '22.

Do you have any idea why you might have sent an e-mail like this?

A   No.

Q   And I have a blank page. Would it be fair to say you probably didn't send a blank e-mail?

A   I, I don't know if it -- if that was a -- maybe I accidentally started to respond to something and got deleted, it was a draft that never got sent. But no, I would not send a blank e-mail.

Q   All right.

A   And I don't --

Q   And have you --

A   -- I don't -- go ahead. I'm sorry.

Q   I was just going to say have you redacted any e-mails or erased anything before sending them to my office to your knowledge?

A   No, not to my knowledge. Not --

Q   Okay.

A   -- no.

Q   Okay.

Page 20

5 (Pages 17 to 20)

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

Do you see anything different about this image or is it substantially similar to you?

A   It -- it's similar.

Q   Okay. And the next image, again we see the railing but it does look like the bridge is kind of dilapidated and rotting away; do you see that?

A   Yes.

Q   Now is this the condition of the bridge when you determined that -- or had concerns that it would hold the weight of the firetruck or an ambulance?

A   I believe so. Again, I don't know exactly when these pictures were taken and they're -- the, the railings weren't installed or --

Q   Got it.

A   -- weren't in place. But yeah, the -- it was in, it was in rough shape.

Q   Did you have any -- strike that.

What made you concerned about this bridge holding the weight of a firetruck or ambulance? Was there anything visible or did you perform any testing on it?

A   No, I, I didn't perform any testing on it. It was just in rough shape. It was narrow. The lack of railings. It just -- it's a concern to take a 80,000-pound firetruck over without knowing that it can support the weight.

Q   Okay. Okay. As you were answering I scrolled to the next

Page 25

page. This looks to be in substantially similar condition to the last few photos; would you agree?

A   Yeah. Yes, I agree.

Q   All right. And then one more.

Again this is the -- roughly the condition without the railing that you saw the property in September of 2020?

A   Yes, I agree.

Q   And yet another one. You see that one?

A   Yes.

Q   And you can see or at least I can see on this image actually, it comes up clearly there's some sections of it looks like broken concrete, there's some plywood sticking up in various spots, there's some vegetation growing on the actual -- well, I don't want to call it pavement but on the surface itself; do you see all that?

A   Yes, I see that.

Q   Okay. Were these things a concern to you when you initially visited the bridge?

A   Yeah. It, it -- the, the overall structure with, with the rotting material and broken material, that, that definitely gives me cause for concern.

(Plaintiff's Exhibit Number 9 was marked for identification.)

BY MR. RUBINSTEIN:

Page 26

Q   Okay. And one more picture. This is substantially the same condition as the previous pictures?

A   I agree.

Q   Okay. Now -- and don't mind the notes on here with the poor handwriting but I'm going to scroll. This is Plaintiff's Exhibit 9. I don't know if you can read the 9 on there?

A   I, I see that, yes.

Q   And I want to scroll in a little bit.

Do you recognize this image?

A   It looks like the new and improved surface in the, the roadway leading up to it. But again when I was there, there were no railings installed.

Q   Okay. Now how about when you were there the second time in April?

A   No railings installed either time I was there.

Q   All right. Was that a concern for you?

A   Yes.

Q   Did you advise Mr. Grossman that -- either that he should have rails -- railings or that he needed to have railings or something like that?

A   I don't specifically remember that but I most likely did. I'm sure that was one of the concerns that we discussed.

Q   Okay. What about the surface concrete? Were you satisfied with the improvement, the maintenance that Mr. Grossman had

Page 27

done?

A   It looked -- I, I do remember that it looked much better and more structurally sound. But again not being a, a bridge expert, I wanted to know that it, it -- from an outside source that it would support the weight of our firetrucks.

Q   Okay. And the image that you see on your screen, is this -- well, without the railings, is this substantially what it looked like on your second visit in April of '21?

A   The area looks familiar, yes.

Q   Now do you -- in your position, did you issue code violations ever?

A   No, we just had a discussion and it sounded like he was in favor of making the improvements and, and getting that access for us. So we -- I did, did not issue any citations.

Q   All right. Do you have the ability to issue citations?

A   I do.

Q   Okay. So you basically told Mr. Grossman your concerns and he appeared willing and complied to correct those issues?

A   Yes.

Q   Okay. So it sounds like after the first visit, primarily your concerns were whether or not this bridge could hold the weight of a, of a truck, of a firetruck or an ambulance; is that correct?

A   Yes.

Page 28

7 (Pages 25 to 28)

**Page 33**

A   I don't remember reading this.

Q   All right. I am going to highlight – oh, excuse me. That's the wrong thing. I'm going to highlight a section here.
      Do you see what I just highlighted?

A   Yes.

Q   The language from your – State of Michigan's Environmental – Environment, Great Lakes, and Energy Department indicated that the work done did not appear to cause impacts to the wetlands regulated under Part 303; do you see that?

A   Yes.

Q   And it further says any impacts to the stream regulated under Part 301 and the lakes and streams of the NREPA appear to be minor; do you see that?

A   Yes.

Q   Okay. So it appears at least from that context the State of Michigan didn't find that the work done had any impact or interference on the surrounding environmental area; do you agree with that?

A   Yes. I mean I, I, I see what they wrote.

Q   Okay. Do you have any reason to disagree with that?

A   No. Again the wetlands, not an area of my expertise and I, I – to be honest I'm not that familiar with our township ordinances other than they're not supposed to do any work within 25 feet of a wetland setback.

**Page 34**

Q   I see. Okay.

A   But that's my limited knowledge.

Q   Fair enough. Fair enough.

A   Yeah, it's just because I've heard that said time and time again at planning commission meetings and, and in other cases.

Q   Okay. Relative to this property or just in general you've heard it said a lot?

A   Just in general.
      MR. RUBINSTEIN: I'm sorry. Matt, did you say something?
      MR. ZALEWSKI: No, no, I did not.
      MR. RUBINSTEIN: Okay. Sorry.
      (Plaintiff's Exhibit Number 11 was marked for identification.)
BY MR. RUBINSTEIN:

Q   All right. I'm sorry. Fire Marshal Turnquist, I'm showing you what's been marked as Plaintiff's Exhibit 11. Forgive my exhibit stamp on this page, it was a little hard to fit in.
      Do you see the page?

A   I see it, yes.

Q   And this is a lengthy exhibit. It's roughly 20 pages or so.
      Have you ever seen this before? I mean right now

**Page 35**

I'm only showing you the front page but have you ever seen this before?

A   I don't remember seeing this.

Q   Okay. Do you want me to scroll through the pages just to see if you recognize them?

A   You can.

Q   All right. So I'm going to zoom in a little bit. This is a report from an engineer retained by Mr. Grossman.

A   All right.

Q   So I'm going to just kind of quickly scroll and I want you to stop me if you want me to stop anywhere or if there's any – anything that, you know, might refresh your memory about this.

A   No, I, I, I don't remember seeing this document.

Q   Okay. All right.

A   I –

Q   Now –

A   – vaguely remember the conversation with Jason Rosell that he, he had received something and I just don't remember the outcome of that conversation.

Q   Okay. Now you had indicated your concerns to Gary Grossman. Was he supposed to contact you regarding remedying those concerns or somebody else?

A   The, the engineering documents, I would like to know. But

**Page 36**

also the – you know, working on a bridge, stuff should be submitted to the township before work is done and, and, and then after the work is done throughout the permit process.

Q   All right. And you said, I believe, that you believe Jason Rosell received some sort of report from my client?

A   I – my memory wants to tell me that there was – I had a conversation with Jason that he received something and he may have needed more information. I, I don't recall a hundred percent what that conversation was.

Q   All right. What's Jason's position with the, with the township?

A   I believe he's in the engineering department.

Q   Now without being too redundant, on the highlighted section on this first page indicates "This structure is capable of supporting any and all legal loads that are allowed to drive on Michigan roads without any concerns"; do you see that?

A   Yes.

Q   And it's stamped by an engineer?

A   Yes.

Q   Now – and I know that you haven't had an opportunity to review all the pages of this in this deposition, of course, but is an engineering report like this something that you were looking to see to verify that the trucks could pass safely?

9 (Pages 33 to 36)

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

A   Yes.

Q   And this would've satisfied that the firetrucks and the ambulances and any other emergency or nonemergency vehicles could travel over that bridge without an issue?

A   Yes, I, I, I believe so.  I'm going to take the advice of both engineering firms.

Q   All right.  So as you sit here today, now seeing this report -- well, both reports from both engineers, do you have any concerns about this bridge in the condition that my client improved it to?

A   No.  Unless there's been some change to it recently.  I, I, I think that were -- you know, and again I, I -- Mr. Grossman was always understanding with our concerns and was always in favor of working towards those concerns, and I knew that the -- he had made improvements.

   Again, I -- there -- I do recall a conversation with Jason Rosell.  I don't remember these, but yeah, with these reports and letters I don't have any concerns driving over that bridge.

Q   All right.  Now you may --

A   That's as long as -- I'm sorry.  I guess --

Q   I'm sorry.  Go ahead.

A   I'll throw, I'll throw in there as long it's properly maintained over the years.  If it deteriorates to the condition where it was I'll, I'll have concerns again.

Page 41

Q   Understood.  Now you used the word improvements a couple of times as it relates to this bridge.

   Really my client just rehabilitated the bridge that was there; is that a true statement?

A   Well, I, I think a improvement, rehabilitated, I think that's all making it better.  And that's where I say improvement, it's making the, the condition better.

   (Plaintiff's Exhibit Number 13 was marked for identification.)

BY MR. RUBINSTEIN:

Q   Okay.  Now I'm going to show you my final exhibit.  Well, it says Exhibit 1 at the top, but ignore that.  This is my Exhibit 13.

A   Okay.

Q   I don't know if you've ever seen this before and I can zoom in if it might help?

A   I, I -- I'm not familiar with this bridge definition or application process.  I'm not familiar with that.

Q   Okay.  And this is Michigan Department of Transportation's definitions regarding bridges, okay?  This comes from their website.  I'm just going to direct your attention to the third page, I believe.  All right.

   Now there's a couple of definitions identified here.  I'm not going to highlight them because that's not necessarily helpful.  But do you see the area -- the section

Page 42

marked replacement?  Let me make it a little bigger.

A   Yeah, yeah, I see it.

Q   All right.  And this starts with -- without reading out loud the entire thing, the first sentence says "Replacement projects involve replacing the entire substructure, substructure deck, and necessary approach way"; do you see that?

A   Yes.

Q   This is not what was done on this bridge; is that correct?

A   I don't believe this was what was done on the, on the bridge.

Q   Okay.  Now there's also a definition of rehabilitation and I'm just going to read the first line.  "Rehabilitation is defined as major work required to restore the structural integrity of a bridge, as well as work necessary to correct major safety defects."

   Do you believe that the work done on this bridge would fall under this definition of rehabilitation?

A   I don't object to that definition, no.

Q   All right.

A   So yeah -- yes, I, I, I agree.

Q   All right.

   MR. RUBINSTEIN:  Matt, we're going pretty fast.  Actually I'm, I'm not going to take that much longer.  I anticipate maybe 20 or 30 minutes, tops, maybe less.  Let's

Page 43

take a quick break.  Let me just review some notes and get back with you guys in 5, 10 minutes.

   MR. ZALEWSKI:  Okay.  Sounds good.

   MR. RUBINSTEIN:  All right.  Thank you, gentleman.

   (Off the record at 9:54:47 a.m.)

   (On the record at 10:02:55 a.m.)

BY MR. RUBINSTEIN:

Q   All right.  Fire Marshal Turnquist, when you went to the property at 6221 Maple, West Bloomfield, either the first or second time, were you looking for any code violations outside of the driveway or the bridge?

A   No, it was just to discuss -- the, the first time to discuss the access issues, and the second time was to, you know, again continue the discussion on access issues and to, to see the work that had been done to the bridge.

Q   Okay.  So you don't look at anything in the house, you know, around the house, nothing like that?

A   No.

Q   About how far away is that bridge from the residence, if you know?

A   I don't know, probably 75 yards.

Q   Okay.  Now, presuming for a moment that those two engineering reports that I showed you earlier, which were Exhibits 11 and 12, assuming that those are in fact

Page 44

11 (Pages 41 to 44)

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

language off the top of my head.

Q   Okay. And you indicated that you, you don't believe you've ever seen any paperwork or stickers relative to a stop work order at 6220 [sic] Maple?

A   Correct.

Q   But I think you indicated that you believe that you were aware that one was in place?

A   I've heard it being discussed.

Q   Okay. From whom?

A   The -- again, probably Amy Neary, Jason Rosell, John Roda.

Q   Did they tell you why there was a stop order -- work order in place?

A   Not specifically. But again the discussion was about wetlands and I don't know the, the detail of the other code violations at the residence.

Q   All right. And you indicated that there was a stop work order in place, which suggests to me one. Is that your understanding, there was one stop work order put on this place?

A   I, I believe so. But again I'm not overly — not involved in the stop work order process. Again my — for this case. My, my involvement with this was all the discussion of the bridge and fire — firetruck access.

Q   Okay. Were you aware of any misdemeanor charges that were levied against Gary Grossman?

Page 49

A   I believe there was a, a, a ticket issued. I don't know the details of that ticket.

Q   You don't know what it was for?

A   No.

Q   And you don't know how it played out, what the end result was?

A   I believe he pled. I don't know all the results of that. Again I just -- I know it exists and was out there but I don't know all the details.

Q   Okay. All right.

      MR. RUBINSTEIN:  Let me take two or three minutes and see if I'm done. I think I'm about done, but I just want to go over my notes and make sure I didn't miss anything. So let's take — I apologize for another quick break, but let's do five minutes and I may be done --

      MR. ZALEWSKI:  Okay.

      MR. RUBINSTEIN:  — quick.  Thank you.

      (Off the record at 10:11:26 a.m.)

      (On the record at 10:16:31 a.m.)

      MR. RUBINSTEIN:  I do not have any further questions for Fire Marshal Turnquist. Thank you, sir.

      THE WITNESS:  Thank you.

      MR. ZALEWSKI:  And I have no questions.

      (Deposition concluded at 10:17:36 a.m.)

Page 50

13 (Pages 49 to 50)

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

**A**

a.m 3:3 44:6
44:7 50:18
50:19,24
ability 28:16
able 15:2,14
37:2
above-ent...
1:11
abridged 6:19
access 11:4
11:24 12:6
12:19 15:20
21:2 22:21
28:15 29:17
30:6 44:14
44:15 49:23
accidentally
20:12
accurate
14:13
acronym 21:17
action 51:12
51:15
actual 19:16
26:15 32:1
40:3
addition 45:2
address 19:25
adds 40:9
adequate
39:19
advice 41:5
advise 27:19
affixed 51:17
ago 5:21 11:3
13:8
agree 26:2,3
26:8 27:3
31:20,24
33:19 39:14
43:21
ahead 20:18

39:11 41:22
alarm 8:23
allow 40:5
47:3
allowed 36:15
40:23
ambulance 8:9
8:12 15:10
25:10,19
28:23 29:12
37:25
ambulances
41:3
amount 40:9
AMTSBUECHLER
1:23
Amy 23:7,10
49:10
answer 4:3,14
answered 4:13
answering
25:25
answers 4:4
4:10
anticipate
43:25
anybody 5:12
6:3 30:14
45:25
apologize
50:14
apparatus
12:12 18:12
18:14 39:23
40:13
apparently
14:18
appear 13:5
18:18 33:9
33:13
APPEARANCES
1:17
appeared

28:19 46:10
appears 22:5
33:16 38:25
39:14
application
42:18
apply 45:1
appointment
12:1 14:1
approach 43:6
approved 47:9
April 1:15
3:2 16:21
17:22,22
27:15 28:9
51:9,17
area 6:11,12
15:20 19:4
24:3 28:10
29:16 30:11
30:21,22
31:6,8,10
31:18,20
33:18,22
42:25
areas 29:10
arguing 31:21
arrangements
17:15
asked 5:21
12:5,11
40:14
asking 37:9
associate's
6:7,9
assume 47:19
assuming
44:25 45:12
attend 9:9
attended 23:2
attending
22:25 23:1
attention

29:5 42:21
attorney 3:19
4:11,14 5:9
9:20 23:3
51:11,14
attorneys
22:12,12
23:3
authentic
45:1
automobiles
37:23
aware 19:5
30:14 45:21
49:7,24

**B**

bachelor's
6:8
back 11:13
13:13 15:22
16:16 17:15
17:19,19
29:21,24
30:3 31:19
38:1 44:2
46:22
base 19:4
basic 5:25
8:17
basically
28:18
basis 21:10
beams 19:17
Bear 32:9
37:3 39:9
beginning 9:7
believe 7:2
10:13,13
11:13 12:25
14:4,6,17
15:8,19
16:25 17:18
18:9 23:15

23:20 24:25
25:11 30:20
30:20 36:4
36:4,12
40:14 41:5
42:22 43:10
43:17 45:18
48:11 49:2
49:6,20
50:1,7
best 14:13
better 14:9
18:19,24
28:2 30:6
39:10 42:6
42:7 46:11
bigger 10:6,8
13:23 43:1
Birmingham
8:6
bit 3:24 4:1
27:9 32:24
35:7 46:22
blank 19:25
20:9,10,14
block 32:3
Bloomfield
1:7,14 3:1
5:3 7:25
11:11 30:11
44:10 47:15
bottom 10:4
13:11 32:17
boy 6:16
branches 32:6
break 9:20
44:1 50:15
breaks 38:2
bridge 12:8
14:21,24
17:19,20,20
17:24 18:1
18:6,15,18

Page 1

Grossman v Charter Twp. of West Bloomfield
Byron Turnquist
4/15/2024

| | | | | |
|---|---|---|---|---|
| 51:14 | definitely 26:21 | different 25:1 38:4 | 32:8 35:25 37:12 48:9 | 29:7,15 32:5 44:12 45:11 |
| county 1:13 38:16 51:3 51:6,22 | definition 42:17 43:12 43:18,19 | dilapidated 25:5 | doesn't 12:13 doing 31:17 47:1 | driving 12:12 19:7 29:9 29:24 41:18 |
| couple 5:6,20 11:3,25 16:15 17:14 22:4,15 23:1 24:24 30:13 31:12 32:8 42:1 42:23 | definitions 42:20,23 degree 6:7,8 deleted 20:13 department 32:19 33:8 36:12 42:19 | dimensions 39:16,24 40:3,4 direct 42:21 disagree 33:21 discovery 10:21 | don't 6:20 11:6,8 12:7 12:7 13:23 15:8,17 16:15 18:3 18:23 19:3 19:15 20:11 20:16,18 | drop 24:22 duly 3:10 51:7 duplicative 10:20 ——— E ——— |
| course 36:22 45:2 | deponent's 10:21 | discuss 44:13 44:13 | 21:1,18 22:9,10 | e- 5:18 e-mail 9:20 |
| Court 1:1,15 3:4 4:17,18 | deposed 3:22 4:22 | discussed 15:1,17 | 23:5 24:19 25:11 26:15 | 12:1 13:19 13:21,25 |
| covers 8:24 create 46:4 credits 9:10 creek 22:18 crossed 22:19 crossing 31:20 32:1 crushed 18:4 cutting 31:19 | deposition 1:10 4:16 5:5,11,17 10:14,14 36:22 50:24 51:12 deputy 7:3,10 7:13 describe 14:23 | 17:20 27:23 49:8 discussion 22:16 28:13 29:25 30:17 30:17 44:15 45:25 46:8 49:13,22 discussions 5:14 30:24 | 27:4,6,22 29:6,24,24 31:2,11,16 31:21 33:1 35:3,15,20 36:8 37:12 37:17 38:12 38:14 39:16 40:17 41:17 | 14:13,17 16:11,14,17 16:20 17:10 17:13 20:1 20:3,7,10 20:14 e-mailed 14:7 e-mails 5:6 5:18,20 13:3,5 |
| ——— D ——— | description 39:14 | dispute 16:17 | 41:18 42:15 43:10,19 | 20:19 earlier 44:24 |
| D 1:5 damage 31:1,3 31:6,7,9,11 31:17 | design 8:5 detail 49:14 details 50:2 50:9 | disputed 48:22 DISTRICT 1:1 1:2 | 44:17,22 45:12,13 46:15,20 | earth-sha... 13:4 easement 12:13 |
| date 48:23 day 1:15 14:15,16,17 51:17 | deteriorate 18:8 deteriorates 41:24 | division 1:3 21:19 DLZ 38:20 | 47:7 48:11 48:16,18,18 48:25 49:2 | easier 9:19 31:23 39:6 EASTERN 1:2 |
| days 9:5 17:14 December 7:11 7:13 deck 43:6 defects 43:16 Defendant 1:8 1:22 defined 43:14 | determined 25:8 didn't 20:10 24:12 25:21 29:1 30:22 31:9 33:17 50:13 | document 9:23 10:10,12,20 13:14 35:15 37:11 38:15 documenta... 18:10,11,13 documents 6:1 9:12,17 10:7,17 | 49:14 50:1 50:3,5,7,9 draft 20:13 drive 1:23 21:5 36:16 37:23 40:23 driveway 12:9 12:18 15:22 15:22 21:4 | ed 9:2,4,10 education 6:6 EGLE 20:2 21:2,7,15 egress 12:10 either 15:4 27:16,19 44:10 |

Grossman v Charter Twp. of West Bloomfield                    Byron Turnquist
                                                             4/15/2024

gives 26:22
go 10:9 11:17
  13:3 14:15
  20:18 21:20
  24:12 31:8
  37:18 38:1
  38:12 39:11
  41:22 45:8
  48:14 50:13
going 6:23
  8:8 9:11,17
  10:6,6
  12:14 13:7
  13:8 14:16
  16:5,6,10
  17:4 20:19
  22:4 23:9
  23:24 24:12
  24:24 27:5
  32:8,13
  33:2,3 35:7
  35:11 37:3
  37:17 39:3
  40:19 41:5
  42:11,21,24
  43:13,23,24
  46:11
good 3:15,16
  13:25 44:3
gravel 18:4
Great 21:20
  32:20 33:8
Grossman 1:4
  3:20 5:19
  5:20 11:2,9
  11:16,22
  12:23 13:6
  15:6 16:24
  17:14 18:25
  27:19,25
  28:18 31:4
  32:22 35:9
  35:22 39:1

41:13 45:9
45:15,21
46:13 49:25
Grossman's
  29:5 39:15
ground's
  12:15
group 8:5
  11:14
grow 30:2
growing 26:14
  29:7 32:6
  45:10
growth 31:25
guess 39:24
  41:21 48:23
guys 44:2

——————— H ———————
half 15:24
hand 51:16
handful 9:11
handwriting
  27:5 38:12
happen 22:14
happens 18:7
hard 9:14,19
  34:19
hasn't 45:12
  47:16
haven't 36:21
he's 36:12
head 49:1
heads 4:6
hear 24:13
heard 11:14
  34:4,8 49:8
help 15:7
  42:16
helpful 42:25
hereto 51:15
hereunto
  51:16
high 8:4

highest 6:5
highlight
  33:2,3 39:4
  42:24
highlighted
  33:5 36:13
  37:14 39:7
  40:19
Highway 1:19
Hills 1:20,24
hired 6:24
  8:9
history 6:19
hold 25:9
  28:22
holding 25:18
home 11:14
homeowner
  48:15
Hon 1:5
honest 33:23
Hopefully
  14:10
house 15:3,4
  23:18 44:17
  44:18
hundred 36:9
hydrant 15:16
hydrants
  15:19,21

——————— I ———————
I'd 6:20 38:1
I'll 4:2 9:20
  10:20,20
  13:13 23:25
  32:24 38:12
  41:23,23,25
  41:25
I'm 3:19 6:17
  6:17 8:11
  8:22 9:11
  9:12,17,23
  10:6 13:7,8

16:5,6,10
17:12 18:21
18:22,23,23
19:5,22
20:18 22:1
22:4 23:9
23:24 24:12
24:12,24
27:5,23
32:8,13
33:3,23
34:10,17,17
35:1,7,11
37:3,9,9,12
37:17,19
38:2,9,16
39:3 40:4
40:19 41:5
41:21,22
42:11,17,18
42:21,24
43:13,24,24
49:20 50:12
50:12
I've 6:7,25
  7:5,7 8:20
  9:6 13:5
  19:22 34:4
  49:8
idea 20:6
identific...
  10:2 12:21
  16:3 17:2
  19:20 21:24
  22:23 23:22
  26:24 32:11
  34:15 38:7
  42:9
identified
  39:19 42:23
ignore 42:12
image 23:17
  24:1 25:1,4

26:11 27:10
28:7 29:13
29:19
images 24:24
  29:19
impact 30:16
  33:17
impacts 33:9
  33:12
improved
  18:18 27:11
  41:10
improvement
  27:25 40:10
  42:5,7
improvements
  17:18 18:2
  28:14 41:15
  42:1
indicated
  33:9 35:22
  49:2,6,16
indicates
  36:14
indicating
  13:20 30:15
informal 46:8
information
  5:6 19:25
  36:8
initial 15:15
  16:19 19:25
  37:22
initially
  14:7 26:18
input 22:20
inspection
  46:4 48:5,6
inspections
  48:8
inspector 7:3
  7:9,13 8:20
  8:21 9:6

                                                              Page 5

Grossman v Charter Twp. of West Bloomfield                          Byron Turnquist
                                                                    4/15/2024

| M | | | | |
|---|---|---|---|---|
| **M** | 14:21 15:22 | minute 16:11 | new 18:3 | obvious 19:6 |
| mails 5:19 | 33:20 34:25 | minutes 43:25 | 27:11 31:15 | occasion |
| maintain 30:1 | 40:4 47:8 | 44:2 50:11 | NFPA 8:21 | 11:17 |
| 31:5,25 | medical 15:4 | 50:15 | Nice 3:21,22 | office 20:20 |
| maintained | meet 3:21,22 | misdemeanor | nodding 4:6 | official 8:22 |
| 19:9 41:24 | 5:8,12 12:1 | 49:24 | non-verbal | officials |
| maintenance | meeting 11:8 | moment 13:8 | 4:5 | 5:16 30:11 |
| 27:25 | 12:2 14:4,8 | 32:9 44:23 | nonemergency | oh 6:16 33:2 |
| major 43:14 | 15:15 16:19 | Monday 3:2 | 41:3 | okay 3:24 4:2 |
| 43:16 | 16:22 17:17 | months 7:4 | Northwestern | 4:14,22 |
| making 21:2,3 | 17:25 22:14 | morning 3:15 | 1:19 | 5:12,18 6:3 |
| 28:14 30:6 | 22:20,25 | 3:16 10:15 | Notarial | 7:15 8:2,7 |
| 42:6,7 | 23:2,4 46:7 | moving 37:9 | 51:17 | 8:14,18 9:1 |
| 46:11 | 46:8 | Mt 9:6 | Notary 1:13 | 9:11 10:4,6 |
| Maple 11:11 | meetings | multiple | 51:5,22 | 10:10,11,14 |
| 14:8 23:19 | 22:15,19 | 23:25 | notes 27:4 | 10:17,24 |
| 39:1 44:10 | 23:1 30:10 | Mzalewski... | 44:1 46:5 | 11:9 12:5 |
| 48:10 49:4 | 30:13,18 | 1:25 | 50:13 | 12:23 13:10 |
| marked 10:1 | 34:5 | | notice 10:14 | 13:19,21,23 |
| 12:20 16:2 | meets 37:20 | **N** | 32:19 | 14:2,4,15 |
| 17:1 19:19 | memory 35:13 | name 3:17,19 | noticed 4:16 | 14:18 15:15 |
| 19:22 21:23 | 36:6 | names 23:9,14 | NREPA 33:13 | 15:18 16:5 |
| 22:2,22 | memos 46:5 | narrow 15:1 | number 2:13 | 16:13,17 |
| 23:21 26:23 | mentioned | 25:22 | 2:14,15,16 | 17:13,24 |
| 32:10 34:14 | 29:1 30:10 | Neary 23:7,10 | 2:17,18,19 | 19:9,22 |
| 34:18 38:6 | met 11:5,7 | 49:10 | 2:20,21,22 | 20:5,23,25 |
| 38:9 42:8 | 12:23 17:19 | necessarily | 2:23,24,25 | 21:7,9 |
| 43:1 | MI 1:20,24 | 29:16 31:7 | 10:1 12:20 | 22:25 24:6 |
| marshal 5:1 | Michigan 1:2 | 42:25 | 16:2 17:1 | 24:11,24 |
| 7:4,5,10,11 | 1:13,14,15 | necessary | 19:19 21:23 | 25:4,25,25 |
| 7:12,14,15 | 3:1 4:17,18 | 31:19,21,22 | 22:22 23:21 | 26:18 27:1 |
| 7:18,19,21 | 8:6,23 | 43:6,15 | 26:23 32:10 | 27:4,14,24 |
| 9:17 11:1 | 33:17 36:16 | need 4:9 15:9 | 34:14 38:6 | 28:7,18,21 |
| 34:17 44:9 | 37:24 40:23 | 15:13 30:1 | 42:8 48:24 | 29:13,18,21 |
| 47:15,24 | 42:19 51:1 | 30:6 | | 30:10 31:19 |
| 50:21 | 51:6,22 | needed 15:2 | **O** | 31:24 32:4 |
| material | Michigan's | 27:20 36:8 | Oakland 1:13 | 32:22 33:16 |
| 26:21,21 | 33:7 | neighborhood | 6:10,14,14 | 33:21 34:1 |
| math 37:18 | mile 15:24 | 12:11 | 51:3,5,22 | 34:7,13 |
| Matt 9:13 | mind 18:3 | neighboring | object 4:11 | 35:4,16,22 |
| 34:10 43:23 | 27:4 30:7,9 | 15:20 | 10:20 43:19 | 37:3,16,22 |
| MATTHEW 1:22 | 38:12 | neither 51:10 | objection | 38:9,20,22 |
| mean 7:17 | minor 33:14 | never 11:7 | 4:12 | 39:10,13,18 |
| | | 20:13 | observed 45:6 | |

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

| | | | | |
|---|---|---|---|---|
| 51:5,22 | read 13:13,17 | referred 7:17 | replacing | 36:22 44:1 |
| purchased | 13:21,21 | refresh 35:13 | 43:5 | reviewed 5:6 |
| 45:21 | 16:10 27:6 | regarding | report 35:8 | 5:18 45:6 |
| purpose 4:18 | 39:3,6,11 | 18:13 30:10 | 36:5,23 | right 3:17,19 |
| 17:17 | 40:19,20 | 35:23 38:25 | 37:6,8 38:4 | 4:16 5:8,14 |
| pursuant 1:15 | 43:13 | 42:20 | 41:7 | 5:25 6:5,9 |
| 4:16 | reading 10:8 | regards 45:6 | Reporter 1:12 | 6:14 7:6,23 |
| put 5:23 | 33:1 43:3 | regular 21:10 | 3:4 51:5 | 7:25 11:16 |
| 49:18 | real 11:15 | regulated | reporting | 11:21 13:3 |
| puts 47:2 | really 37:13 | 33:10,12 | 46:4 | 13:14 15:6 |
| Putting 40:8 | 42:3 47:20 | rehabilit... | reports 41:8 | 15:11,25 |
| | reason 11:19 | 42:3,5 | 41:18 44:24 | 16:5,10,19 |
| **Q** | 33:21 46:12 | rehabilit... | 46:5 | 17:10,21,21 |
| question 4:3 | rebuild 18:25 | 43:12,13,18 | represent... | 18:20 20:15 |
| 4:8,12 5:25 | recall 11:19 | related 47:11 | 39:17 | 21:18,21 |
| 39:21,24 | 15:17 23:4 | 51:11 | request 10:20 | 22:1,1 |
| questioned | 23:5,6 29:4 | relates 42:2 | requested | 23:17 24:11 |
| 18:7 | 30:25 36:8 | relative 34:7 | 18:9 | 24:16 26:4 |
| questions 4:3 | 41:16 | 39:20 48:9 | required | 27:17 28:16 |
| 4:20 22:4 | receive 4:13 | 49:3 51:13 | 43:14 | 30:25 31:14 |
| 37:10 50:21 | received | remedied | requirements | 32:8 33:2 |
| 50:23 | 16:17 35:20 | 29:23 | 37:21 | 34:17,25 |
| quick 44:1 | 36:5,7 | remedy 45:15 | residence | 35:7,10,16 |
| 50:14,17 | receiving | 48:25 | 11:13 21:6 | 36:4,10 |
| quickly 13:3 | 16:14 | remedying | 39:1 44:20 | 37:3 38:5 |
| 35:11 | recognize | 35:24 | 49:15 | 38:15 39:3 |
| | 24:1 27:10 | remember 11:8 | resolved | 39:4 40:16 |
| **R** | 35:5 | 12:2,7 | 46:17 | 40:18,24 |
| railing 25:4 | recollection | 16:14 18:3 | respond 4:7 | 41:7,20 |
| 26:6 | 14:13 | 19:13 21:1 | 20:12 21:1 | 42:22 43:3 |
| railings 24:4 | recommend... | 21:12 22:25 | responded | 43:20,22 |
| 24:19,21 | 37:20,22 | 23:1 24:19 | 14:9 | 44:4,9 |
| 25:12,22 | record 44:6,7 | 27:22 28:2 | responsib... | 45:13,19 |
| 27:13,16,20 | 50:18,19 | 29:8,24 | 47:20 | 46:13 47:5 |
| 27:20 28:8 | 51:9 | 31:2 33:1 | responsive | 47:19 48:20 |
| 29:1 31:14 | redacted | 35:3,15,19 | 10:22 | 49:16 50:10 |
| rails 27:20 | 20:19 | 35:20 38:14 | restore 43:14 | river 31:10 |
| rain 12:3,15 | redundant | 40:17 41:17 | restricts | road 11:11 |
| 14:10 | 36:13 | remotely 3:6 | 12:19 | 23:19 29:17 |
| raining 14:18 | refer 7:17 | repair 30:15 | result 50:5 | 39:1 |
| 14:19 | 38:25 | repeat 23:9 | results 50:7 | roads 36:16 |
| Ranbarger | referenced | replacement | retained 35:8 | 37:23 40:23 |
| 1:12 51:4 | 39:25 | 43:1,4 | review 8:22 | roadway 18:6 |
| 51:21 | | | | |

Page 9

Grossman v Charter Twp. of West Bloomfield                    Byron Turnquist
                                                             4/15/2024

| | | | | |
|---|---|---|---|---|
| specifics | 35:12,12 | 21:3 25:24 | 15:15 45:10 | 15:13 26:18 |
| 12:7 | 46:18,23 | 28:5 37:15 | talks 38:2 | 40:2 47:3,3 |
| speech 4:6 | 47:2,5,8,23 | 37:23,24 | telephone | think 7:12,13 |
| spend 6:20 | 48:1,4,9,21 | 39:22 40:13 | 5:15 | 8:24 11:25 |
| spent 9:5 | 48:23 49:3 | 40:22 | tell 3:10 6:5 | 12:17 17:21 |
| spots 26:14 | 49:11,16,18 | supporting | 13:19 15:12 | 23:12 29:9 |
| sprinkler | 49:21 | 36:15 | 22:11 29:15 | 38:4 39:17 |
| 8:22 | stream 33:12 | supposed | 36:6 38:15 | 41:12 42:5 |
| SS 51:2 | streams 33:13 | 33:24 35:23 | 45:14 49:11 | 42:5 49:6 |
| stamp 17:8 | strike 14:22 | sure 21:3 | 51:7 | 50:12 |
| 34:19 | 25:17 29:21 | 27:23 38:2 | telling 15:12 | third 42:22 |
| stamped 36:19 | string 13:20 | 40:18 45:21 | 22:13 | three 9:5 |
| stands 21:17 | 17:13 | 50:13 | territory | 50:11 |
| start 14:23 | structural | surface 19:14 | 22:10 | throw 41:23 |
| 46:22 | 43:14 45:5 | 26:16 27:11 | testified | 41:23 |
| started 6:21 | structurally | 27:24 40:11 | 3:11 | ticket 50:1,2 |
| 6:23 7:1 | 28:3 | surrounding | testimony | time 4:12,21 |
| 20:12 46:14 | structure | 31:6,9 | 51:9 | 5:10,21 |
| starting 9:12 | 18:6 19:1,4 | 33:18 | testing 25:20 | 6:20,25 8:3 |
| starts 18:7 | 19:17 26:20 | SUV 29:11 | 25:21 | 8:8 10:19 |
| 43:3 | 36:14 39:22 | swearing 3:6 | Thank 3:12 | 11:5,13 |
| state 8:20,23 | 40:12,22 | sworn 3:10 | 10:24 23:16 | 12:25 14:5 |
| 21:19 33:7 | stuck 18:2 | 51:7 | 44:4 50:17 | 14:20,25 |
| 33:16 40:8 | studied 6:12 | system 48:5,6 | 50:21,22 | 16:22 17:21 |
| 51:1 | study 6:11 | 48:7 | that's 13:14 | 18:8,24 |
| statement | stuff 31:13 | systems 8:22 | 23:15 31:16 | 27:14,16 |
| 42:4 | 36:1 | 8:23 | 33:3 34:2 | 29:10 30:1 |
| STATES 1:1 | submitted | | 38:18 41:21 | 31:25 34:4 |
| stay 15:12,12 | 36:2 | ——— T ——— | 42:6,6,24 | 34:4 44:11 |
| Steve 22:7 | substanti... | tab 16:7 | 48:7 | 44:13,14 |
| 23:12 | 25:2 26:1 | TABLE 2:1 | there's 9:8 | 45:23 |
| sticker 48:3 | 27:1 28:8 | Tahoe 29:10 | 12:14 15:21 | timeline 5:21 |
| 48:19 | 47:21 | take 9:20 | 26:12,13,14 | times 4:4,23 |
| stickers | substructure | 16:10 17:10 | 35:12 41:11 | 9:5 13:1 |
| 48:12,14,17 | 43:5,6 | 25:23 41:5 | 42:23 43:12 | 24:4 42:2 |
| 49:3 | suggested | 43:24 44:1 | they're 8:13 | 46:3 |
| sticking | 45:15 | 50:11,14 | 25:12 33:24 | title 7:16 |
| 19:13 26:13 | suggests | taken 1:11 | thickness | today 5:5 6:1 |
| stipulated | 49:17 | 25:12 51:9 | 39:25 | 19:15 40:15 |
| 3:7,8 | Suite 1:19,23 | 51:13 | thing 13:7 | 41:7 45:9 |
| stipulation | support 15:2 | talk 11:4,14 | 18:2 33:3 | told 28:18 |
| 3:4 | 15:9,14 | talked 5:10 | 43:4 | tomorrow 14:9 |
| stop 4:8 | 18:11,16 | 12:17 30:1 | things 4:6 | top 18:4 19:6 |
| | | talking 14:5 | | |

Grossman v Charter Twp. of West Bloomfield

Byron Turnquist
4/15/2024

25:15 26:3
26:20 32:3
34:4 37:20
39:9,16
40:22 41:17
43:2,2,21
46:24 47:25
47:25
**year** 9:5
**years** 9:3
11:3 41:24
**Yep** 7:20,22
10:11 14:12
17:5,7
19:24
**you're** 6:22
7:16 17:11
39:5,7,12
**you've** 4:22
7:25 16:12
22:11 34:7
42:15 45:6
47:15 49:2

---

**Z**

**Zalewski** 1:22
3:8 5:8
10:19 34:12
44:3 50:16
50:23
**zoom** 1:14 3:5
16:6,7 22:5
22:14 35:7
42:15

---

**0**

---

**1**

**1** 2:13 10:1,4
20:5 42:12
**10** 2:13,22
32:10,13,17
44:2
**10:02:55** 44:7

**10:11:26**
50:18
**10:16:31**
50:19
**10:17:36**
50:24
**11** 2:23 7:4
7:12,13,13
34:14,18
40:5 44:25
**12** 2:14,24
38:6,10
40:5 44:25
**13** 2:25 42:8
42:13
**15** 3:2 7:11
7:15 51:9
**15th** 1:15
**16** 2:15
**165** 1:19
**17** 2:16
**19** 2:17
**1991** 6:24
**1992** 6:24
**1996** 6:25

---

**2**

**2** 2:14 12:20
13:15,22
**2.306(b)(5)**
4:17
**20** 11:6 34:23
43:25
**2010** 7:3
**2011** 7:3,4,9
7:11
**2015** 7:5,10
7:11 47:16
**2019** 45:22
**2020** 14:3
16:20 24:18
26:7
**2021** 16:21
**2024** 1:15 3:2

51:9,17
**2027** 51:24
**21** 2:18 11:6
28:9
**213-639** 4 1:20
**22** 2:19 20:5
45:22
**220-1415** 1:20
**23** 2:20
**23-11851** 1:5
**23rd** 51:17
**24** 51:24
**248** 1:20,20
1:24,24
**25** 33:25
**250** 1:23
**26** 2:21
**27666** 1:23

---

**3**

**3** 2:9,15 16:2
16:8
**30** 43:25
**301** 33:13
**303** 33:10
**30665** 1:19
**32** 2:22
**34** 2:23
**38** 2:24

---

**4**

**4** 2:16 17:1,4
17:8
**42** 2:25
**48331** 1:24
**48334** 1:20
**489-1726** 1:24
**489-4100** 1:24

---

**5**

**5** 2:17 19:19
19:23 44:2
**51** 51:8
**5th** 16:21

---

**6**

**6** 2:18 21:23
22:2
**6220** 49:4
**6221** 11:10
14:8 23:19
39:1 44:10
48:10

---

**7**

**7** 2:19 22:22
23:18
**75** 44:22

---

**8**

**8** 2:20 23:21
23:24 24:2
**80,000-pound**
25:23
**8th** 17:22

---

**9**

**9** 2:21 26:23
27:6,6
**9:01** 3:3
**9:54:47** 44:6
**93** 6:16,17
**94** 6:16
**9th** 16:20
17:22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

       Plaintiff,

v.

CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

       Defendant.

Case No. 23-11851

Shalina D. Kumar
United States District Judge

---

## NOTICE OF TAKING DEPOSITION UPON ORAL EXAMINATION AND DUCES TECUM OF BYRON TURNQUIST

TO:    CLERK OF THE COURT
       ALL ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that the Plaintiff, Gary Grossman, by and through his attorney, The Rubinstein Law Firm, will take the deposition upon oral examination of:

DEPONENT:    BYRON TURNQUIST
DATES:        Monday, April 15, 2024
TIME:         9:00Am
LOCATION:    Via ZOOM – Instructions to follow

This deposition is to be taken in accordance with the Michigan Court Rules and applicable discovery rules, and will be used for the purpose of discovery and/or evidence in this matter. The deposition will continue day-to-day until completed and will take place before a notary or other person authorized to administer oaths.

The deponent is also instructed to bring the following documents:

1.    All documents Defendant intends to rely upon at trial.

## PLAINTIFF'S EXHIBIT "1"

Byron Turnquist Deposition / 000001



EXHIBIT
1 - 4-15-24 - KR

**From:** Byron Turnquist <BTurnquist@wbtownship.org>
**Sent:** Tuesday, September 08, 2020 7:30 AM EDT
**To:** Gary Grossman <garygrossman08@comcast.net>
**Subject:** RE: 8:00AM

I can still come, would tomorrow be better? Hopefully no rain?

Byron


-----Original Message-----
From: Gary Grossman <garygrossman08@comcast.net>
Sent: Tuesday, September 8, 2020 7:27 AM
To: Byron Turnquist <BTurnquist@wbtownship.org>
Subject: 8:00AM

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Byron,

Confirming 8:00AM meeting at 6221 W Maple.

Gary Grossman
415-994-5694

# PLAINTIFF'S EXHIBIT "2"



**From:** Byron Turnquist <BTurnquist@wbtownship.org>
**Sent:** Thursday, April 08, 2021 8:24 PM EDT
**To:** Gary Grossman <garygrossman08@comcast.net>
**Subject:** Re: Confirming 7AM

Yes, I am planning on being there. Have a good night!

**BYRON TURNQUIST**
Fire Marshal | 248.409.1505

---

On: 08 April 2021 17:33,
"Gary Grossman" <garygrossman08@comcast.net> wrote:

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Byron,

Confirming our 7AM meeting tomorrow at my bridge.
6221 W Maple.

Gary Grossman
415-994-5694

## PLAINTIFF'S EXHIBIT "4"

EXHIBIT

4 - 4-15-24 - KR

**Subject:** Dr. Daouck/Grossman property discussion
**Location:** https://us02web.zoom.us/j/84259341769?pwd=OVBwUIBIcVRRblByTmJkRTdYQIIzQT09

**Start:** Tuesday, October 25, 2022 1:00 PM EDT
**End:** Tuesday, October 25, 2022 2:00 PM EDT
**Show Time As:** Busy

**Recurrence:** None

**Meeting Status:** Not yet responded

**Required Attendees:** Byron Turnquist <BTurnquist@wbtownship.org>

Steve Kaplan is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://us02web.zoom.us/j/84259341769?pwd=OVBwUIBIcVRRblByTmJkRTdYQIIzQT09

Meeting ID: 842 5934 1769
Passcode: 190678
One tap mobile
+13092053325,,84259341769#,,,,*190678# US
+13126266799,,84259341769#,,,,*190678# US (Chicago)

Dial by your location
    +1 309 205 3325 US
    +1 312 626 6799 US (Chicago)
    +1 646 876 9923 US (New York)
    +1 646 931 3860 US
    +1 301 715 8592 US (Washington DC)
    +1 564 217 2000 US
    +1 669 444 9171 US
    +1 669 900 6833 US (San Jose)
    +1 719 359 4580 US
    +1 253 215 8782 US (Tacoma)
    +1 346 248 7799 US (Houston)
    +1 360 209 5623 US
    +1 386 347 5053 US
    +1 408 638 0968 US (San Jose)
Meeting ID: 842 5934 1769
Passcode: 190678
Find your local number: https://us02web.zoom.us/u/kbc83NY7L8



# PLAINTIFF'S EXHIBIT "6"

Byron Turnquist Deposition / 000007

TWP 583



PLAINTIFF'S EXHIBIT "8"

EXHIBIT

8 - 4-15-24 - KR



TWP 195



TWP 197



Byron Turnquist Deposition / 000015

TWP 199



STATE OF MICHIGAN

DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY

WARREN DISTRICT OFFICE



GRETCHEN WHITMER
GOVERNOR

LIESL EICHLER CLARK
DIRECTOR

September 22, 2021

<u>VIA E-MAIL- RETURN RECEIPT REQUESTED</u>

<u>VIOLATION NOTICE</u>
VN No. VN-012192

Mr. Gary Grossman
6221 West Maple
West Bloomfield, Michigan 48322

Dear Mr. Grossman:

> **EXHIBIT**
>
> 10 - 4-15-24 - KR

SUBJECT:   Violation Notice
Civil Liability
Complaint Submission No.
Site Name:  63-6221 W Maple-West Bloomfield
Property Location:  6221 W Maple, West Bloomfield, Oakland County, MI 48322,
T02N, R 09E, Section 33, Property ID 18-33-200-034

The Department of Environment, Great Lakes, and Energy's (EGLE) Water Resources Division (WRD) conducted an investigation and determined that there has been recent unauthorized activity on the above referenced parcel of property.  You have been identified as the landowner who refurbished and raised the grade of an existing clear span bridge over Pebble Creek.

A permit is required prior to the start of this type of activity.  A review of the WRD's files indicates that no permits have been issued for the activity at this property.  EGLE has, therefore, determined that this activity is in violation of Part 301, Inland Lakes and Streams, and Part 31, Water Resources Protection, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (NREPA).

Based on our site investigation we have determined that the activities cited did not appear to cause impacts to wetlands regulated under Part 303, Wetlands Protection, of the NREPA. Any impacts to the stream regulated under Part 301, Inland Lakes and Streams, of the NREPA appeared to be minor.

Investigation did find that a permit was required under P31 Water Resources Protection, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (NREPA). Community participates in the National Flood Insurance Program.  Under the regulations any man-made changed to the published FEMA mapped floodway requires an evaluation to show no increase in the base flood elevation or changes to the floodway.  To resolve this, we will require a damage assessment waiver consistent with Michigan Department of Environment, Great Lakes, and Energy, Hydraulic Report Guidelines, May 2019.  This document must be signed by the owner of the property.  This waiver has been provided to you already.  Please submit this waiver within 30 days of receiving this letter. If you have any questions regarding this, feel free to contact Pat Durack, durackp@michigan.gov or by phone at 586-256-7273.

EGLE advises all unauthorized activities occurring within regulated areas on this property stop. Based on the site, amount, and type of unauthorized work occurring at the time of investigation, restoration of any stream impacts regulated under Part 301 of the NREPA will not be required.

Should you desire to do additional regulated work on this property or in other regulated areas, it will be necessary to obtain a permit from EGLE and follow the conditions of the permit prior to

Byron Turnquist Deposition / 000017

## PLAINTIFF'S EXHIBIT "10"



# ROWE PROFESSIONAL SERVICES COMPANY

*Large Firm Resources, Personal Attention.* ™

# Memorandum

**To:** Mr. Gary Grossman

**From:** Jon Lidgard, PE

**Date:** May 18, 2021

**RE:** Driveway Culvert Load Rating

---

ROWE was requested to conduct a load rating analysis for the concrete slab culvert that was recently constructed along the driveway leading to Mr. Grossman's residence. To complete this load rating, a ROWE structural engineer conducted a site visit to verify the condition and dimensions of the culvert. Once the field conditions were verified, a load rating analysis was completed using AASHTOware rating software approved by the Michigan Department of Transportation (MDOT). The culvert was analyzed for all of the MDOT rating trucks to ensure that all possible truck configurations are capable of passing over this structure.

Once the rating was completed, it has been determined that the culvert is more than capable of supporting all legal loads allowed by MDOT. The minimum rating factor for this structure is 2.15 times the legal load for any MDOT truck and is 1.27 times stronger than the HL-93 modified truck used by MDOT. A summary of all legal truck ratings is attached to this memo for reference.

This structure is capable of supporting any and all legal loads that are allowed to drive on Michigan roads without any concerns. If you have any questions, please feel free to contact me at (810) 341-7500 or jlidgard@rowepsc.com.

Attachment

\\hq\CAD\Projects\2\TC0090\Docs\Load Rating\Grossman Load Rating Memo.docx



EXHIBIT
tabbies
11 - 4-15-24 – KR



5/18/21



JONATHAN D. LIDGARD ENGINEER No. 60420

5/18/21

## PLAINTIFF'S EXHIBIT "11"

Engineering | Surveying | Aerial Photography/Mapping | Landscape Architecture | Planning
**Farmington Hills:** 27280 Haggerty Road, Suite C-2 • Farmington Hills, MI 48331 • O (248) 675-1096 • F (800) 974-1704
**With Offices In:** Flint, MI (Corporate) • Lapeer, MI • Mt. Pleasant, MI • Lansing, MI • Grayling, MI • Tri-Cities, MI • Myrtle Beach, SC
www.rowepsc.com

Byron Turnquist Deposition / 000019

## Michigan Legal Vehicles: Configurations and Gross Vehicle Weights (GVW)

| | Truck Number | Truck Configuration | Normal Loading GVW | | Designated Loading GVW | | Special Designated GVW | |
|---|---|---|---|---|---|---|---|---|
| | | | (kips) | (tons) | (kips) | (tons) | (kips) | (tons) |
| 1-UNIT | 1 | | 33.4 | 16.7 | 33.4 | 16.7 | 39 | 19.5 |
| | 2 | | 41.4 | 20.7 | 47.4 | 23.7 | 45.4 | 22.7 |
| | 3 | | 54.4 | 27.2 | 54.4 | 27.2 | 54.4 | 27.2 |
| | 4 | | 67.4 | 33.7 | 67.4 | 33.7 | 67.4 | 33.7 |
| | 5 | | 78 | 39 | 84 | 42 | 84 | 42 |
| | 26 | | 50 | 25 | 50 | 25 | 50 | 25 |
| 2-UNIT | 6 | | 95.4 | 47.7 | 101.4 | 50.7 | 101.4 | 50.7 |
| | 7 | | 113.4 | 56.7 | 119.4 | 59.7 | 119.4 | 59.7 |
| | 8 | | 85.4 | 42.7 | 91.4 | 45.7 | 91.4 | 45.7 |
| | 9 | | 51.4 | 25.7 | 51.4 | 25.7 | 49.5 | 24.75 |
| | 10 | | 59.4 | 29.7 | 65.4 | 32.7 | 56.4 | 28.2 |
| | 11 | | 77.4 | 38.7 | 83.4 | 41.7 | 67.1 | 33.55 |
| | 12 | | 111.4 | 55.7 | 117.4 | 58.7 | 117.4 | 58.7 |
| | 13 | | 119.4 | 59.7 | 125.4 | 62.7 | 125.4 | 62.7 |
| | 14 | | 132.4 | 66.2 | 132.4 | 66.2 | 132.4 | 66.2 |
| | 15 | | 137.4 | 68.7 | 143.3 | 71.65 | 143.3 | 71.65 |
| | 16 | | 132.4 | 66.2 | 138.4 | 69.2 | 138.4 | 69.2 |
| | 17 | | 145.4 | 72.7 | 151.4 | 75.7 | 151.4 | 75.7 |
| | 18 | | 148 | 74 | 154 | 77 | 154 | 77 |
| | 27 | | 72 | 36 | 72 | 36 | 72 | 36 |

Byron Turnquist Deposition / 000021

# BRIDGE ANALYSIS SUMMARY

Bridge ID: Grossman Slab

The above structure was analyzed using: AASHTOWare Bridge Rating

Version or Other: 6.8.4

Analysis based on field inspection dated:   05/12/21

Controlling Component and Failure Mode:
Moment at midspan

## NEW INVENTORY CODING

| | |
|---|---|
| NBI ITEM 63 - Operating Rating Method | 8 - LRFR in Rating Factor |
| NBI ITEM 64F - Federal Operating Rating | 1.65   Rating Factor |
| MDOT Item 64MA - Michigan Operating Method | 8 - LRFR in Rating Factor |
| MDOT Item 64MB - Michigan Operating Rating | 2.15   Rating Factor |
| MDOT Item 64MC - Michigan Operating Truck | 2   D - Designated |
| NBI Item 65 - Inventory Rating Method | 8 - LRFR in Rating Factor |
| NBI Item 66 - Federal Inventory Rating | 1.27   Rating Factor |
| NBI Item 41 - Structure Open Posted Closed | A - Open, No Restriction |
| NBI Item 70 - Bridge Posting | 5 - 100% or more |
| NBI Item 141 - Posted Loading | |
| MDOT Item 193A - Michigan Overload Class | |
| MDOT Item 193C - Overload Status | |

| | | |
|---|---|---|
| Analyzed By – Signature and Date | Jon Lidgard, PE | 05/13/21 |
| Checked By – Signature and Date | Mike Soteropoulos, PE | 05/13/21 |
| Database Updated By – Signature and Date | | |

Byron Turnquist Deposition / 000023

# ROWE PROFESSIONAL SERVICES COMPANY

| CORPORATE OFFICE (810) 341-7500 | LAPEER (810) 664-9411 | MT. PLEASANT (989) 772-2138 | MYRTLE BEACH, SC (843) 444-1020 | KENTWOOD, MI (616) 272-7125 | AIR-LAND SURVEYS (810) 762-6800 | FARMINGTON HILLS (248) 675-1096 | GRAYLING (989) 348-4036 |

CALCULATED BY SOL

DATE 5/12/21

WEATHER GROSSMAN CULVERT LOAD RATING

JOB NUMBER 2165090

SHEET 1

STEEL ANGLE = 5" × 3 × ½ → AREA = 3.75 in²

$$\frac{3.75 \text{ in}^2}{1.27 \text{ in}^2 (\# 10 \text{ BAR})} \cong 3 \text{ BARS PER ANGLE}$$

5 TOTAL ANGLES = 15 #10's SPA @ 9.5"

WIRE MESH = 6×6×⁸/₈ WIRE → AREA = .16 in²/FT (PER TABLE ...)

THERE ARE 2 LAYERS OF MESH = .32 in²/FT

.32 in²/FT ≅ 0.31 in²/FT = #5 BAR @ 12"

TIMBER RAIL

2×6 RAIL

2×6 SPINDLE (TYP)

6×6 POST

6×6 TOE (2×2)

5×6×5½" (TYP)

TOP OF SLAB

SPINDLES SPA @ ...
6×6 POSTS LOCATED AT ENDS AND MIDSPAN
AND 5½ SCUPPERS SPA AT 3'-0" C/C

TOTAL WEIGHT ≅ 30 #/FT

Byron Turnquist Deposition / 000025

5/13/2021

## Load and Resistance Factor Rating Summary

### Girder Summary

| Live Load | | Rating | | Capacity | Location | | | | |
| | | Factor | Controls | (Ton) | Span | (ft) | Percent | Impact | Lane |
|---|---|---|---|---|---|---|---|---|---|
| HL-93 (US) | Inventory | 1.269 | STRENGTH-I Concrete Flexure | 45.67 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| HL-93 (US) | Operating | 1.645 | STRENGTH-I Concrete Flexure | 59.21 | 1 | 4.00 | 50.0 | As Requested | As Requested |

Note:
"N/A" indicates not applicable
"**" indicates not available

Byron Turnquist Deposition / 000027

5/13/2021

## Load and Resistance Factor Rating Summary

| Live Load | | Rating Factor | Controls | Girder Summary Capacity (Ton) | Location Span | (ft) | Percent | Impact | Lane |
|---|---|---|---|---|---|---|---|---|---|
| Type 3 | Legal | 2.201 | STRENGTH-I Concrete Flexure | 55.03 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Type 3-3 | Legal | 2.615 | STRENGTH-I Concrete Flexure | 104.61 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Type 3S2 | Legal | 2.414 | STRENGTH-I Concrete Flexure | 86.91 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 1 Unit Truck 01- NL and DL | Legal | 2.325 | STRENGTH-I Concrete Flexure | 38.82 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 1 Unit Truck 02- DL | Legal | 2.147 | STRENGTH-I Concrete Flexure | 50.88 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 1 Unit Truck 03 | Legal | 2.575 | STRENGTH-I Concrete Flexure | 70.04 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 1 Unit Truck 04 | Legal | 2.575 | STRENGTH-I Concrete Flexure | 86.78 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 1 Unit Truck 05- DL | Legal | 2.406 | STRENGTH-I Concrete Flexure | 101.03 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 2 Unit Truck 08- DL | Legal | 2.342 | STRENGTH-I Concrete Flexure | 107.04 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 2 Unit Truck 09- NL and DL | Legal | 2.325 | STRENGTH-I Concrete Flexure | 59.75 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 2 Unit | Legal | 2.147 | | 70.21 | 1 | 3.20 | 40.0 | As Requested | As Requested |

Byron Turnquist Deposition / 000029

**Bridge Name:** Grossman Residence Slab Culvert
**NBI Structure ID:** Grossman
**Bridge ID:** Grossman House

**Analyzed By:** BrR
**Analyze Date:** Thursday, May 13, 2021 13:15:37
**Analysis Engine:** AASHTO LRFR Engine Version 6.8.4.3001
**Analysis Preference Setting:** None

**Report By:** brr
**Report Date:** Thursday, May 13, 2021 13:15:49

**Structure Definition Name:** Slab
**Member Name:** S1
**Member Alternative Name:** Slab analysis

Byron Turnquist Deposition / 000031

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Michigan 3 Unit Truck 21 -DL | Permit | 3.833 | STRENGTH-II Concrete Flexure | 290.13 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 3 Unit Truck 22 -DL | Permit | 3.964 | STRENGTH-II Concrete Flexure | 319.87 | 1 | 3.20 | 40.0 | As Requested | As Requested |
| Michigan 3 Unit Truck 23 -DL | Permit | 4.185 | STRENGTH-II Concrete Flexure | 322.21 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 3 Unit Truck 24 -DL | Permit | 3.665 | STRENGTH-II Concrete Flexure | 223.58 | 1 | 4.00 | 50.0 | As Requested | As Requested |
| Michigan 3 Unit Truck 25 -DL | Permit | 4.329 | STRENGTH-II Concrete Flexure | 354.97 | 1 | 4.00 | 50.0 | As Requested | As Requested |

Note:
"N/A" indicates not applicable
"**" indicates not available

Byron Turnquist Deposition / 000033



INNOVATIVE IDEAS
EXCEPTIONAL DESIGN
UNMATCHED CLIENT SERVICE

Grossman Residence
Slab Culvert Review
· May 19, 2022
Page 2 of 2

DLZ's analysis produced the following results: a Federal Inventory Rating of 1.027, a Federal Operating Rating of 1.331, and a Michigan Operating Rating of 2.158.  MI Trucks #2 & #17 controlled for the MI Operating Rating.

In summary, after reviewing the report by Rowe, DLZ has come to conclusion that their assumptions are reasonable and conservative.  We agree that although the updated, more conservative inventory rating is very close to 1.0, the structure can support the legal loads that are allowed to drive on Michigan roads without any concerns.

If you have any questions, or require additional information, please feel free to contact us.

Sincerely,
DLZ Michigan, Inc.

**Brian Bachler**
Digitally signed by Brian Bachler
DN: E=bbachler@dlz.com, CN=Brian Bachler, OU=Active, OU=DLZ Accounts, DC=dlzcorp, DC=com

Brian Bachler, P.E.
Township Consulting Engineer

CC:     Ms. Kathy Sederlund, Office Manager, Charter Township of West Bloomfield (via email)
        Mr. Jason Rosell, CPII, Engineering Manager, Planning & Devel. Services, Charter Township of West Bloomfield (via email)
        Ms. Amy Neary, Planning and Development Services Director, Charter Township of West Bloomfield (via email)
        Ms. Michelle Gartland, Environmental & Project Analyst, Charter Township of West Bloomfield (via email)
        Ms. Shannon L. Filarecki, P.E., Township Consulting Engineer, DLZ (via email)
        Mr. Yadong Dong, P.E., Township Consulting Engineer, DLZ (via email)
        Ms. Danielle Sutton, Clerk, DLZ (via email)

X:\Projects\2022\2245\739500 WBT As-Needed Eng\Grossman Residence Slab Culvert Analysis

Byron Turnquist Deposition 000035 Harbor  Chicago  Cincinnati  Cleveland  Columbus  Detroit  Flint  Fort Wayne  Indianapolis  Joliet  Kalamazoo  Lansing  Lexington  Louisville  Madison  Melvindale  Munster  Muskegon  Pittsburgh  Port Huron  Saint Joseph  South Bend  Toledo  Waterford

**Preliminary (calculated) points can be requested from the MDOT Bridge Systems Engineer for a local agencies bridge inventory. Send requests to MDOT-Bridge-Data-Request@michigan.gov**

### *Site Review for Bridge Applications*

MDOT bridge personnel will review submitted applications for completeness and determine the preliminary (computer generated) rating points. The LAP bridge staff will perform site visits (if necessary), verify appropriate scopes of work, and create written site reports. The applications, preliminary rating points, and the site reports will then be forwarded to the respective Region Bridge Council for their review and the addition of the discretionary rating points.

### *Project Estimate vs. Application Estimate*

The Local Bridge Advisory Board has set a policy for projects coming in over application estimate. If, at the grade inspection stage, the project estimate exceeds the application estimate by more than twenty percent, the Region Bridge Council may review the project. The council can decide to accept the project at the increased estimate, cap the project at a percentage above the application estimate, or request an application for additional funds be submitted in the next call for projects. Due diligence must be taken in getting the most reasonable application estimates.

### *Bridge Application Package and Submission*

Please be sure your Structure Number is correct and have your signed resolution, SI&A, Bridge Inspection Report, cost estimate, location and detour maps, project narrative, letters of support, and photos ready to include as attachments. See Exhibit 3 for further details.

Applications can be submitted electronically using the Local Agency Bridge Program website, or directly at FY 2027 Local Bridge Program - Call for Applications Submission Sheet Download Submission Sheet to enable functions.

Byron Turnquist Deposition / 000037

Estimated repair costs for bridge rehabilitation projects will vary by the type of work. Include publicly owned utility relocation costs. Examples of rehabilitation work eligible for funding under the program include:
- Full deck replacement (with or without painting of steel beams)
- Superstructure replacement
- Structure widening
- Removal of existing bridge without replacement

### *Preventive Maintenance*

Preventative Maintenance applications can be a single bridge or multiple bridges submitted for similar preventive maintenance work into one application. This can include multiple agencies working together to submit one application. A multiple preventative maintenance bridge application will count as one application. The Region Bridge Councils will review a multiple structure application as one package and will not rate each structure independently. Preventive Maintenance activities are eligible under the Local Bridge Program.

When applying for a multiple bridge preventative maintenance project, submit each structure individually. Select "PM-Multiple Structure" as the type of work on each form. Examples of Preventive Maintenance include:

- Hot mix asphalt (HMA) overlay with waterproofing membrane
- Epoxy deck overlay (Concrete)
- Deck overlay (removing and replacing concrete surface above/below the top mat of steel reinforcement)
- Painting only (full, zone, or spot painting)
- Pin and hanger replacement
- Slope paving repair
- Joint replacement and repair
- Drainage system repair (bridge deck drains and bridge approach downspouts)
- Scour countermeasures
- Concrete crack sealing
- Concrete patching and repair
- Approach pavement relief joint installation
- Temporary supports
- Expansion or construction joint repair
- Guard rail beam retrofit or installation
- Substructure repairs

Byron Turnquist Deposition / 000039

| A. | Approach Construction | (A) $_____ |
|---|---|---|
| B. | Structure Construction | (B) $_____ |
|   | Total (A & B) | Total   $_____ |

**Note: Use the attached Cost Estimate Worksheet to calculate the approach and structure construction costs.**

7.     Submit a **"Priority List"** listing all the structures that you want rated.

8.     **For each application**, submit a current resolution, signed, and dated, from the governing board supporting the project.  Resolutions from previous applications will not be accepted. Any application not containing a signed resolution for all applications will be considered incomplete and will be rejected. Letters of local support are recommended but are not mandatory.

9.     Any application that is not complete will be rejected.  Common examples of incomplete applications are those that are missing updated SI&A forms, photos of postings, load ratings, missing resolutions, and priority lists.  All completed applications must be submitted by the April 1st ,2024 deadline.

10.     All local agencies are encouraged to have asset management plans for the bridge applications submitted.  A summary of the local agency's bridge network asset management plan may also be submitted for review. To reduce file size, provide a link, if possible, to the location of the asset management plan. Refer to the Asset Management Guide for Local Agency Bridges in Michigan, located on MDOT's Local Agency Bridge Program's website.

11.     Previous years' applications have been discarded.  The Region Bridge Councils and the Local Bridge Advisory Board will only review applications submitted during the current call for applications.  After the applications have been reviewed and projects have been selected for funding, all non-funded bridge applications will be discarded.

Submit Applications:

By E-mail:     Fill out form at the link below and attach application (One application per sheet).
**Application conversion to pdf is preferred over scanned applications due to file size.**
FY 2027 Local Bridge Program - Call for Applications Submission Sheet
Download Submission Sheet to enable functions.

Questions: Contact Rita Levine at (517) 335-4528, e-mail: leviner@michigan.gov or Keith Cooper at (517) 331-1395, e-mail: cooperk@michigan.gov.

Byron Turnquist Deposition / 000041