# PLAINTIFF'S EXHIBIT I

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,
        Plaintiff,
-vs-
                        Case No.: 23-11851
CHARTER TOWNSHIP OF        Shalina D. Kumar
WEST BLOOMFIELD,        United States District Judge
        Defendant.
_____/

DEPOSITION OF BRIAN HARRIS

Taken by counsel for Plaintiff in West Bloomfield

Township, Michigan, on Wednesday, April 10, 2024, at

9:05 a.m. via Zoom remote videoconferencing.

APPEARANCES:

For Plaintiff:    JAN JEFFREY RUBINSTEIN (P57937)
        The Rubinstein Law Firm
        30665 Northwestern Highway, Suite 165
        Farmington Hills, Michigan 48334
        248.220.1415
        jjr@therubinsteinfirm.com

For Defendant:    MATTHEW J. ZALEWSKI (P72207)
        Rosati Schultz Joppich & Amtsbuechler PC
        27555 Executive Drive, Suite 250
        Farmington Hills, Michigan 48331
        248.489.4100
        mzalewski@rsjalaw.com
Also present:    MR. GARY GROSSMAN
Reported by:    LINDA M. MORELLI, CER-3349
        Meadowbrook Court Reporting
        office@meadowbrookcourtreporting.com

Page 1

TABLE OF CONTENTS

WITNESS:                    PAGE

BRIAN HARRIS

Examination by Mr. Rubinstein            3

EXHIBITS
(Attached hereto)

EXHIBIT NO.        DESCRIPTION        PAGE REFERENCED
EX. NO. 1    Photos of trail and bridges        21
EX. NO. 2    Vacant Property Compliance Request    25
EX. NO. 3    Prior violations and corrections    30
EX. NO. 4    Inspection report history        33
EX. NO. 5    Email chain        55
EX. NO. 6    Vacant property building permits list  60
EX. NO. 7    7-25-19 approved electrical sticker  65

Page 2

West Bloomfield Township, Michigan

April 10, 2024

At or about 9:05 a.m.

COURT REPORTER: May I have stipulation of counsel that we are taking this deposition via Zoom videoconferencing and that I will be swearing the witness in remotely?

MR. RUBINSTEIN: So stipulated.

MR. ZALEWSKI: And stipulated for Defendant, too.

MR. RUBINSTEIN: Good morning, Mr. Harris. How are you today?

THE WITNESS: Good, good, Mr. Rubinstein. How are you doing?

MR. RUBINSTEIN: I'm well.

So I introduced myself just a few moments ago before we went on the record, but just for the record, my name is Jan Rubinstein. I represent the plaintiff, Gary Grossman, in this lawsuit that's in federal court.

BRIAN HARRIS,
having been first duly sworn to tell the truth was examined and testified as follows:

EXAMINATION

BY MR. RUBINSTEIN:

Q    Are you familiar with the lawsuit at all?

Page 3

A    A little bit, yeah. I've been aware it's been ongoing.

Q    Okay. And the deposition process is fairly simple. It is a verbal question and answers. I sort of distinguish verbal question and answers from nonverbal communication, like nods of the head, shrugs of the shoulder. Sometimes in conversation we might use terms like uh-huh, uh-uh, but in a deposition, that's going to be difficult. So if either you or I do that, either Linda might correct us or I might correct us. If you say uh-huh, uh-uh, I might ask you is that a yes, is that a no.

If you don't understand any questions, I'd be happy to rephrase. If you do give me an answer, I'm going to presume you understood the question, okay?

A    Understand.

Q    All right. Have you ever been deposed before?

A    I'm sorry. What was the question again?

Q    Have you ever been deposed before?

A    Never.

MR. RUBINSTEIN: Okay. And just, again, as a preliminary instruction, the record should reflect that the witness has been subpoenaed, and the testimony may be used for any purpose under the Michigan Court Rules, the Michigan Rules of Evidence.

BY MR. RUBINSTEIN:

Q    All right. Finally, you might, through the course of

Page 4

1 (Pages 1 to 4)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

this, hear some objections and some conversations between Mr. Zalewski and myself. Typically speaking, if there's an objection or even a disagreement between him and I, generally, you're still going to answer the questions unless there's an instruction made not to answer it, okay?

A   Understand.

Q   All right. You said you have never been deposed before?

A   Never.

Q   Have you ever testified in any manner?

A   I have in court, yes.

Q   You've testified in court?

A   Not regarding this case but in other ones, yes.

Q   Understood. What kind of case was that?

A   Oh, it was a civil matter re -- couple years ago, for the township.

Q   West Bloomfield?

A   Yes.

Q   All right. Just one other time you've testified, or was it more than one time?

A   Just one time.

Q   All right. Did you do anything to prepare for the deposition today?

A   I looked at the background of the property in our computer and the history of the property.

Q   Okay. Did you meet with anybody?

Page 5

A   Met with Mr. Zalewski a few weeks ago.

Q   All right. Did you review any documents?

A   No.

Q   Now, I'm going to show you some exhibits throughout the course of this deposition, and then there's some things that are kind of non-exhibits, let me just say, that I might refer to.

For instance, we sent a notice of deposition to the defendant's attorney. Have you seen that notice of deposition?

A   Yes.

Q   Okay. Did you bring any documents with you pursuant to this notice?

MR. ZALEWSKI: I just want to put an objection on the record to the document request. The document request called for documents that Defendant intends to use at trial, which is duplicative of the document request to the township of the same nature, and is not within this deponent's purview to produce.

MR. RUBINSTEIN: All right. Mr. Zalewski, are you saying that it would be the same documents that would be --

MR. ZALEWSKI: Yes.

MR. RUBINSTEIN: -- produced?

MR. ZALEWSKI: Yes.

Page 6

MR. RUBINSTEIN: Okay. All right. No problem. And I have all of those documents.

BY MR. RUBINSTEIN:

Q   Mr. Harris, do you go by any other names?

A   No.

Q   What city do you live in?

A   I live in Walled Lake.

Q   All right. And what's your highest level of education?

A   A bachelor's degree.

Q   From where?

A   Ferris State University.

Q   Okay. Can you just briefly tell me a little bit about your employment history from 2020 to present, last, roughly, four years?

A   I've been at West Bloomfield Township in the code enforcement department. I'm the vacant and rental property inspector. My status hasn't changed.

Q   What's that, vacant and rental property inspector?

A   Correct.

Q   Your position hasn't changed at all in four years?

A   No.

Q   All right. I had some information that you started doing inspections at some point on multi-family residential units, as opposed to the vacant units. Is that accurate or not accurate?

Page 7

A   No. I -- they've -- I've been doing them together the whole time.

Q   Okay. And do you know the gentleman sitting to my right, Gary Grossman?

A   I do.

THE WITNESS: Hi, Gary.

BY MR. RUBINSTEIN:

Q   How do you know Gary?

A   I've met Gary at his property several times. He's come to town hall with questions and clarifications regarding inspection reports that I was dealing with.

Q   All right. Now, you are familiar with Gary's property at 6221 West Maple Road, West Bloomfield, Michigan?

A   I am.

Q   Do you have any other way of knowing Gary outside of inspecting that property?

A   No.

Q   Did you know him before he bought the property?

A   I did not know him.

Q   Okay. Now, this is kind of a general question, and I promise I'll get more specific shortly, but can you give me just a summary of what you've done relative to that property, 6221 West Maple Road, West Bloomfield?

A   It was owned by the bank, I believe, before Mr. Grossman owned it, so I was required to go there and inspect it,

Page 8

2 (Pages 5 to 8)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

make sure it -- just general upkeep, and make sure the outside -- there's no blight, it's not an eyesore to the surrounding neighborhood. And I went inside, too, as well. So, it was -- basically, I was looking for property upkeep, property maintenance to bring it up to minimal township standards.

Q   Okay. And --

A   It was before he took possession of it.

Q   "Before he took possession"?

A   Yep.

Q   And I asked you a few minutes ago about your employment history, and I didn't go back too far. I asked you from 2020, but, actually, this property was sold to my client in 2019. Are you familiar with that?

A   Yes.

Q   Okay. And it sounds like you had some familiarity with the property before it was sold to Gary?

A   Yes. I was familiar with the property before it was sold to Gary.

Q   Okay. If you know, when was the first time you visited this property and inspected it?

A   I would say, roughly, 2018. Yeah, 2018 'cause he purchased it in 2019. I would say it was 2018.

Q   All right. Now, prior to that first inspection in 2018, did you have any familiarity with this property?

Page 9

A   No, I didn't, no.

Q   Okay. And I don't know if you recall, but when you, well, when you first started inspecting the property before Mr. Grossman purchased it, did you go there more than once? Did you go there on a regular basis?

A   I went out there every thirty days to make sure nobody was occupying the property and make sure there was nothing out of the normal happening at the property.

Q   All right. And is there any way you can be any more specific? The year of 2018, do you happen to remember when you started inspecting the property?

A   If I -- to my recollection, it would have been summer that year or fall, right around that time.

Q   Okay. And let me back up a little bit. I apologize for jumping around. Where are you sitting right now?

A   I'm sitting in my office.

Q   Okay. Do you have any documents in front of you that you might look at or use in your testimony?

A   I don't have any paper documents in front of me right now.

Q   Okay. So you're just testifying out of your recollection; you're not looking at anything?

A   Correct.

Q   Okay. Your inspecting this property monthly starting in roughly summer or fall of 2018, is that typical? Is that normal for a property like this?

Page 10

A   When it's registered with the township, yes, it's recorded that we do monthly checkups on it.

Q   What do you mean, "when it's registered with the township"?

A   Vacant, abandoned properties have to be registered with the township by our ordin -- per our ordinance, and then they -- they're required routine, monthly inspections.

Q   Okay. So, if you recall, when you first started inspecting this property, do you recall what the conditions were, what your findings were?

A   Yeah, I do. There was some -- lot of cosmetic issues on the exterior, code issues on the interior that needed to be brought up to code.

Q   To the best of your recollection, can you give me some examples?

A   Yeah. Like GFIs on the inside, you know, just proper -- and on the exterior, like proper upkeep, like fallen gutters, damaged siding.

Q   All right. What did you do relative to those inspections? Did you create reports? Did you issue code violations, anything like that?

A   Yeah. I created reports, letters. I sent them to the bank or -- I think it was the bank who owned the property, or it was a corporation --

Q   Did you --

Page 11

A   -- probably out of state.

Q   I'm sorry. I didn't hear the last thing you said.

A   They were probably out of state, but I'm not sure. I'd have to check.

Q   Okay. The reports, the letters that you created, would you have those available in a system or computer anywhere?

A   They would be in our computer system, yes.

Q   Did you do a report every time you inspected?

A   At the time, I did, yes.

Q   Okay. Do you think you did a letter every time or most of the time?

A   I did, yes.

Q   All right. Prior to Gary Grossman purchasing this property, was there, to your knowledge, ever any type of code violation or ordinance violation?

A   Oh, that's what -- I thought that's what we were talking about the whole time, before he purchased the property.

Q   Yeah.

A   Oh, yeah, that's what I was referring to.

Q   Okay. So you said, and I might have misunderstood, that every time you did an inspection, you basically would do a report and a letter would go out to the bank?

A   Correct.

Q   Okay. Now, were those ordinance violations charged against the bank?

Page 12

3 (Pages 9 to 12)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

A  There were -- we documented -- yeah, we documented deficiencies, and the bank would have been required to repair those and correct them. We don't want to charge against a bank. We wrote up deficiencies, requirements, and asked them to take care of them.

Q  All right. And I apologize if we're not connecting on this issue. I just want to make sure I understand. Was there ever a misdemeanor ordinance violation issued for any of the issues against the bank?

A  Not to my recollection.

Q  All right. If there was, would that have been your job to issue those or recommend violation charges?

A  No. That would be a code enforcement officer that would pursue misdemeanor charges, somebody who can go to court and issue a citation.

Q  Okay. And you can't do that? You didn't have the authority?

A  I do not have the authority to do that.

Q  So you would write up letters and send reports regarding deficiencies. What, if anything, did the bank do? Did they correct those as you sent them?

A  No. And when they do, a lot of the times at these vacant properties it's very minimal.

Q  All right. Do you remember the bank taking any remediation measures whatsoever --

Page 13

A  I don't. I don't.

Q  All right. 'Cause that must have been fairly frustrating, I would assume, going back every month?

A  Yeah. Oh, yeah.

Q  What typically would happen in that situation when you have a property owner that is failing to keep up their vacant property? What's the next step if they ignore a bunch of letters from you?

A  What we do is I would open up a code enforcement case, and that would go to a code officer's desk, and then they would ultimately be able to issue a citation for lack of property upkeep.

Q  Okay. Did that ever happen with the bank?

A  Not with the bank, no --

Q  Is there a particular reason --

A  -- not to my recollection. I don't -- actually, I don't know exactly, but I don't -- to my recollection, I can't remember turning that over to code enforcement.

Q  Okay. And to the best of your recollection, do you have any idea why that may not have happened?

A  I don't. I don't. I'm not sure.

Q  And just to make sure I understand this, if a property owner is noncompliant or doesn't correct defects, you generally will issue a recommendation to the code enforcement officer; is that right?

Page 14

A  Correct. Like if they're ignoring me or refusing to do -- to take care of the defects, then I would open up a code enforcement case.

Q  And this is similar to a question I asked, but it's not exactly the same. Did you ever open up that code enforcement case as it relates to the bank?

A  My recollection, I'm not sure. I can't remember that far back with that property. And sometimes with the bank it's tough because they're out of state, and it's hard to issue a citation to somebody out of state.

Q  Okay. And that kind of leads into my next question. Because of the owner being a bank, were they treated any differently than either a local company or even an individual?

A  Yeah. I mean, with a bank, a lot of the times they're out of state. Like Bank of America's headquarters, I believe, are in Los Angeles. We can't -- if we issue a citation to somebody at the bank in Los Angeles, they're not going to appear for court, more than likely. So that makes it difficult with these bank-owned properties --

Q  Okay. Do you remember what the --

A  -- to get compliance from them, but they don't hold onto them forever. They sell it to an individual, and then the individual is normally determined to take care of the violation, so they can get a certificate of occupancy.

Page 15

Q  Okay. Do you happen to remember what bank owned this property?

A  I want to say it was Pemco, and I don't know if that was a bank but it was a corporation. I think Pemco was the name of the company.

Q  P-e-m-c-o?

A  P-e-m-c-o.

Q  All right. So when you do an inspection, and I apologize if this is a poor question, I apologize in advance, but what, exactly, do you inspect? Do you inspect everything? Are there certain things you're looking at? Are there certain things you don't have experience or, you know, expertise to inspect, or can you inspect everything inside and outside?

A  We have a checklist, and here in code enforcement, we're not HVAC experts, we're not electrical experts, we're not plumbing experts, so it's mostly the exterior. We're looking for property upkeep, general property maintenance.

Q  All right. So as it relates to this particular property, there's a easement over a bridge that's the entrance and exit from the property. Are you familiar with that?

A  I am. I'm familiar with the road and the bridge going over that little creek. I do remember that.

Q  Was the bridge a part of your inspection at all?

A  No. That's the engineering department's responsibility,

Page 16

4 (Pages 13 to 16)

**Page 17**

that bridge.

Q   All right.  Are you aware that the property in question -- strike that.

Let me just say, when I talk about "the property," I'm going to be always referring to 6221 West Maple Road, West Bloomfield.  So rather than continuing to say that address over and over again in these questions, can we just understand that if I talk about "the property," that's the property I'm talking about?

A   Yes.  I understand.

Q   All right.  Are you aware that the property has been designated a wetland?

A   I am aware now, yes.  I wasn't aware at the time, but I am aware.

Q   How did you become aware of that?

A   I looked in BS and A, and I looked at the notes that the environmental department took, that it's a wetland -- it's on a wetland -- or there's --

Q   Did you --

A   -- wetland issues.

Q   Okay.  How recently did you discover that?

A   To my recollection, a couple years ago --

Q   Okay.  So you didn't --

A   --the EFS wetland violations.

Q   All right.  Say that one more time, that last part.  I

**Page 18**

didn't hear it.

A   There were environmental features or -- I'm not familiar with the terminology, but there were issues regarding wetland and woodland.  So that was -- I think that's part of the ongoing meetings here with this property.

Q   Do you have any experience or expertise relative to wetlands?

A   No.

Q   Okay.  Do you have any experience or expertise relative to bridge construction or structure?

A   No.

Q   Okay.  And you kind of mentioned this to me a few minutes ago.  You used an example.  You said I'm not like an expert on HVAC.  Okay.  So did you inspect the HVAC?

A   When we go inside vacant properties, we require an HVAC certification.  It's like -- that's a furnace checkup, to make sure there's no carbon monoxide, but I'm not an HVAC expert, by any means.

Q   Okay.  But is the HVAC included in your checklist of inspection items?

A   Yes, when we do an interior inspection.

Q   Okay.  Your inspections, I believe you said you generally inspect the exterior, but did this property include interior inspections also?

A   Well, this property -- yes.  This property started -- it

**Page 19**

was a requirement to do interior inspections when I was in the building department, and in 2018, when I was in the building department, we went inside.  The bank had to provide access to us, like through a lockbox code.  So we did interior inspections, and that's in 2018, 2019.  And that changed in 2021, that I don't do exterior -- I only do exterior inspections now on vacant properties unless --

Q   Is there --

A   -- unless there's --

Q   I'm sorry.

A   -- water intrusion, like a lot of holes on the siding or a hole in the roof that would require me to go inside if there's water intrusion or potential for animal intrusion.

Q   So I want to make sure I heard you right.  Starting in about 2021, you no longer inspect the interior of vacant properties or --

A   On most I don't, no.

Q   Okay.  And that's generally your job description for any properties, not specifically this one?

A   Correct.  That's across the board.

Q   Okay.  So I'm going to ask similar questions on plumbing and electrical.  Did you inspect on this property the plumbing and electrical?

A   Not the plumbing or electrical system, no.  I'm not a licensed plumber or a licensed electrician, so that's --

**Page 20**

yeah, I didn't, but I looked for little things, like GFIs, you know, make sure there's the proper GFIs in wet areas.

Q   Did the scope of what you were looking at at any point change relative to this property?

A   Can you repeat that or clarify that question again?

Q   Yeah.  It wasn't a great question.  I'll acknowledge that.

The scope of your inspection, meaning what you were actually looking at, you know, and your procedure in going out there, did that scope increase or decrease?  Did the things that you were looking at at any point change on this property or did you kind of have the same system every time you went and inspected?

A   Same system every time I inspected.

Q   Okay.  So your inspection on the first day you inspected in 2018, presumably was fairly similar, outside of the results, but fairly similar to the way you inspected it the last time?

A   Yep.  It was just sticking to the inspection report, following along with that.

Q   When was the last time you inspected this property, if you know?

A   2022.

Q   All right.  I'm going to show what we've marked as Exhibit 1, some photos.  Bear with me for a moment.

Do you see my screen, Mr. Harris?

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

A   I don't. It's just a dark screen. Oh, I see this now, yes.

Q   Okay. All right. Let me zoom out a little bit so you can see the full page.

And by the way, as we're doing this, at any point if you want to break, if you need a restroom, if you want a glass of water or something like that, just let me know, okay?

A   Okay.

Q   All right. The first picture, which has been identified as Deposition Exhibit 1, it's Bates number in Harris dep 00001.

Do you recognize this picture?

A   I don't recognize the picture. I recognize the property but not that picture.

Q   Okay. And as I'm sort of directing this, if you want to zoom in or zoom out, scroll up or scroll down, just let me know, okay?

A   Okay.

Q   So this is the home located at 6221 West Maple Road, West Bloomfield?

A   Yes.

Q   Okay. I'm going to scroll down. I'm actually going to zoom in a little bit 'cause my eyesight's not that good, so, hopefully, this will help us see.

Page  21

All right. And there's a few similar pictures, but the picture on my screen right now, can you tell me what that is?

A   That's the bridge, the easement leading up to Mr. Grossman's property.

Q   All right. Now, correct me if I'm wrong, but Mr. Grossman's property is landlocked.

Do you know what I mean by that term?

A   I don't know what you mean by that term.

Q   Aside from this easement, there's no road that accesses the property; is that true?

A   I'm not sure because that's -- it's a -- it's -- the property's about three quarters of a mile off Maple Road. So I guess if the proper term's an easement, then I understand, but it's — I call it a trail or three-quarters of a mile trail, dirt road that leads up to his property.

Q   Okay. And that easement, trail, dirt road, whichever characterization we want to use, that's what's referenced in this photo?

A   Mm-hmm.

Q   That's what we're looking at? Is that a yes?

A   Yes, that and the bridge.

Q   Okay. And that's the only access to the property from Maple Road; is that correct?

Page  22

A   That's correct.

Q   There's no neighborhood road, there's no other driveway, paved or unpaved; is that true?

A   That's correct, yes.

Q   Okay. To your knowledge, this trail, dirt road actually crosses somebody else's property; isn't that true?

A   I'm not aware of that. I do not know that.

Q   Okay. So do you know if this bridge is on Mr. Grossman's property or somebody else's property?

A   I do not have knowledge of whose property that's on. I would assume it's Mr. Grossman's property, but I don't know. That's new to me if it does cross onto somebody else's property.

Q   Sure. And there's a couple other pictures. They're kind of duplicative, so I'm going to scroll down just so you can see the other pictures.

Does this accurately reflect what this bridge looked like when you started inspecting this property in 2018?

A   I would say yes.

Q   Okay. And I'm going to go through just, you know, a couple more. I have seven or eight, so I'm not going to belabor them too much, but do you know if this is, what I'm showing you now, if this is the current condition of that bridge?

Page  23

A   I don't know. I don't know what the current condition of that bridge is.

Q   Do you know if this is what the bridge looked like when you inspected the property last in 2022?

A   I don't know.

Q   Okay. All right. Sure.

Now I'm going to scroll down a couple more images to this image. Never mind the handwriting on the top right corner. Do you know what this image is?

A   That looks like a repaired bridge, new rails, new lumber on the bridge. It looks like it was repaired.

Q   Okay. So do you believe this is the same bridge?

A   I believe it is.

Q   All right. And you said "new rails, new lumber." Does it appear to have new concrete?

A   Can't tell from that picture. I mean, it looks like a wooden surface you can drive on on that bridge.

Q   Okay. Have you seen the bridge that accesses 6221 West Maple Road in this condition from what you're seeing in front of you?

A   No, I haven't. To the best of my knowledge, I haven't.

Q   So, to the best of your recollection, the last time you inspected, in 2022, the bridge did not look like the image that's on our screen?

A   I don't remember it looking like that, no.

Page  24

6 (Pages 21 to 24)

MR. RUBINSTEIN: Okay. And just so the record is clear, this image is marked Harris dep slash 000009.

BY MR. RUBINSTEIN:

Q   All right. I'm going to go ahead and show you what I've marked as Exhibit 2, and I'm going to scroll out, so that you can see as much of this page as possible. Now, this exhibit is about three pages, which makes it a little bit difficult to show a witness on Zoom.

A   Uh-huh.

Q   Do you see this document?

A   I do, yes.

Q   Okay. Can you read it? Do you want me to scroll in, scroll out?

A   I see the document. I can read it just fine.

Q   Okay. Do you know what this is?

A   That's a vacant property compliance request from the building department.

Q   Do you know who authored this document?

A   I did. I was the inspector, and I wrote up the code violations.

MR. RUBINSTEIN: All right. Mr. Zalewski, I don't know -- I sent you our exhibits just a few minutes before we started. I assume you got them?

MR. ZALEWSKI: I did.

MR. RUBINSTEIN: Is there any way that we can

Page 25

take a five-minute break, and the exhibits can be provided to Mr. Harris because it's going to be a little difficult to go through line items here on Zoom.

MR. ZALEWSKI: Yeah.

Brian, can you print them if I send them to you, or I don't know if you already were sent them.

THE WITNESS: The docs? I don't think you sent them to me.

MR. RUBINSTEIN: Well, I just sent them to the court reporter and to counsel a few minutes before we started, so I didn't send them to you, Mr. Harris. I don't know if they were in the --

MR. ZALEWSKI: If I send them to you, Brian, can you print them where you're at?

THE WITNESS: Yeah, I can do that.

MR. ZALEWSKI: Okay.

MR. RUBINSTEIN: Or even if you want to review them on your own screen, that's fine, too.

MR. ZALEWSKI: Oh, yeah, that --

MR. RUBINSTEIN: I don't --

MR. ZALEWSKI: -- oh, that works, too, yeah.

MR. RUBINSTEIN: As long as you have the ability to look at them when I say, can you look at line item four or line item seven, whatever. I just want you to be able to follow along without me going back and forth on this

Page 26

screen, if that's okay with you.

THE WITNESS: Yeah. You just want me to print them out, and I can refer to them? I can do that --

MR. ZALEWSKI: Yeah. Or if you have a --

THE WITNESS: -- but either way, I can --

MR. ZALEWSKI: -- second screen.

THE WITNESS: -- follow along. It's not that hard.

MR. RUBINSTEIN: Okay. So --

MR. ZALEWSKI: I just sent them.

MR. RUBINSTEIN: -- let's take a five-minute break.

Matt, if you could send the witness the exhibits, and then we'll just reconvene at about 9:43, give or take.

MR. ZALEWSKI: Sounds good.

MR. RUBINSTEIN: All right. Thank you.

(Off the record at 9:38 a.m.)

(On the record at 9:44 a.m.)

BY MR. RUBINSTEIN:

Q   All right. Actually, before I ask you about this document, are there any other inspectors in West Bloomfield for vacant properties?

A   I'm the only one that's designated for that.

Q   Okay. And you mentioned that your last inspection was in

Page 27

2022. Is there any particular reason there was no inspections after 2022?

A   The reason was is Mr. Grossman was working towards compliance, working for a certificate of occupancy, and he just had some things to work out with other departments in the township, so that's why they stopped. He met my requirements, majority of my requirements.

Q   All right. Were you instructed to stop inspecting this property by anybody?

A   I let it go. I let this property go 'cause Mr. Grossman was working towards compliance.

Q   All right. Were you satisfied with his progress?

A   I was for my requirements, yes.

Q   Okay. So Exhibit 2, which is the Vacant Property Compliance Request, can you tell me a little bit about what this is?

A   Yep. So that was -- in the building department, that was the list -- an itemized list of all the code violations, the code sections in the international property maintenance code, and then there was my comment below that, which was descriptive of what I wrote up, what I documented that he was required to repair.

Q   Okay. And my understanding is that this document was for the prior owner and not for Mr. Grossman?

A   Correct, yes. That -- yes, that was for Pemco, the bank.

Page 28

7 (Pages 25 to 28)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

Q   All right. And you see on the form I gave you, there's some handwriting on it. Do you see that?

A   Handwriting? There's -- oh, there's -- yeah, there's some circles right there, yeah. There's numb -- yeah. Itemize one, two -- yeah, numbers and circles and bullets, bullet points.

Q   Do you know whose writing that is?

A   I do not know.

Q   Is that your handwriting?

A   That is not my handwriting.

Q   All right. Did you author this compliance request?

A   I did.

Q   Okay. Do you remember putting this together?

A   I put so many different ones together. I don't remember putting that exact one together, that, in particular, one.

Q   Is this typical of something you would have put together in the reports and letters from your inspections?

A   The printout would, not the numbers on there or the circles, but the printout is.

Q   Okay. So did something like that, without, obviously, the handwriting, did something like this go out monthly after each of your inspections?

A   Yes, they did.

Q   And these were code violations from the owner prior to Mr. Grossman; is that correct?

Page 29

A   Correct.

Q   All right. And before Mr. Grossman purchased the property, were any of these violations rectified?

A   My recollection, I don't think they were.

Q   Okay. Now I'm going to ask you to go to the next exhibit, Brian Harris Deposition Exhibit 3 --

A   Okay.

Q   -- which is a couple of pages later. All right. I'm putting it on my screen, but feel free to look -- if you have a paper copy, that might be easier.

A   Yeah, I do.

Q   All right. Have you ever seen this document before?

A   No, I have not seen that document, not that, in particular, one.

Q   Now, I will share with you that this document purports to be a summary of the work done relative to the twenty-two code violations from your prior compliance request. If I tell you that and you look at this document, does that appear to be accurate?

A   Of what was required? Can I ask a question?

Q   Sure.

A   This document right here, did the bank or the other -- the corporation that owned the property or is responsible for that part, they typed that up?

Page 30

Q   My understanding -- and typically, I don't answer questions by witnesses, but that's a fair question.

A   I know.

Q   My understanding, just for the purpose of our conversation, is that this was authored by Gary.

MR. RUBINSTEIN: Is that right, Gary?

MR. GROSSMAN: Mm-hmm.

THE WITNESS: Oh. Okay. Yes.

MR. GROSSMAN: That's correct.

THE WITNESS: Well, if it was authored by him, I mean, that's what I wrote up, and that looks pretty accurate.

BY MR. RUBINSTEIN:

Q   Okay. Now, on the left side of these columns, there appears to be a couple of words that, to some degree, identify the violation, and then to the right of each of those words appears to be the update to the violation, for lack of a better term. Would you agree with that?

A   Yes.

Q   Okay. Now, the remedies, the work done, it's all listed on the right column. Have you had occasion to observe and verify that these things have been done? And you might want to take a minute and review them. I don't know if you've ever seen this before, but take a minute and review this, but then

Page 31

I'm going to ask you if you've seen or verified that these repairs have been done.

A   A lot of these, I don't know how many, but I would say a good majority of these were done. Some of the other ones -- I can't inspect like the in -- like the ductwork, but a lot of these property maintenance stuff were corrected. I can say that a large percentage of them were.

Q   Okay. And for our purpose here, I'll tell you that where it indicates SWO, that acronym, that stands for stop work order. I don't know if you --

A   I'm familiar with that, yes.

Q   Okay. So there's a few of these entries that suggest that SWO, stop work order, prevented the remedy from being completed. Do you see that?

A   Yes.

Q   And then the other things appear to have been rectified. Do you see the rest of those?

A   I do, yes.

Q   As you sit here, do you have any reason to dispute that all of those items were, in fact, rectified?

A   I don't know. Let me take a close look.

Q   Sure.

A   Yeah. To my recollection, I have no reason to dispute it.

Q   Okay. And do you have any actual recollection that would confirm that any of these are completed? I mean, do you

Page 32

8 (Pages 29 to 32)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

remember seeing vents, soffits, new gutters? I mean, did you actually observe any of these things that you can recall now, or are you just not disputing --

A  I -- some of these, yeah, I do remember some of these being completed on -- especially on the exterior.

Q  Can you identify what you specifically remember being completed?

A  Yeah. Gutters I remember. I remember getting that HVAC certification for the furnaces. Hose bibs installed. I remember the mold air quality test. Yeah. I remember him cleaning up the property, getting rid of those shards of glass that were laying around. I remember the new front doors. He hired a locksmith to repair them. Let me see here. Yeah. Those are what I remember.

Q  Okay. And now I'm going to direct you to our next exhibit, which is Brian Harris Deposition Exhibit Number 4, and this is several pages, about four or five pages. So you might want to just take a look at it and look up when you're finished.

A  Okay.

Q  What is this document?

A  That's a page of the inspection report.

Q  What is this, five pages? This five-page document is a part of the inspection report?

A  Oh, I'm just looking at the back page of one of them.

Page 33

Q  Oh, no. Take a look -- it's a five-page exhibit, so it's kind of --

A  Okay. This is printed out on two sides, so it's a little confusing.

Q  Oh, sorry about --

A  It's okay. It's probably actually easier if you scroll. I can refer to that.

Q  Okay. All right. I'm going to zoom in a little bit 'cause I can barely see this from where I'm sitting.

A  Okay.

Q  All right. And you ask me where you want me to scroll. You want me to go down? You want to see the first page, the last page?

A  I'm just following along with you.

Q  All right. Well, first of all, I'm going to go back to the first page, and we kind of talked about this, but can you tell me for the record what this is?

A  That's the five-page inspection report, a given monthly report.

Q  Okay. And it appears to identify, and correct me if I'm wrong, it looks like the entire history of your inspections. As I go through it, I see inspections as early as August of 2018, and the last one, I believe, is roughly July of 2022. I'll go down to the last page. I'm sorry. Yeah, July of 2022 is the last one identified. So

Page 34

this appeared to me as I was reviewing everything as a kind of a full history of your inspections.

A  Yes.

Q  Okay. And would you happen to know from looking at this if these documents include all of the inspections you did at the property?

A  Yes, those are.

Q  All right. Is this document something that you keep in the ordinary course of business?

A  Well, when I go to the property I print off the document. Back then, at the time, I was -- I was -- yeah, I was using a lot of paper to print off. The pages kept growing as this dragged out longer, the inspections. But, yeah, I kept that document when I went to the property to refer to it.

Q  All right. And the five pages here -- and this is one of the things where it's a little difficult for me to scroll on Zoom, but I will, if you want, but the five pages here, can you tell me if this is the full and complete history or if there might be any other pages that I don't have?

A  Yeah, that's a full history. That sums it up.

Q  Okay. So every inspection you did every time you were at the property would be listed in these five pages; is that true?

A  Yes.

Page 35

Q  Okay. Now, are you familiar with stop work orders that were placed on this property?

A  I have a little bit of a idea of other departments putting stop work orders on the property --

Q  Can you tell me which --

A  -- not the department I was in.

Q  Okay. Can you tell me what you know about that, and who you learned it from?

A  Well, I could see it in our -- in BS and A, our computer software, that there was stop work orders posted by the development services department.

Q  What's the development services department? Can you describe that to me?

A  That's planning -- yeah, that's planning, engineering, environmental, zoning.

Q  All right. Did anybody tell you about the stop work orders or did you just happen to see them in the system?

A  Just saw them in the system.

Q  Okay. And what information is in that system? What information could you see when you saw those stop work orders?

A  Well, whatever official puts the stop work order on the property, they have to put it in our computer system, and they have to red flag it.

Q  Okay. What does that mean, to red flag it?

Page 36

9 (Pages 33 to 36)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

A   When you're looking at the property, like a red flag pops up. It says stop work order, so it catches your attention.

Q   All right. And do you have information about which officials put those stop work orders on this property?

A   I don't, no. I don't know.

Q   Is that included in the system and you just don't recall, or is it not included?

A   It's included in the system. I don't know which official placed the stop work order though. It might have been a couple people.

Q   Do you know how many there were?

A   I don't know.

Q   Do you know what the bases for the stop work orders were?

A   I believe it was work in a -- unauthorized work in a wetland area.

Q   Okay. That was one or there was more than one stop work order for that purpose?

A   Okay.

Q   No. I mean, that --

A   Yeah, that's --

Q   -- that was a ques --

A   -- that's the one I know about.

Q   Could there be more than one stop work order for the same issue or the same portion of the property, or would that

Page 37

just be one?

A   I'm not sure. I mean, we actually can issue multiple stop work orders on the same property, but I don't know how many there were for Mr. Grossman's property.

Q   Can you issue multiple stop work orders for the same issue or would they have to be different issues?

A   I'm not sure how to answer that question. I don't know. I --

Q   Okay. Do you --

A   -- yeah, I --

Q   -- issue --

A   -- don't know.

Q   Is that something you do ever, issue stop work orders?

A   I used to issue stop work orders. I don't anymore. My job description regarding that has -- when I moved from building to code enforcement, I stopped issuing the stop work orders 'cause that's a code officer's requirement.

Q   All right. And this is a really rudimentary question, so I apologize: Can you describe to me, what is a stop work order?

A   A stop work order means you have to stop work. You're doing work without permits or you're going against zoning regulations, and you have to stop work immediately and bring in the right plans or apply for the right permits.

Q   Okay. Do you know what Mr. Grossman would have to do to

Page 38

correct his stop work orders?

A   I don't.

Q   Okay. Now, a stop work order, is it a piece of paper? Is it written? Is it verbal? I mean, specifically -- and again, this is very rudimentary, but what is it? What would I look at if I saw a stop work order? Is it just an entry in the system or is it a piece of paper?

A   It's both. It's a big red placard you -- we put on a property or an accessory structure, and it's -- and it means to stop work. And then we also put it in our computer system so it's red flagged in our computer system.

Q   Okay. And you said "a big red placard"?

A   Orange or red, and it's a -- it means to stop.

Q   It's --

A   It's unauthorized work. It's unpermitted work.

Q   Okay. Is it like a sticker? Is it a document?

A   Yeah. So it's -- the physical document is a -- it's a sticker. The back of it peels off, and there's adhesive on it, and we can post -- we can put it on someone's window or door or accessory structure, wherever the work is taking place.

Q   Do you know when any of the stop work orders were issued for the plaintiff's property?

A   I don't know when. I don't have a recollection.

Page 39

Q   Do you know if it was before or after your last inspection?

A   Oh, it was before.

Q   So when you went for your last inspection, did you see a big red sticker on the property?

A   No, I didn't, not on the property.

Q   I'm sorry. You said "not on the property"?

A   No.

Q   Do you have any idea why there wouldn't have been a sticker on this property if there was a stop work order?

A   I don't have any idea why.

Q   Okay. Let me ask you this: If there's two stop work orders, would there be two stickers or just one?

A   That's a good question. I'm not sure. I imagine there would be two entries in our computer system. There would be, but I imagine there would just be one stop work order, but I've never -- I don't think I've ever seen that actually, not physically.

Q   You've never seen multiple stickers for multiple stop work orders?

A   No, but I've seen multiple entries, multiple stop work orders in our computer system.

Q   Okay. And where is that sticker placed on a property?

A   It could be -- well, like I said, it could be placed wherever it's visible, so people can see it. It can be on

Page 40

10 (Pages 37 to 40)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

**Page 41**

someone's window. It could be on someone's door. If they're doing work on a shed, a detached accessory structure, we can put it on the accessory structure. We can put -- they can put it on that bridge if they wanted to. They can put it wherever workers or the property owner can see it, so they -- so it gets their attention and allows them to make right about the situation.

Q  So would it be fair to say that the intention is to put the stop work order sticker in the most visible place that it's going to be seen?

A  Yes, yes.

Q  Do you know if Mr. Grossman's property still has stop work orders on it?

A  It does still have stop work orders on it.

Q  And what does he need to do to remove those?

A  I'm not sure. I would say he would have to work with development services on the best course of action to remove those 'cause that's that department.

Q  Did you ever speak with Mr. Grossman about stop work orders?

A  I have, yes.

Q  All right. And did he tell you at any point that he never received anything, nor got stickers placed on his property?

A  I don't remember exact -- the -- exactly what he said, but

**Page 42**

he said, I have to stop work. There's stop work orders. I can't do much. There's very little I can do. I'm limited because of the stop work orders on my property.

Q  Is there a mechanism where a homeowner can challenge a stop work order?

A  Yes, he can, and it depends what type of stop work order it is. He can go to the zoning board of appeals. He can go to the construction board of appeals if it's a building-related matter. He can try and meet with the people that, you know, placed the stop work order and kind of come up with a plan; you know, bring your contractor in. There's ways to effectively communicate a stop work order.

Q  Okay. And is there any deadlines or timelines by which somebody would have to dispute a stop work order?

A  Usually, yes. Usually, if it goes to like a committee, like an appeal committee, you would have to come up with some kind of -- you would have to -- it'd have to be on the schedule, and there would be a deadline to get in front of that committee.

Q  Okay. And I assume that information would be provided on the sticker that's placed on the property?

A  No, no. It would be on a letter.

Q  Okay. So in addition to a sticker, there's a letter sent out when there's a stop work order?

**Page 43**

A  Yes. They're supposed to send out a letter.

Q  All right. And that letter has information regarding how you can challenge the stop work order or what would need to be done to comply with it?

A  Well, it's not the stop work order itself. It's the actual violations, the compliance report, like on a building -- like on the building report, the building code compliance report.

If you want to challenge the deficiencies, you can go to the construction board of appeals. You can sign up for that. But on the stop work order, there's a number to call of whoever put the number on there, and that's to -- you're supposed to call that individual who put the stop work order and find out what's required to make right about the stop work order, about getting permits.

Q  Let me back up a little bit.

A  Mm-hmm.

Q  Your employment history. I kind of want to go back to it. How long have you been an inspector for the city?

A  Going on seven years now.

Q  And when I say "for the city," we're talking about West Bloomfield Township, correct?

A  Correct.

Q  Were you an inspector in any other capacity prior to that?

**Page 44**

A  No.

Q  Do you have any specific education or experience that qualified you to inspect these properties?

A  A degree in public administration, but I have no licenses. I don't have a builder's license or anything.

Q  How did you learn how to do this job?

A  It took some time, but I was -- it was out in the field. I -- you -- I went --

I've learned through the people in the building department that taught me how to do this job, and I -- it took a while over time, but it was field work that was going -- it was going to these properties and getting a hands-on visual how to inspect.

Q  Okay. And over the course of your seven years, I mean, you probably don't have an exact answer for this, but about how many stop work orders have you seen or known about relative to these properties?

A  I don't know how many. There's -- stop work orders get issued all the time. I mean, I don't have a number.

Q  I mean, if I said hundreds, would you dispute that?

A  I would not dispute that, no.

Q  Have you ever seen a stop work order where there was not a sticker placed at the property?

A  No, I haven't. They're supposed to --

Q  You ever --

11 (Pages 41 to 44)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

A -- place one at the property.

Q Have you ever seen a stop work order where there's no letter of any kind sent to the consumer or the owner of the property?

A Yes.

Q You have?

A I've seen them. Usually, you put the stop work order on, and they call you right away and -- or they come in to meet you in person.

Q In what capacity? Why would there in some cases not be a letter sent out?

A Some people are better than others at sending out correspondence.

Q So there's no requirement, to your knowledge, that that stop work order has to be sent in writing, in a letter or something like that?

A It should be. That's the best way to notify somebody. You put it on the property and then you send out a letter, but not everybody does that.

Q Understood.

All right. Have you reviewed West Bloomfield ordinances regarding stop work orders at any point?

A No.

Q All right. And I don't have this marked as an exhibit, so bear with me. I can, if necessary, but I'm looking at

Page 45

Charter Township of West Bloomfield ordinance number C762, stop work order ordinance amendment.

Do you know if you've ever reviewed this?

A I've not reviewed that section, no.

Q All right. I'm going to read a section of it to you, and it may make more sense for me to scan it and send it over, but for our purposes now, let me see if I can just ask you a couple questions about this.

A Okay.

Q In section A of this ordinance, it says:

"Notwithstanding any code provisions to the contrary, after a written violation notice from a township officer, employee, or agent with appearance ticket authority under section 1-11, that work on any property within the township should be stopped because it is being done in violation of a provision of this code. A stop work order may be issued immediately where there is an imminent danger to persons, property or the environment from the violation."

Well, let me ask you this: Do you dispute that language? Do you agree that that's applicable to a stop work order?

A I do agree, yes. I --

MR. ZALEWSKI: Objection, foundation.

Page 46

MR. RUBINSTEIN: I didn't hear you. I'm sorry, Matt.

MR. ZALEWSKI: Just a foundation objection.

MR. RUBINSTEIN: Okay.

BY MR. RUBINSTEIN:

Q In this particular situation, could you identify any imminent danger to persons, property, or the environment on Mr. Grossman's property?

A No, 'cause it's not in my jurisdiction to do so. That's the environmental engineering department.

Q But you believe it was environmental, so you, presumably, believe that this stop work order was for something outside, correct?

A Outside of my scope of my work, yes.

Q Okay. I actually meant outside, like outside in the world, in the exterior.

Do you know if the stop work orders were for something that would have been interior, in the home, or exterior, on the outside?

A Exterior, on the outside.

Q All right. You thought it had something to do with the wetland area, correct?

A Yes.

Q And there's nothing that you've ever seen that suggested any type of imminent danger?

Page 47

A I really don't know what to look for with that, no, 'cause that's -- it's not my department. I don't know.

Q All right. Were you aware at one point in time there were some ordinance violations charged against Gary Grossman?

A Yes, I was.

Q Okay. Were you aware when that happened or did you become aware after the fact?

A I don't know -- have the exact dates, but it's within this timeline of the -- this five-page report.

Q How did you become aware of that?

A I see the red flag in our computer system that there was a stop work order, and there were wetland requirements or wetland violations.

Q Okay. So in your computer system, when you saw that red flag for the stop work order, there was some information about ordinance violations that were being charged?

A Yes, by the environmental department.

Q Okay. And do you know anything about those ordinance violations? Did you have occasion to speak with anybody about them or have any personal knowledge about what went on?

A No.

Q Do you have any idea how that case came out?

A I don't know how that case came out. I imagine Mr. Grossman applied for a permit, and it might have gotten

Page 48

12 (Pages 45 to 48)

MEADOWBROOK COURT REPORTING
(248) 334-6300

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

denied, but I'm not sure.

Q   And you're just guessing. I assume you don't know that to be true?

A   Yes, I don't know. I imagine he's trying to -- he was trying to get an environmental permit or -- and it was denied or -- I don't know though.

Q   Sure. Outside of just looking at the computer system and seeing the stop work orders with some reference to the ordinance violations, aside from that, did you come into the information, the ordinance violation information, from anybody else or any other source?
     That was a very convoluted question, so you might want me to rephrase, but if you understood the question, give me an answer.

A   Nobody brought it to my attention. I didn't communicate that with anybody in other departments.

Q   All right. Nobody talked to you about Gary or any ordinance violations?

A   No.

Q   Have you seen any other documents, records, correspondence besides what you saw in your system on the stop work order that referenced ordinance violations?

A   Nothing on his property, no, nothing placed on his property.

Q   When you say "nothing on his property," could you have

Page 49

seen a document that was not placed on his property, just in the course of your work?

A   No.

Q   Have you ever spoken on the phone with Mr. Grossman?

A   I have.

Q   Often? I mean, if I asked you how many times, would that be a question you'd be able to answer?

A   Oh, five or six, at least.

Q   Do you know when the last one was?

A   Oh, it was a couple months ago.

Q   If I suggested to you that there was a conversation in January 2024, would you dispute that?

A   I don't dispute that.

Q   Okay. What was the purpose of your last phone conversation with Mr. Grossman, if you know?

A   To determine if he was occupying the property still or not.

Q   All right. So you reached out to him to make that inquiry?

A   Yes.

Q   Okay. Was there any other purpose to calling you?

A   No.

Q   What did Mr. Grossman tell you about that?

A   He told me there were stop work orders, he doesn't have a certificate of occupancy, and he is not living at the

Page 50

property.

Q   Okay. In that conversation, did Mr. Grossman ask for you to provide a list of current code violations?

A   I don't think he did, no.

Q   At any point, has Mr. Grossman --

A   Well, he --

Q   -- asked you for --

A   -- he asked me for something. I can't remember what it was for, but he was -- with my current code violations, he was -- he met mine, and I don't -- I can't give out other departments'. I think that --

Q   Okay. Was he --

A   -- I think that's what it was.

Q   Okay. When you say he met my code violations, does that mean he remedied them?

A   Yes, he did.

Q   All of them?

A   Other than obtaining a C of O, a certificate of occupancy.

Q   All right. So on the Exhibit 2 that we looked at earlier and the list of twenty-two violations, aside from being able to obtain a C of O, you believe he's corrected all of those issues?

A   Yes. And we put structure -- I think on there, it said structure not fit for human occupancy. That's because he doesn't have a certificate of occupancy, but he met my

Page 51

code violations. But there's permits that he still needs to get through the building department, which I'm no longer a part of anymore, like electrical, mechanical, plumbing permits.

Q   All right. And that's the second time you mentioned that you're no longer a part of that unit. Can you kind of walk me through your different roles with the city and what the changes have been and when?

A   Yeah. So from April of 2017 to November of 2019, I was in the building department, and that's when this property fell in my hands and I was inspecting it. In November of 2019, I moved from building to code enforcement, and that's kind of when the interior inspections, we -- I wasn't doing as many of those. We were looking for more exterior upkeep. So that's what changed. It went from me being in the building department, looking at interior and exterior stuff, to me being in code and just looking more at the property maintenance upkeep on the exterior of the property.

Q   Okay. Are you still in code enforcement?

A   I am.

Q   So have you made any other changes since 2019?

A   There's been changes, but for the most part, a vacant property, we only look at the exterior.

Q   All right. And your position has not changed?

Page 52

13 (Pages 49 to 52)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

**Page 53**

A No, it hasn't.

Q Now, it always gets a little difficult when I talk about verbal conversations or phone conversations that might have occurred quite a while ago, so I recognize that.

Do you know if you may have had a phone conversation with Mr. Grossman in November of '23?

A I don't know. I -- no, I don't think I had a conversation with him in November of '23.

Q What makes you --

A I --

Q -- think you didn't? You just don't recall that?

A I don't recall it.

Q All right. Do you remember a phone conversation with Gary where you were asking him if the mold issues were corrected?

A That would have been a couple years ago, but I -- it's not completely clear to me.

Q Okay. And the mold -- let me back up a minute.

When you authored the list of the twenty-two ordinance violations to the prior owner, one of the violations was the presence of mold; is that --

A Yes.

Q -- correct?

A Yes.

Q Okay. And you said a couple of years ago -- well, strike

**Page 54**

that.

Mr. Grossman remediated that issue; is that correct?

A That's correct.

Q Okay. And in 2021, he provided to you and to other city officials a report confirming that the mold had been properly remediated?

A Yes.

Q Okay. Was there any issue with the mold report, the inspection, the testing that was done after it was rectified?

A No, there was no issue. It passed. Our building official approved it.

Q How was Mr. Grossman to work with?

A He was good to work with. He was knowledgeable. He seemed committed to at least getting my stuff done that I required him to do, and he was very thorough. So, overall, he was good to work with.

Q All right. I'm going to show you some additional exhibits, a couple of emails, which are my Exhibit 5. Whoa. I'm going a little too fast. Sorry.

All right. I'm showing you -- and Exhibit 5 is two pages, and that's two separate emails. I just marked them together.

A Okay.

**Page 55**

Q Okay. Let me make this a little bit easier.

Do you see Exhibit 5 on my screen?

A I do, yes.

Q And have you ever seen this before?

A I do remember this email, yes.

Q Take a minute and read it and just look up when you're finished. I might ask you a couple questions about it.

A (Complying.)

Q Okay. Well, first of all, do you recall receiving this email?

A I do, yes.

Q All right. And, to your knowledge, does this appear to be accurate, the email that was actually sent to you back in September of '21?

A Yes.

Q Okay. And what does this email purport to be communicating?

A That he is -- answered that he's taken my inspection report and he is working on meeting the requirements.

Q All right. And in this email, there are three separate references. One is "furnace inspection." One is indicated -- it says "send floor structure," but I would suggest that probably is a typo, and it should say second floor --

A Yes.

**Page 56**

Q -- and the third, "mold." Do you see that?

A I do.

Q Now, were each of those issues part of the preexisting code violations?

A Yes, they were.

Q All right. And I'm going to ask you specifically to look at the item identified as number two, which says "send floor structure."

Would you agree with me that that appears to be a typographical error, and it looks like he's talking about the second floor structure?

A I agree, yes.

Q Okay. Did Gary properly remediate or rectify these three issues when he sent this email?

A Yes, he did. He sent me a furnace report, an HVAC cert. He sent me a report from a licensed engineer regarding the second floor structure, and he provided a mold -- an air quality test for mold.

Q Okay. All right. I'm going to show you the next page on this exhibit, which is a shorter email -- actually, it's an email string. If you want me to scroll out so you can see the whole page, let me know.

A Okay.

Q Do you recognize this exchange, this conversation?

A I remember this, yes.

14 (Pages 53 to 56)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

Q  Okay. And are these emails accurate as far as what was sent to you and what you responded to Gary?

A  To the best of my knowledge, yes.

Q  Okay. So it looks like most email strings, the oldest appears to be on the bottom, and chronologically, it goes up. It appears that the bottom message on this page was a email sending Gary the report of the mold remediation.
   Would you agree with that?

A  Yes.

Q  All right. And the email above that appears to be Gary sending that to you.
   Would you agree with that?

A  Yes.

Q  Then you respond to him:
   "Hi, Gary. Thanks for sending me this. I was able to open the letter but was unable to open the attachment, which I'm assuming was the lab results report."
   Do you see that?

A  I do.

Q  Okay. And you agree that you sent that to Gary?

A  Yes.

Q  And then the top entry is Gary. It looks like he re-sent you the mold report and these items.
   Would you agree with that?

Page 57

A  Yes.

Q  And did you receive those when you got that top email, and could you open them?

A  I can't remember if I was able to open them, but I -- one -- Gary, I think, dropped off the results at town hall. I remember him coming to the counter.

Q  Okay. Now, these aren't the only items that were rectified, obviously. I mean, we saw Exhibit 3, and you testified that you really rectified all of your issues that you had; is that correct?

A  Yes, other than permits.

Q  Other than the permits.
   So I'm going to give you some examples, and if you know, let me know if he repaired violations for each of these items.

A  Okay.

Q  There was problems with a chimney, and there was a chimney inspection and approval required; is that correct?

A  To the best of my knowledge, yes.

Q  Okay. And Gary did remedy that?

A  Yes.

Q  Okay. There were some furnace carbon monoxide tests required --

A  Yes.

Q  -- is that correct?

Page 58

A  Correct.

Q  And those were done successfully?

A  They were.

Q  All right. The HVAC for this property was certified?

A  That's the furnace inspection, yes.

Q  Okay. An electric service cable was installed. Are you familiar with that?

A  Yes. And he got an underground -- he replaced the electrical service that was permitted. He got a permit for that. I think it went to underground electrical.

Q  Do you know when Gary completed the repairs for the issues that you had?

A  He worked his -- it wasn't all done at once, but it was within this timeline of this five-page report.

Q  Okay. And I believe the last inspection by you appeared to have been around July of '22; is that right?

A  Yes. I believe with the email chain, that was about accurate, with the three items on that email.

Q  And the email appears to be -- September of '21 was when these items were sent to you. Do you know what, if anything, was left to have been done after that email?

A  Work with the building department on getting permits, work with environmental on coming into compliance, but regarding what I was requiring, there wasn't anything left to do.

Page 59

Q  Okay. So in September of '21, regarding the issues that you were inspecting, he had completed all of them and satisfactorily, correct?

A  Correct.

Q  So for your job --

A  'Cause the other stuff I had to refer him to other people or other departments to work that out with, but we -- just with myself and Gary, what I was requiring, which is unpermitted work, yes, he met those requirements.

Q  Okay. So, as of September of 2021, as far as what you were requiring and which you were inspecting, did you have any further concerns?

A  Not to my knowledge, no.

Q  And I'm really just talking about the scope of your inspections and your work.

A  Mm-hmm.

Q  Was there any further testing, remediation or violations that had to be corrected?

A  No.

Q  Okay. I'm going to scroll down to my next exhibit, which is Exhibit 6. On my screen, I'm going to just zoom out so we get a better view.
   Take a look at Exhibit 6 and then look up when you're finished, please.

A  Okay. Yeah, I'm familiar with this.

Page 60

15 (Pages 57 to 60)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

**Page 61**

Q Do you know what this is?

A That -- those are vacant properties. They were active vacant properties at the time, and when they were in building -- when these were registered as vacant properties when I was in the building department, they were under permits, a building permit as a vacant -- we categorize those under building permits. A vacant property permit was a building permit when I was in the building department, but it took some time, but when I came up to code enforcement, we switched them to vacant property certificates. That's how we categorize them now. They're all vacant properties or certificates now, but in 2018, when it was first registered, it was a building -- a vacant property building permit.

Q So it changed from a vacant property building permit to a certificate?

A Correct.

Q Is there any real difference other than it may -- I mean, it was a semantical change, or is there any real substance to that change?

A There is because there are thousands of building permits that get -- a couple thousand, at least, of building permits that get issued per year in the building department. We track everything by certificate up here in code enforcement. So vacant properties and rental

**Page 62**

properties are both under certificates, and that's how we look them up in our computer system. We're not the building department, so we don't -- we're not the permit department, so we don't track permits.

Q So if I'm understanding your answer, and just correct me if I'm wrong, it sounds like changing the vacant property building permits to certificates made your job a lot easier 'cause you didn't have to look through hundreds or thousands of building permits?

A Yeah. It's really just what we do. We don't issue permits. So that's it. Yeah, I didn't have to look through hundreds, but we don't do anything with permits in code enforcement. We don't enter permits, and I think that's why we changed them to certificates.

Q Okay. Have you heard anything about Gary Grossman or this property from other West Bloomfield officials?

A I've heard the name. I've, yeah, I've heard other people talk about it.

Q I don't want you to share with me anything that was said with your attorney, but I'm talking about, really, conversations or things you might have heard outside of the presence of your attorney, okay?

A Just heard that, you know, we have a case in court, Grossman case in court. I know this has been in court for a while.

**Page 63**

Q Who have you heard about Gary or the property from?

A Other people in my department that may have issued a code compliance request to him.

Q Can you identify anybody?

A Well, yeah. There's Marlin Goble. He's a code officer. And then there's Michelle Gartland, who's the environmental inspector.

Q And I don't know if I heard you right. I think the first name you said was Marlin something like Doble?

A Goble.

Q Zoble with a Z?

A No, G. G-o-b-l-e. And he's the --

Q Goble?

A -- assigned code enforcement officer for that area of the township, that section of the township.

Q And what did Marlin tell you about Gary or the property?

A I don't remember. To my, yeah, to my knowledge, I don't even remember 'cause it was a -- probably a long --

Q Was that --

A -- time ago but no details.

Q And what about Michelle Dartmouth?

A Gartland.

Q What was her --

A Michelle Gartland.

Q Dartwood?

**Page 64**

A G, Gartland.

Q Okay. Dartman? Okay.

A I can spell it if you'd like me to.

Q Sure.

A G-a-r-t-l-a-n-d.

Q All right. And I apologize. I don't have the best hearing in the world.
She's with the environmental department?

A Yes.

Q And do you remember the substance of the conversation you had with her about Gary --

A I think she just -- yeah. I think she just wanted Marlin Goble to send out a letter to Mr. Grossman 'cause it's her case. It's her -- this is -- I think she's one of the inspectors on the environmental issues.

Q Do you know if the letter was ever sent?

A I don't know.

Q All right. Anybody else you've spoken to in the city or involved with the city about Gary or the property?

A No.

Q Do you know the name Jim Manna?

A I do know the name Jim Manna, yes.

Q Have you ever spoken with Jim about Gary or the property?

A No.

Q Okay. How about Steve Kaplan? Do you know Steve Kaplan?

16 (Pages 61 to 64)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

**Page 65**

A   I do, yes.

Q   And what is Mr. Kaplan's role, if you know, with the city?

A   He's the township supervisor.

Q   Okay. Now, Mr. Kaplan is also an attorney. Are you aware of that?

A   I am.

Q   But he's not your attorney nor is he the township's?

A   No.

Q   Okay. Do you remember what you spoke with — or strike that.

Have you ever spoken with Mr. Kaplan about Gary Grossman or the property?

A   I have not.

Q   All right. I'm going to show you what I believe is my last exhibit. This is our Exhibit 7. I'm going to zoom in 'cause this is kind of hard to read. Now, if I can ever get this on my screen — well, it's too far. At some point, this will be on my screen.

A   I think I saw it. I think I have an idea of what it is.

Q   Okay. But I'd like to refer to it, and it shouldn't be this difficult, right?

What is this, if you know? You have a paper copy. I'm going to get it centered in the screen, but what is this, if you know?

A   That's an approved sticker from the electrical inspector,

**Page 66**

approving the electrical service replacement.

Q   Okay. And this is dated July 25, 2019?

A   Yes.

Q   Do you know whose signature that is above "Building Department"?

A   That looks like Bill Prucknic.

Q   Can you spell that for me?

A   His last name? Yeah. It's P-r-u-c-k-n-i-c-k, I think -- no, there's no k at the end. No k at the end.

Q   Okay. Bill Prucknic. Okay.

Did you have any involvement with this electrical approval?

A   Once Bill approved it, I would have probably approved it on my general list, that it got done, but I had to wait for Bill to approve it because it's permitted work.

Q   Do you know if this electrical service approval corrected any prior code violations?

A   I don't know, no. That's just a standalone item, a standalone requirement.

MR. RUBINSTEIN: All right. I'd like to, if it's okay with everybody, take ten minutes right now. I could be about done. I might have a couple more questions, but we're ready to wrap up soon. Let me just take a look at what I've got and make sure that we get through everything.

**Page 67**

MR. ZALEWSKI: Sounds good.

THE WITNESS: Sounds good.

MR. RUBINSTEIN: All right. Thank you, gentlemen. Let's call ten minutes, so it's 10:43 right now, so let's all try to get back on about 10:53.

THE WITNESS: Okay.

MR. ZALEWSKI: All right. Thanks.

THE WITNESS: Thank you.

(Off the record at 10:43 a.m.)

(On the record at 10:54 a.m.)

MR. RUBINSTEIN: All right. I don't have any additional questions for Mr. Harris.

Thank you, sir.

THE WITNESS: No problem.

MR. ZALEWSKI: And I have no questions.

(Deposition concluded at 10:55 a.m.)

(Exhibits marked following deposition.)

17 (Pages 65 to 67)

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

STATE OF MICHIGAN   )

          )SS

COUNTY OF WAYNE    )


          I certify that this transcript, consisting of

sixty-seven (67) pages, is a true, complete and correct record

Of the testimony of BRIAN HARRIS in this case on April 10,

2024.


          I also certify that prior to taking this

deposition, BRIAN HARRIS was duly sworn to tell the truth.


Dated:  April 22, 2024


_Linda M. Morelli_

Linda M. Morelli, CER-3349

County of Wayne, State of Michigan

My Commission expires:  June 26, 2027

Page  68

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| **A** | | | | |
|---|---|---|---|---|
| a.m 1:11 3:3 27:18,19 67:9,10,16 | 6:1 9:11 17:22 18:13 50:10 53:4 53:16,25 63:20 | appeals 42:7 42:8 43:10 | assume 14:3 23:11 25:23 42:21 49:2 | bank 8:24 11:23,23 12:22,25 13:2,4,9,20 |
| abandoned 11:5 | agree 31:18 46:22,24 | appear 15:19 24:15 30:20 32:16 55:12 | assuming 57:17 | 13:24 14:13 14:14 15:6 |
| ability 26:22 | 56:9,12 | appearance 46:13 | Attached 2:8 | 15:8,12,15 |
| able 14:11 26:24 50:7 51:21 57:16 58:4 | 57:8,12,21 57:25 | APPEARANCES 1:12 | attachment 57:17 | 15:16,18 16:1,4 19:3 28:25 30:23 |
| access 19:4 22:24 | ahead 25:4 | appeared 35:1 59:15 | attention 37:3 41:6 49:15 | bank-owned 15:20 |
| accesses 22:10 24:18 | air 33:10 56:17 | appears 31:15 31:17 34:20 56:9 57:5,6 57:10 59:19 | attorney 6:9 62:20,22 65:4,7 | barely 34:9 |
| accessory 39:9,21 41:2,3 | allows 41:7 | | | bases 37:14 |
| | amendment 46:2 | applicable 46:22 | August 34:23 | basically 9:4 12:21 |
| accurate 7:24 7:25 30:20 31:12 55:13 57:1 59:18 | America's 15:16 | applied 48:25 | author 29:11 | basis 10:5 |
| | Amtsbuechler 1:18 | apply 38:24 | authored 25:18 31:5 31:10 53:19 | Bates 21:11 |
| | Angeles 15:17 15:18 | approval 58:18 66:12 66:16 | authority 13:17,18 46:14 | bear 20:24 45:25 |
| accurately 23:17 | animal 19:13 | approve 66:15 | available 12:6 | belabor 23:23 |
| acknowledge 20:6 | answer 4:12 5:4,5 31:1 38:7 44:15 49:14 50:7 62:5 | approved 2:16 54:13 65:25 66:13,13 | aware 4:1 17:2,11,13 17:13,14,15 23:7 48:3,6 48:7,10 65:4 | believe 8:24 15:16 18:22 24:12,13 34:23 37:15 47:11,12 51:21 59:15 59:17 65:14 |
| acronym 32:9 | | | | |
| action 41:17 | | approving 66:1 | | |
| active 61:2 | answered 55:18 | April 1:10 3:2 52:9 68:7,13 | | best 11:14 14:19 24:21 24:22 41:17 45:17 57:3 58:19 64:6 |
| actual 32:24 43:6 | answers 4:3,4 | area 37:16 47:22 63:14 | **B** | |
| addition 42:24 | anybody 5:25 28:9 36:16 48:19 49:11 49:16 63:4 64:18 | areas 20:2 | bachelor's 7:9 | |
| additional 54:19 67:12 | | aren't 58:7 | back 9:12 10:14 14:3 15:8 26:25 33:25 34:15 35:11 39:19 43:16,18 53:18 55:13 67:5 | better 31:18 45:12 60:22 |
| | | aside 22:10 49:9 51:20 | | bibs 33:9 |
| address 17:7 | anymore 38:14 52:3 | asked 9:11,12 13:5 15:4 50:6 51:7,8 | | big 39:8,13 40:5 |
| adhesive 39:19 | apologize 10:14 13:6 16:8,9 38:19 64:6 | asking 53:14 | | Bill 66:6,10 66:13,15 |
| administr... 44:4 | | assigned 63:14 | background 5:23 | bit 4:1 7:12 10:14 21:3 21:24 25:7 |
| advance 16:9 | | | | |
| agent 46:13 | appeal 42:17 | | | |
| ago 3:16 5:14 | | | | |

Page 1

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

28:15 34:8 36:3 43:16 55:1
blight 9:2
Bloomfield 1:6,9 3:1 5:16 7:15 8:13,23 17:6 21:21 27:23 43:23 45:21 46:1 62:16
board 19:20 42:7,8 43:10
bottom 57:5,6
bought 8:18
break 21:6 26:1 27:12
Brian 1:8 2:3 3:20 26:5 26:13 30:6 33:16 68:7 68:11
bridge 16:20 16:22,24 17:1 18:10 22:4,23 23:8,17,25 24:2,3,10 24:11,12,17 24:18,23 41:4
bridges 2:10
briefly 7:12
bring 6:12 9:5 38:24 42:11
brought 11:13 49:15
BS 17:16 36:9
builder's 44:5

building 2:15 19:2,3 25:17 28:17 38:16 43:7 43:7,7 44:9 52:2,10,12 52:16 54:12 59:22 61:4 61:5,6,7,8 61:9,13,14 61:15,21,22 61:23 62:3 62:7,9 66:4
building-... 42:9
bullet 29:5
bullets 29:5
bunch 14:8
business 35:9

_____ C _____
C 51:18,21
C762 46:1
cable 59:6
call 22:15 43:12,13 45:8 67:4
called 6:16
calling 50:21
can't 13:16 14:17 15:7 15:17 24:16 32:5 42:2 51:8,10 58:4
capacity 43:25 45:10
carbon 18:17 58:22
care 13:5 15:2,24
case 1:5 5:12 5:13 14:9 15:3,6

48:23,24 62:23,24 64:14 68:7
cases 45:10
catches 37:2
categorize 61:7,11
cause 9:22 14:2 21:24 28:10 34:9 38:17 41:18 47:9 48:1 60:6 62:8 63:18 64:13 65:16
centered 65:23
CER-3349 1:22 68:19
cert 56:15
certain 16:11 16:12
certificate 15:25 28:4 50:25 51:18 51:25 61:16 61:24
certificates 61:11,12 62:1,7,14
certifica... 18:16 33:9
certified 59:4
certify 68:5 68:10
chain 2:14 59:17
challenge 42:4 43:3,9
change 20:4 20:10 61:19 61:20

changed 7:17 7:20 19:6 52:15,25 61:15 62:14
changes 52:8 52:22,23
changing 62:6
character... 22:19
charge 13:3
charged 12:24 48:4,16
charges 13:12 13:14
Charter 1:5 46:1
check 12:4
checklist 16:15 18:19
checkup 18:16
checkups 11:2
chimney 58:17 58:17
chronolog... 57:5
circles 29:4 29:5,19
citation 13:15 14:11 15:10,17
city 7:6 43:20,22 52:7 54:5 64:18,19 65:2
civil 5:14
clarifica... 8:10
clarify 20:5
cleaning 33:11
clear 25:2 53:17

client 9:13
close 32:21
code 7:15 11:12,13,20 12:15 13:13 14:9,10,18 14:24 15:2 15:5 16:15 19:4 25:19 28:18,19,20 29:24 30:18 38:16,17 43:7 46:11 46:17 51:3 51:9,14 52:1,12,17 52:20 56:4 61:10,25 62:13 63:2 63:5,14 66:17
column 31:21
columns 31:14
come 8:9 42:11,17 45:8 49:9
coming 58:6 59:23
comment 28:20
Commission 68:21
committed 54:16
committee 42:16,17,20
communicate 42:12 49:15
communica... 55:17
communica... 4:4
company 15:13 16:5

Page 2

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

complete
35:19 68:6
completed
32:14,25
33:5,7
59:11 60:2
completely
53:17
compliance
2:11 15:22
25:16 28:4
28:11,15
29:11 30:18
43:6,8
59:23 63:3
comply 43:4
Complying
55:8
computer 5:23
12:6,7 36:9
36:23 39:11
39:11 40:15
40:22 48:11
48:14 49:7
62:2
concerns
60:12
concluded
67:16
concrete
24:15
condition
23:24 24:1
24:19
conditions
11:10
confirm 32:25
confirming
54:6
confusing
34:4
connecting
13:6

consisting
68:5
construction
18:10 42:8
43:10
consumer 45:3
CONTENTS 2:1
continuing
17:6
contractor
42:11
contrary
46:12
conversation
4:6 31:5
50:11,15
51:2 53:6,7
53:13 56:24
64:10
conversat...
5:1 53:3,3
62:21
convoluted
49:12
copy 30:10
65:23
corner 24:9
corporation
11:24 16:4
30:24
correct 4:8,9
7:19 10:22
12:23 13:3
13:21 14:23
15:1 19:20
22:6,25
23:1,4
28:25 29:25
30:1 31:9
34:20 39:1
43:23,24
47:13,22
53:23 54:3

54:4 58:10
58:18,25
59:1 60:3,4
61:17 62:5
68:6
corrected
32:6 51:21
53:15 60:18
66:16
corrections
2:12
correspon...
45:13 49:20
cosmetic
11:11
counsel 1:9
3:5 26:10
counter 58:6
County 68:3
68:20
couple 5:14
17:22 23:14
23:22 24:7
30:8 31:15
37:11 46:8
50:10 53:16
53:25 54:20
55:7 61:22
66:22
course 4:25
6:5 35:9
41:17 44:14
50:2
court 1:1,22
3:4,19 4:22
5:10,11
13:14 15:19
26:10 62:23
62:24,24
create 11:20
created 11:22
12:5
creek 16:23

cross 23:12
crosses 23:6
current 23:24
24:1 51:3,9

**D**

D 1:5
damaged 11:18
danger 46:18
47:7,25
dark 21:1
Dartman 64:2
Dartmouth
63:21
Dartwood
63:25
dated 66:2
68:13
dates 48:8
day 20:14
days 10:6
deadline
42:19
deadlines
42:14
dealing 8:11
decrease 20:9
defects 14:23
15:2
Defendant 1:7
1:17 3:9
6:16
defendant's
6:9
deficiencies
13:2,4,20
43:9
degree 7:9
31:15 44:4
denied 49:1,6
dep 21:11
25:2
department
7:16 17:17

19:2,3
25:17 28:17
36:6,11,12
41:18 44:10
47:10 48:2
48:17 52:2
52:10,16
59:22 61:5
61:9,24
62:3,4 63:2
64:8 66:5
department's
16:25
departments
28:5 36:3
49:16 51:11
60:7
depends 42:6
deponent's
6:19
deposed 4:15
4:17 5:7
deposition
1:8 3:5 4:2
4:7 5:22
6:5,8,10
21:11 30:6
33:16 67:16
67:17 68:11
describe
36:13 38:19
description
2:9 19:18
38:15
descriptive
28:21
designated
17:12 27:24
desk 14:10
detached 41:2
details 63:20
determine
50:16

Page 3

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| determined 15:24 | 1:1,6 | 32:3,10,21 | education 7:8 | engineering |
| development | DIVISION 1:2 | 35:20 37:6 | 44:2 | 16:25 36:14 |
| 36:11,12 | Doble 63:9 | 37:6,7,9,13 | effectively | 47:10 |
| 41:17 | docs 26:7 | 38:3,7,12 | 42:12 | enter 62:13 |
| didn't 9:12 | document 6:15 | 38:14 39:2 | EFS 17:24 | entire 34:21 |
| 10:1 12:2 | 6:15,17 | 39:25,25 | eight 23:22 | entrance |
| 13:16 17:23 | 25:10,14,18 | 40:11,17 | either 4:8,8 | 16:20 |
| 18:1 20:1 | 27:22 28:23 | 41:25 44:5 | 15:13 27:5 | entries 32:12 |
| 26:11 40:6 | 30:13,14,16 | 44:15,18,19 | electric 59:6 | 40:15,21 |
| 47:1 49:15 | 30:19,23 | 45:24 48:1 | electrical | entry 39:7 |
| 53:11 62:8 | 33:21,23 | 48:2,8,24 | 2:16 16:16 | 57:23 |
| 62:11 | 35:8,10,14 | 49:2,4,6 | 19:22,23,24 | environment |
| difference | 39:17,18 | 50:13 51:4 | 52:3 59:9 | 46:19 47:7 |
| 61:18 | 50:1 | 51:10 53:7 | 59:10 65:25 | environme... |
| different | documented | 53:7,11,12 | 66:1,12,16 | 17:17 18:2 |
| 29:14 38:6 | 13:1,1 | 62:3,4,10 | electrician | 36:15 47:10 |
| 52:7 | 28:22 | 62:12,13,19 | 19:25 | 47:11 48:17 |
| differently | documents 6:2 | 63:8,17,17 | else's 23:6,9 | 49:5 59:23 |
| 15:13 | 6:12,16,21 | 64:6,17 | 23:13 | 63:7 64:8 |
| difficult 4:7 | 7:2 10:17 | 66:18 67:11 | email 2:14 | 64:15 |
| 15:20 25:8 | 10:19 35:5 | door 39:21 | 55:5,10,13 | error 56:10 |
| 26:2 35:17 | 49:20 | 41:1 | 55:16,20 | especially |
| 53:2 65:21 | doesn't 14:23 | doors 33:13 | 56:14,20,21 | 33:5 |
| direct 33:15 | 50:24 51:25 | dragged 35:13 | 57:4,7,10 | everybody |
| directing | doing 3:14 | drive 1:18 | 58:2 59:17 | 45:19 66:21 |
| 21:16 | 7:22 8:1 | 24:17 | 59:18,19,21 | Evidence 4:23 |
| dirt 22:16,18 | 21:5 38:22 | driveway 23:2 | emails 54:20 | EX 2:10,11,12 |
| 23:5 | 41:2 52:14 | dropped 58:5 | 54:23 57:1 | 2:13,14,15 |
| disagreement | don't 4:11 | ductwork 32:5 | employee | 2:16 |
| 5:3 | 10:2,19 | duly 3:21 | 46:13 | exact 29:15 |
| discover | 13:3 14:1,1 | 68:11 | employment | 41:25 44:15 |
| 17:21 | 14:16,16,17 | duplicative | 7:13 9:11 | 48:8 |
| dispute 32:19 | 14:21,21 | 6:17 23:15 | 43:18 | exactly 14:17 |
| 32:23 42:15 | 15:22 16:3 | | enforcement | 15:5 16:10 |
| 44:20,21 | 16:12 19:6 | ——— E ——— | 7:16 13:13 | 41:25 |
| 46:21 50:12 | 19:17 21:1 | earlier 51:19 | 14:9,18,25 | Examination |
| 50:13 | 21:14 22:9 | early 34:23 | 15:3,6 | 2:4 3:23 |
| disputing | 23:11 24:1 | easement | 16:15 38:16 | examined 3:22 |
| 33:3 | 24:1,5,25 | 16:20 22:4 | 52:12,20 | example 18:13 |
| distinguish | 25:22 26:6 | 22:10,14,18 | 61:10,25 | examples |
| 4:3 | 26:7,12,20 | easier 30:11 | 62:13 63:14 | 11:15 58:13 |
| District 1:1 | 29:14 30:4 | 34:6 55:1 | engineer | exchange |
| | 31:1,24 | 62:8 | 56:16 | 56:24 |
| | | EASTERN 1:1 | | |

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| Executive 1:18 | failing 14:6 | 55:9 61:13 | furnaces 33:9 | 20:1,2 |
| exhibit 2:9 | fair 31:2 | 63:8 | further 60:12 | give 4:12 |
| 20:23 21:11 | 41:8 | fit 51:24 | 60:17 | 8:21 11:14 |
| 25:5,7 | fairly 4:2 | five 33:17,23 | | 27:15 49:14 |
| 28:14 30:5 | 14:2 20:15 | 35:16,18,23 | **G** | 51:10 58:13 |
| 30:6 33:16 | 20:16 | 50:8 | G 63:12 64:1 | given 34:18 |
| 33:16 34:1 | fall 10:13,24 | five-minute | G-a-r-t-l... | glass 21:7 |
| 45:24 51:19 | fallen 11:17 | 26:1 27:11 | 64:5 | 33:12 |
| 54:20,22 | familiar 3:25 | five-page | G-o-b-1-e | go 7:4 8:25 |
| 55:2 56:20 | 8:12 9:14 | 33:23 34:1 | 63:12 | 9:12 10:4,5 |
| 58:8 60:20 | 9:18 16:21 | 34:18 48:9 | Gartland 63:6 | 12:22 13:14 |
| 60:21,23 | 16:22 18:2 | 59:14 | 63:22,24 | 14:10 18:15 |
| 65:15,15 | 32:11 36:1 | flag 36:24,25 | 64:1 | 19:12 23:21 |
| exhibits 2:7 | 59:7 60:25 | 37:1 48:11 | Gary 1:3,21 | 25:4 26:3 |
| 6:4 25:22 | familiarity | 48:15 | 3:18 8:4,6 | 28:10,10 |
| 26:1 27:14 | 9:16,25 | flagged 39:11 | 8:8,9,15 | 29:21 30:5 |
| 54:20 67:17 | far 9:12 15:7 | floor 55:22 | 9:17,19 | 34:12,15,22 |
| exit 16:21 | 57:1 60:10 | 55:24 56:8 | 12:13 31:5 | 34:24 35:10 |
| experience | 65:17 | 56:11,17 | 31:6 48:4 | 42:7,8 |
| 16:12 18:6 | Farmington | follow 26:25 | 49:17 53:13 | 43:10,18 |
| 18:9 44:2 | 1:15,19 | 27:7 | 56:13 57:2 | Goble 63:5,10 |
| expert 18:14 | fast 54:21 | following | 57:7,10,15 | 63:13 64:13 |
| 18:18 | features 18:2 | 20:19 34:14 | 57:21,23 | goes 42:16 |
| expertise | federal 3:19 | 67:17 | 58:5,20 | 57:5 |
| 16:13 18:6 | feel 30:10 | follows 3:22 | 59:11 60:8 | going 4:7,12 |
| 18:9 | fell 52:11 | forever 15:23 | 62:15 63:1 | 5:4 6:4 |
| experts 16:16 | Ferris 7:11 | form 29:1 | 63:16 64:11 | 14:3 15:18 |
| 16:16,17 | field 44:7,11 | forth 26:25 | 64:19,23 | 16:22 17:5 |
| expires 68:21 | Finally 4:25 | foundation | 65:11 | 19:21 20:9 |
| exterior | find 43:14 | 46:25 47:3 | Gary's 8:12 | 20:23 21:23 |
| 11:12,17 | findings | four 7:14,20 | general 8:20 | 21:23 23:15 |
| 16:17 18:23 | 11:10 | 26:23 33:17 | 9:1 16:18 | 23:21,22 |
| 19:6,7 33:5 | fine 25:14 | free 30:10 | 66:14 | 24:7 25:4,5 |
| 47:16,19,20 | 26:18 | front 10:17 | generally 5:4 | 26:2,25 |
| 52:15,17,18 | finished | 10:19 24:20 | 14:24 18:22 | 30:5 32:1 |
| 52:24 | 33:19 55:7 | 33:12 42:20 | 19:18 | 33:15 34:8 |
| eyesight's | 60:24 | frustrating | gentleman 8:3 | 34:15 38:22 |
| 21:24 | Firm 1:14 | 14:2 | gentlemen | 41:10 43:21 |
| eyesore 9:2 | first 3:21 | full 21:4 | 67:4 | 44:12,12 |
| | 9:20,24 | 35:2,19,21 | getting 33:8 | 46:5 54:19 |
| **F** | 10:3 11:8 | furnace 18:16 | 33:11 43:15 | 54:21 56:6 |
| | 20:14 21:10 | 55:21 56:15 | 44:12 54:16 | 56:19 58:13 |
| fact 32:20 | 34:12,15,16 | 58:22 59:5 | 59:22 | 60:20,21 |
| 48:7 | | | GFIs 11:16 | |

Page 5

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| 65:14,15,23 | 16:1 35:4 | history 2:13 | 23:22,24 | imagine 40:14 |
| good 3:11,13 | 36:17 | 5:24 7:13 | 24:7 25:4,5 | 40:16 48:24 |
| 3:13 21:24 | happened | 9:12 34:21 | 27:24 30:5 | 49:4 |
| 27:16 32:4 | 14:20 48:6 | 35:2,19,21 | 30:9 32:1 | immediately |
| 40:14 54:15 | happening | 43:18 | 32:11 33:15 | 38:23 46:18 |
| 54:18 67:1 | 10:8 | hold 15:22 | 33:25 34:8 | imminent |
| 67:2 | happy 4:12 | hole 19:12 | 34:9,14,15 | 46:18 47:7 |
| gotten 48:25 | hard 15:9 | holes 19:11 | 34:20,24 | 47:25 |
| great 20:6 | 27:8 65:16 | home 21:20 | 38:2,7 40:7 | include 18:23 |
| Grossman 1:3 | Harris 1:8 | 47:18 | 40:14 41:16 | 35:5 |
| 1:21 3:19 | 2:3 3:11,20 | homeowner | 42:2 45:25 | included |
| 8:4,24 10:4 | 7:4 20:25 | 42:4 | 46:5 47:1 | 18:19 37:7 |
| 12:13 28:3 | 21:11 25:2 | hopefully | 49:1 52:2 | 37:8,9 |
| 28:10,24 | 26:2,11 | 21:25 | 54:19,21,22 | increase 20:9 |
| 29:25 30:2 | 30:6 33:16 | Hose 33:9 | 56:6,19 | indicated |
| 31:7,9 | 67:12 68:7 | human 51:24 | 57:17 58:13 | 55:22 |
| 38:25 41:19 | 68:11 | hundreds | 60:14,20,21 | indicates |
| 48:4,25 | hasn't 7:17 | 44:20 62:8 | 60:25 62:5 | 32:9 |
| 50:4,15,23 | 7:20 53:1 | 62:12 | 62:6,20 | individual |
| 51:2,5 53:6 | haven't 24:21 | HVAC 16:16 | 65:14,15,23 | 15:14,23,24 |
| 54:2,14 | 24:21 44:24 | 18:14,14,15 | I've 4:1 7:15 | 43:13 |
| 62:15,24 | he's 8:9 49:4 | 18:17,19 | 8:1,9 25:4 | information |
| 64:13 65:12 | 51:21 55:18 | 33:8 56:15 | 40:17,17,21 | 7:22 36:19 |
| Grossman's | 56:10 63:5 | 59:4 | 44:9 45:7 | 36:20 37:4 |
| 22:5,7 23:8 | 63:12 65:3 | | 46:4 62:17 | 42:21 43:2 |
| 23:11 38:4 | 65:7 | ___I___ | 62:17,17 | 48:15 49:10 |
| 41:12 47:8 | head 4:5 | I'd 4:11 12:3 | 66:24 | 49:10 |
| growing 35:12 | headquarters | 65:20 66:20 | idea 14:20 | inquiry 50:19 |
| guess 22:14 | 15:16 | I'll 8:21 | 36:3 40:9 | inside 9:3 |
| guessing 49:2 | hear 5:1 12:2 | 20:6 32:8 | 40:11 48:23 | 11:16 16:13 |
| gutters 11:18 | 18:1 47:1 | 34:24 | 65:19 | 18:15 19:3 |
| 33:1,8 | heard 19:14 | I'm 3:15 4:12 | identified | 19:12 |
| | 62:15,17,17 | 4:16 6:4 | 21:10 34:25 | inspect 8:25 |
| ___H___ | 62:21,23 | 7:16 10:16 | 56:7 | 16:10,10,13 |
| hall 8:10 | 63:1,8 | 12:2,3 | identify | 16:13 18:14 |
| 58:5 | hearing 64:7 | 14:21 15:7 | 31:16 33:6 | 18:23 19:15 |
| hands 52:11 | help 21:25 | 16:22 17:5 | 34:20 47:6 | 19:22 32:5 |
| hands-on | hereto 2:8 | 17:9 18:2 | 63:4 | 44:3,13 |
| 44:13 | Hi 8:6 57:15 | 18:13,17 | ignore 14:7 | inspected |
| handwriting | highest 7:8 | 19:10,21,24 | ignoring 15:1 | 9:21 12:8 |
| 24:8 29:2,3 | Highway 1:14 | 20:23 21:16 | image 24:8,9 | 20:12,13,14 |
| 29:9,10,21 | Hills 1:15,19 | 21:23,23 | 24:23 25:2 | 20:16,20 |
| happen 10:10 | hired 33:13 | 22:6,12 | images 24:8 | 24:4,23 |
| 14:5,13 | | 23:7,15,21 | | |

Page 6

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| inspecting 8:16 10:3 10:11,23 11:9 23:18 28:8 52:11 60:2,11 | intention 41:8 | 11:1,1,3 13:23 15:4 15:8,9 | 19:18 38:15 44:6,10 60:5 62:7 | 31:24 32:3 32:10,21 35:4 36:7 |
| | interior 11:12 18:21 18:24 19:1 19:5,15 47:18 52:13 52:16 | 16:17 17:17 17:17 18:16 21:1,11 22:12,12,15 23:11 26:2 27:7 31:20 | Joppich 1:18 Judge 1:6 July 34:24,25 59:16 66:2 jumping 10:15 June 68:21 | 37:6,9,12 37:13,14,23 38:3,7,12 38:25 39:23 39:25 40:1 41:12 42:10 |
| inspection 2:13 8:11 9:24 12:21 16:8,24 18:20,21 20:7,14,18 27:25 33:22 33:24 34:18 35:22 40:2 40:4 54:10 55:18,21 58:18 59:5 59:15 | internati... 28:19 introduced 3:16 intrusion 19:11,13,13 involved 64:19 involvement 66:11 | 34:1,1,3,6 34:6 35:17 37:9 39:8,8 39:9,11,14 39:15,16,16 39:18,18 40:25 41:10 42:8 43:5,5 47:9 48:2,8 | jurisdiction 47:9 _____ K _____ k 66:9,9 Kaplan 64:25 64:25 65:4 65:11 | 42:11 44:18 46:3 47:17 48:1,2,8,18 48:24 49:2 49:4,6 50:9 50:15 53:5 53:7 56:22 58:14,14 |
| | isn't 23:6 issue 11:20 13:7,12,15 14:11,24 15:9,17 37:25 38:2 38:5,5,11 38:13,14 54:2,9,12 62:10 | 53:16 56:20 62:10 64:13 64:14 65:17 66:8,15,21 67:4 item 26:23,24 56:7 66:18 Itemize 29:4 itemized 28:18 | Kaplan's 65:2 keep 14:6 35:8 kept 35:12,14 kind 5:13 6:6 8:20 15:11 18:12 20:11 23:14 34:2 34:16 35:2 42:10,18 43:18 45:3 | 59:11,20 61:1 62:23 62:24 63:8 64:16,17,21 64:22,25 65:2,22,24 66:4,16,18 knowing 8:15 knowledge 12:14 23:5 23:10 24:21 |
| inspections 7:23 11:7 11:19 18:22 18:24 19:1 19:5,7 28:2 29:17,22 34:22,22 35:2,5,13 52:13 60:15 | | | | |
| inspector 7:17,18 25:19 43:19 43:25 63:7 65:25 | issued 13:8 39:23 44:19 46:17 61:23 63:2 issues 11:11 11:12 13:9 17:20 18:3 38:6 51:22 53:14 56:3 56:14 58:9 59:11 60:1 64:15 | items 18:20 26:3 32:20 57:24 58:7 58:15 59:18 59:20 _____ J _____ J 1:17 Jan 1:13 3:18 | 52:6,13 65:16 know 8:3,8,18 8:19 9:20 10:2 11:16 14:17 16:3 16:12 20:2 20:8,21 21:8,18 | 45:14 48:20 55:12 57:3 58:19 60:13 63:17 knowledge... 54:15 known 44:16 Kumar 1:5 |
| inspectors 27:22 64:15 | | | | |
| installed 33:9 59:6 | | January 50:12 JEFFREY 1:13 Jim 64:21,22 64:23 | 22:8,9 23:7 23:8,12,21 23:23 24:1 | _____ L _____ lab 57:17 |
| instance 6:8 instructed 28:8 instruction 4:20 5:5 intends 6:16 | issuing 38:16 it'd 42:18 it's 4:1 9:2 | jjr@theru... 1:16 job 13:11 | 24:1,3,5,9 25:15,18,22 26:6,12 29:7,8 31:3 | lack 14:11 31:18 Lake 7:7 landlocked 22:7 |

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| language 46:22 | 35:23 | 33:25 35:4 | Meadowbrook 1:22 | mind 24:8 |
| large 32:7 | little 4:1 | 37:1 45:25 | mean 11:3 | mine 51:10 |
| Law 1:14 | 7:12 10:14 | 49:7 52:14 | 15:15 22:8 | minimal 9:5 |
| lawsuit 3:19 | 16:23 20:1 | 52:16,17 | 22:9 24:16 | 13:23 |
| 3:25 | 21:3,24 | looks 24:10 | 31:11 32:25 | minute 31:24 |
| laying 33:12 | 25:7 26:2 | 24:11,16 | 33:1 36:25 | 31:25 53:18 |
| leading 22:4 | 28:15 34:3 | 31:11 34:21 | 37:20 38:2 | 55:6 |
| leads 15:11 | 34:8 35:17 | 56:10 57:4 | 39:4 44:14 | minutes 9:11 |
| 22:16 | 36:3 42:2 | 57:23 66:6 | 44:19,20 | 18:12 25:22 |
| learn 44:6 | 43:16 53:2 | Los 15:17,18 | 50:6 51:15 | 26:10 66:21 |
| learned 36:8 | 54:21 55:1 | lot 11:11 | 58:8 61:18 | 67:4 |
| 44:9 | live 7:6,7 | 13:22 15:15 | meaning 20:7 | misdemeanor |
| left 31:14 | living 50:25 | 19:11 32:3 | means 18:18 | 13:8,14 |
| 59:21,24 | local 15:13 | 32:6 35:12 | 38:21 39:10 | misunders... |
| let's 27:11 | located 21:20 | 62:7 | 39:14 | 12:20 |
| 67:4,5 | lockbox 19:4 | lumber 24:10 | meant 47:15 | Mm-hmm 22:21 |
| letter 12:10 | locksmith | 24:14 | measures | 31:7 43:17 |
| 12:22 42:23 | 33:13 | | 13:25 | 60:16 |
| 42:24 43:1 | long 26:22 | ——— M ——— | mechanical | mold 33:10 |
| 43:2 45:3 | 43:19 63:18 | M 1:22 68:19 | 52:3 | 53:14,18,21 |
| 45:11,15,18 | longer 19:15 | maintenance | mechanism | 54:6,9 56:1 |
| 57:16 64:13 | 35:13 52:3 | 9:5 16:18 | 42:4 | 56:17,18 |
| 64:16 | 52:6 | 28:20 32:6 | meet 5:25 | 57:7,24 |
| letters 11:22 | look 10:18 | 52:18 | 42:9 45:9 | moment 20:24 |
| 12:5 13:19 | 24:23 26:23 | majority 28:7 | meeting 55:19 | moments 3:16 |
| 14:8 29:17 | 26:23 30:10 | 32:4 | meetings 18:5 | monoxide |
| level 7:8 | 30:19 32:21 | Manna 64:21 | mentioned | 18:17 58:22 |
| license 44:5 | 33:18,18 | 64:22 | 18:12 27:25 | month 14:3 |
| licensed | 34:1 39:6 | manner 5:9 | 52:5 | monthly 10:23 |
| 19:25,25 | 48:1 52:24 | Maple 8:13,23 | message 57:6 | 11:2,7 |
| 56:16 | 55:6 56:6 | 17:6 21:20 | met 6:1 8:9 | 29:21 34:18 |
| licenses 44:4 | 60:23,23 | 22:13,25 | 28:6 51:10 | months 50:10 |
| limited 42:3 | 62:2,8,11 | 24:19 | 51:14,25 | Morelli 1:22 |
| Linda 1:22 | 66:24 | marked 20:23 | 60:9 | 68:19 |
| 4:8 68:19 | looked 5:23 | 25:2,5 | Michelle 63:6 | morning 3:11 |
| line 26:3,23 | 17:16,16 | 45:24 54:23 | 63:21,24 | moved 38:15 |
| 26:24 | 20:1 23:18 | 67:17 | Michigan 1:1 | 52:12 |
| list 2:15 | 24:3 51:19 | Marlin 63:5,9 | 1:10,15,19 | multi-family |
| 28:18,18 | looking 9:4 | 63:16 64:12 | 3:1 4:22,23 | 7:23 |
| 51:3,20 | 10:21 16:11 | Matt 27:13 | 8:13 68:1 | multiple 38:2 |
| 53:19 66:14 | 16:18 20:3 | 47:2 | 68:20 | 38:5 40:19 |
| listed 31:20 | 20:8,10 | matter 5:14 | mile 22:13,16 | 40:19,21,21 |
| | 22:22 24:25 | 42:9 | | mzalewski... |
| | | MATTHEW 1:17 | | |

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| 1:20 | 52:11 53:6 | officials | 35:22 36:1 | 37:24 38:20 |
| | 53:8 | 37:5 54:6 | 36:7,19,25 | 38:21 39:3 |
| **N** | numb 29:4 | 62:16 | 37:17,19 | 39:6 40:10 |
| name 3:18 | number 21:11 | oh 5:14 12:16 | 38:9,25 | 40:16 41:9 |
| 16:4 62:17 | 33:16 43:11 | 12:19 14:4 | 39:3,13,17 | 42:5,6,10 |
| 63:9 64:21 | 43:12 44:19 | 21:1 26:19 | 40:12,23 | 42:13,15,25 |
| 64:22 66:8 | 46:1 56:7 | 26:21 29:3 | 42:14,21,24 | 43:3,5,11 |
| names 7:4 | numbers 29:5 | 31:8 33:25 | 44:14 46:9 | 43:14,15 |
| nature 6:18 | 29:18 | 34:1,5 40:3 | 47:4,15 | 44:22 45:2 |
| necessary | | 50:8,10 | 48:6,14,18 | 45:7,15 |
| 45:25 | **O** | okay 4:2,13 | 50:14,21 | 46:2,17,23 |
| need 21:6 | O 51:18,21 | 4:19 5:5,25 | 51:2,12,14 | 47:12 48:12 |
| 41:15 43:3 | objection 5:3 | 6:12 7:1,12 | 52:20 53:18 | 48:15 49:21 |
| needed 11:12 | 6:14 46:25 | 8:3,20 9:7 | 53:25 54:5 | orders 36:1,4 |
| needs 52:1 | 47:3 | 9:16,20 | 54:9,25 | 36:10,17,21 |
| neighborhood | objections | 10:2,14,17 | 55:1,9,16 | 37:5,14 |
| 9:3 23:2 | 5:1 | 10:20,23 | 56:13,19,23 | 38:3,5,13 |
| never 4:18 | observe 31:22 | 11:8 12:5 | 57:1,4,21 | 38:14,17 |
| 5:7,8 24:8 | 33:2 | 12:10,20,24 | 58:7,16,20 | 39:1,23 |
| 40:17,19 | obtain 51:21 | 13:16 14:13 | 58:22 59:6 | 40:13,20,22 |
| 41:22 | obtaining | 14:19 15:11 | 59:15 60:1 | 41:13,14,20 |
| new 23:12 | 51:18 | 15:21 16:1 | 60:10,20,25 | 42:1,3 |
| 24:10,10,14 | obviously | 17:21,23 | 62:15,22 | 44:16,18 |
| 24:14,15 | 29:20 58:8 | 18:9,12,14 | 64:2,2,25 | 45:22 47:17 |
| 33:1,12 | occasion | 18:19,22 | 65:4,9,20 | 49:8 50:24 |
| nods 4:5 | 31:22 48:19 | 19:18,21 | 66:2,10,10 | ordin 11:6 |
| non-exhibits | occupancy | 20:14 21:3 | 66:21 67:6 | ordinance |
| 6:6 | 15:25 28:4 | 21:8,9,16 | oldest 57:4 | 11:6 12:15 |
| noncompliant | 50:25 51:18 | 21:18,19,23 | once 10:4 | 12:24 13:8 |
| 14:23 | 51:24,25 | 22:18,24 | 59:13 66:13 | 46:1,2,10 |
| nonverbal 4:4 | occupying | 23:5,8,21 | ones 5:12 | 48:4,16,18 |
| normal 10:8 | 10:7 50:16 | 24:6,12,18 | 29:14 32:4 | 49:9,10,18 |
| 10:25 | occurred 53:4 | 25:1,12,15 | ongoing 4:1 | 49:22 53:20 |
| normally | office 10:16 | 26:16 27:1 | 18:5 | ordinances |
| 15:24 | office@me... | 27:9,25 | open 14:9 | 45:22 |
| Northwestern | 1:23 | 28:14,23 | 15:2,5 | ordinary 35:9 |
| 1:14 | officer 13:13 | 29:13,20 | 57:16,16 | outside 8:15 |
| notes 17:16 | 14:25 46:13 | 30:5,7 31:8 | 58:3,4 | 9:2 16:14 |
| notice 6:8,9 | 63:5,14 | 31:14,20 | opposed 7:24 | 20:15 47:13 |
| 6:13 46:12 | officer's | 32:8,12,24 | Orange 39:14 | 47:14,15,15 |
| notify 45:17 | 14:10 38:17 | 33:15,20 | order 32:10 | 47:19,20 |
| Notwithst... | official | 34:3,6,8,10 | 32:13 36:22 | 49:7 62:21 |
| 46:11 | 36:22 37:9 | 34:20 35:4 | 37:2,10,18 | overall 54:18 |
| November 52:9 | 54:12 | | | |

Page 9

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| owned 8:24,25 11:23 16:1 30:24 | Pemco 16:3,4 28:25 | piece 39:3,7 | preexisting 56:3 | proper 11:16 11:17 20:2 22:14 |
| owner 14:6,23 15:12 28:24 29:24 41:6 45:3 53:20 | people 37:11 40:25 42:10 44:9 45:12 60:6 62:17 63:2 | placard 39:8 39:13 | preliminary 4:20 | properly 54:7 56:13 |
| | | place 39:22 41:9 45:1 | prepare 5:21 | properties 11:5 13:23 15:20 18:15 19:7,16,19 27:23 44:3 44:12,17 61:2,3,5,12 61:25 62:1 |
| **P** | percentage 32:7 | placed 36:2 37:10 40:23 40:24 41:23 42:10,22 44:23 49:23 50:1 | presence 53:21 62:22 |
| P-e-m-c-o 16:6,7 | permit 48:25 49:5 59:9 61:6,8,8,14 61:15 62:3 | | present 1:21 7:13 |
| P-r-u-c-k... 66:8 | | | presumably 20:15 47:11 |
| P57937 1:13 | permits 2:15 38:22,24 43:15 52:1 52:4 58:11 58:12 59:22 61:6,7,21 61:23 62:4 62:7,9,11 62:12,13 | plaintiff 1:4 1:9,13 3:18 | presume 4:13 |
| P72207 1:17 | | plaintiff's 39:24 | pretty 31:11 | property 2:11 2:15 5:23 5:24 7:17 7:18 8:9,12 8:16,18,23 9:4,5,13,17 9:18,21,25 10:3,7,8,11 10:23,25 11:9,23 12:14,17 14:6,7,12 14:22 15:8 16:2,18,18 16:19,21 17:2,5,9,9 17:11 18:5 18:23,25,25 19:22 20:4 20:11,20 21:14 22:5 22:7,11,17 22:24 23:6 23:9,9,10 23:11,13,18 24:4 25:16 28:9,10,14 28:19 30:3 30:24 32:6 33:11 35:6 |
| page 2:2,9 21:4 25:6 33:22,25 34:12,13,16 34:24 56:19 56:22 57:6 | | plan 42:11 | prevented 32:13 |
| | | planning 36:14,14 | print 26:5,14 27:2 35:10 35:12 |
| | | plans 38:24 | printed 34:3 |
| | | please 60:24 | printout 29:18,19 |
| | | plumber 19:25 | prior 2:12 9:24 12:13 28:24 29:24 30:18 43:25 53:20 66:17 68:10 |
| pages 25:7 30:8 33:17 33:17,23 35:12,16,18 35:20,23 54:23 68:6 | permitted 59:9 66:15 | plumbing 16:17 19:21 19:23,24 52:4 | |
| | person 45:9 | point 7:23 20:3,10 21:6 41:22 45:22 48:3 51:5 65:18 | |
| | personal 48:20 | | |
| paper 10:19 30:10 35:12 39:3,7 65:22 | persons 46:19 47:7 | | probably 12:1 12:3 34:6 44:15 55:23 63:18 66:13 |
| | phone 50:4,14 53:3,5,13 | points 29:6 | |
| | | poor 16:9 | |
| part 16:24 17:25 18:4 30:25 33:24 52:3,6,23 56:3 | photo 22:20 | pops 37:1 | problem 7:1 67:14 |
| | photos 2:10 20:24 | portion 37:25 | problems 58:17 |
| | physical 39:18 | position 7:20 52:25 | procedure 20:8 |
| particular 14:15 16:19 28:1 29:15 30:15 47:6 | physically 40:18 | possession 9:8,9 | process 4:2 |
| | picture 21:10 21:13,14,15 22:2 24:16 | possible 25:6 | produce 6:19 |
| | | post 39:20 | produced 6:24 |
| passed 54:12 | | posted 36:10 | progress 28:12 |
| paved 23:3 | pictures 22:1 23:14,16 | potential 19:13 | promise 8:21 |
| PC 1:18 | | | |
| peels 39:19 | | | |

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

35:10,14,23
36:2,4,23
37:1,5,25
38:3,4 39:9
39:24 40:5
40:6,7,10
40:23 41:5
41:12,24
42:3,22
44:23 45:1
45:4,18
46:15,19
47:7,8
49:23,24,25
50:1,16
51:1 52:10
52:18,19,24
59:4 61:8
61:11,14,15
62:6,16
63:1,16
64:19,23
65:12
property's
  22:13
provide 19:4
  51:3
provided 26:1
  42:21 54:5
  56:17
provision
  46:16
provisions
  46:11
Prucknic 66:6
  66:10
public 44:4
purchased
  9:23 10:4
  12:17 30:2
purchasing
  12:13
purport 55:16

purports
  30:16
purpose 4:22
  31:4 32:8
  37:18 50:14
  50:21
purposes 46:7
pursuant 6:12
pursue 13:14
purview 6:19
put 6:14
  29:14,16
  36:23 37:5
  39:8,10,20
  41:3,4,4,5
  41:8 43:12
  43:13 45:7
  45:18 51:23
puts 36:22
putting 29:13
  29:15 30:9
  36:3

——— Q ———
qualified
  44:3
quality 33:10
  56:18
quarters
  22:13,16
ques 37:22
question 4:3
  4:4,13,16
  8:20 15:4
  15:11 16:9
  17:2 20:5,6
  30:21 31:2
  38:7,18
  40:14 49:12
  49:14 50:7
questions
  4:11 5:4
  8:10 17:7
  19:21 31:2

46:8 55:7
66:23 67:12
67:15
quite 53:4

——— R ———
rails 24:10
  24:14
re-sent 57:23
reached 50:18
read 25:12,14
  46:5 55:6
  65:16
ready 66:23
real 61:18,19
really 38:18
  48:1 58:9
  60:14 62:10
  62:20
reason 14:15
  28:1,3
  32:19,23
recall 10:2
  11:8,9 33:3
  37:7 53:11
  53:12 55:9
receive 58:2
received
  41:23
receiving
  55:9
recognize
  21:13,14,14
  53:4 56:24
recollection
  10:12,20
  11:14 13:10
  14:16,17,19
  15:7 17:22
  24:22 30:4
  32:23,24
  39:25
recommend
  13:12

recommend...
  14:24
reconvene
  27:14
record 3:17
  3:17 4:20
  6:15 25:1
  27:18,19
  34:17 67:9
  67:10 68:6
recorded 11:1
records 49:20
rectified
  30:3 32:16
  32:20 54:11
  58:8,9
rectify 56:13
red 36:24,25
  37:1 39:8
  39:11,13,14
  40:5 48:11
  48:14
refer 6:7
  27:3 34:7
  35:14 60:6
  65:20
reference
  49:8
referenced
  2:9 22:19
  49:22
references
  55:21
referring
  12:19 17:5
reflect 4:20
  23:17
refusing 15:1
regarding
  5:12 8:10
  13:19 18:3
  38:15 43:2
  45:22 56:16

59:24 60:1
registered
  11:1,3,5
  61:4,13
regular 10:5
regulations
  38:23
relates 15:6
  16:19
relative 8:22
  11:19 18:6
  18:9 20:4
  30:17 44:17
remediate
  56:13
remediated
  54:2,7
remediation
  13:25 57:7
  60:17
remedied
  51:15
remedies
  31:20
remedy 32:13
  58:20
remember
  10:10 13:24
  14:18 15:7
  15:21 16:1
  16:23 24:25
  29:13,14
  33:1,4,6,8
  33:8,10,10
  33:12,14
  41:25 51:8
  53:13 55:5
  56:25 58:4
  58:6 63:17
  63:18 64:10
  65:9
remote 1:11
remotely 3:7

Page 11

Grossman v Charter Twp. of West Bloomfield                    Brian Harris
                                                             4/10/2024

| | | | | |
|---|---|---|---|---|
| remove 41:15 | 63:3 | 7:8,22  8:3 | 21:20  22:10 | 56:7 |
| 41:18 | require 18:15 | 8:12  9:24 | 22:13,16,18 | scan 46:6 |
| rental 7:16 | 19:12 | 10:9,13,15 | 22:25  23:2 | schedule |
| 7:18  61:25 | required 8:25 | 10:19  11:19 | 23:5  24:19 | 42:19 |
| repair 13:3 | 11:7  13:2 | 12:13  13:6 | role 65:2 | Schultz 1:18 |
| 28:22  33:13 | 28:22  30:21 | 13:11,24 | roles 52:7 | scope 20:3,7 |
| repaired | 43:14  54:17 | 14:2,25 | roof 19:12 | 20:9  47:14 |
| 24:10,11 | 58:18,23 | 16:8,19 | Rosati 1:18 | 60:14 |
| 58:14 | requirement | 17:2,11,25 | roughly 7:14 | screen 20:25 |
| repairs 32:2 | 19:1  38:17 | 19:14  20:23 | 9:22  10:24 | 21:1  22:2 |
| 59:11 | 45:14  66:19 | 21:3,10 | 34:24 | 24:24  26:18 |
| repeat 20:5 | requirements | 22:1,2,6 | routine 11:7 | 27:1,6  30:9 |
| rephrase 4:12 | 13:4  28:7,7 | 24:6,9,14 | Rubinstein | 55:2  60:21 |
| 49:13 | 28:13  48:12 | 25:4,21 | 1:13,14  2:4 | 65:17,18,23 |
| replaced 59:8 | 55:19  60:9 | 27:17,21 | 3:8,11,13 | scroll 21:17 |
| replacement | requiring | 28:8,12 | 3:15,18,24 | 21:17,23 |
| 66:1 | 59:24  60:8 | 29:1,4,11 | 4:19,24 | 23:15  24:7 |
| report 2:13 | 60:11 | 30:2,9,13 | 6:20,24  7:1 | 25:5,12,13 |
| 12:8,22 | residential | 30:23  31:6 | 7:3  8:7 | 34:6,11 |
| 20:18  33:22 | 7:23 | 31:16,21 | 25:1,3,21 | 35:17  56:21 |
| 33:24  34:18 | respond 57:14 | 34:8,11,15 | 25:25  26:9 | 60:20 |
| 34:19  43:6 | responded | 35:8,16 | 26:17,20,22 | second 27:6 |
| 43:7,8  48:9 | 57:2 | 36:16  37:4 | 27:9,11,17 | 52:5  55:23 |
| 54:6,9 | responsib... | 38:18,24,24 | 27:20  31:6 | 56:11,17 |
| 55:19  56:15 | 16:25 | 41:7,22 | 31:13  47:1 | section 46:4 |
| 56:16  57:7 | responsible | 43:2,14 | 47:4,5 | 46:5,10,14 |
| 57:18,24 | 30:24 | 45:8,21,24 | 66:20  67:3 | 63:15 |
| 59:14 | rest 32:17 | 46:5  47:21 | 67:11 | sections |
| Reported 1:22 | restroom 21:6 | 48:3  49:17 | rudimentary | 28:19 |
| reporter 3:4 | results 20:16 | 50:18  51:19 | 38:18  39:5 | see 20:25 |
| 26:10 | 57:17  58:5 | 52:5,25 | Rules 4:22,23 | 21:1,4,25 |
| Reporting | review 6:2 | 53:13  54:19 | | 23:16  25:6 |
| 1:22 | 26:17  31:24 | 54:22  55:12 | **S** | 25:10,14 |
| reports 8:11 | 31:25 | 55:20  56:6 | satisfact... | 29:1,2 |
| 11:20,22 | reviewed | 56:19  57:10 | 60:3 | 32:14,17 |
| 12:5  13:19 | 45:21  46:3 | 59:4,16 | satisfied | 33:13  34:9 |
| 29:17 | 46:4 | 63:8  64:6 | 28:12 | 34:12,22 |
| represent | reviewing | 64:18  65:14 | saw 36:18,20 | 36:9,17,20 |
| 3:18 | 35:1 | 65:21  66:20 | 39:6  48:14 | 40:4,25 |
| request 2:11 | rid 33:11 | 66:21  67:3 | 49:21  58:8 | 41:6  46:7 |
| 6:15,16,17 | right 4:15,25 | 67:4,7,11 | 65:19 | 48:11  55:2 |
| 25:16  28:15 | 5:7,18,21 | road 8:13,23 | saying 6:21 | 56:1,22 |
| 29:11  30:18 | 6:2,20  7:1 | 16:22  17:6 | says 37:2 | 57:19 |
| | | | 46:10  55:22 | |

Page 12

Grossman v Charter Twp. of West Bloomfield                                    Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| seeing 24:19 | 36:11,12 | sixty-seven | SS 68:2 | 38:14,16,19 |
| 33:1 49:8 | 41:17 | 68:6 | standalone | 38:21,21,23 |
| seen 6:9 | seven 23:22 | slash 25:2 | 66:18,19 | 39:1,3,6,10 |
| 24:18 30:13 | 26:24 43:21 | soffits 33:1 | standards 9:6 | 39:14,23 |
| 30:14 31:24 | 44:14 | software | stands 32:9 | 40:10,12,16 |
| 32:1 40:17 | Shalina 1:5 | 36:10 | started 7:22 | 40:19,21 |
| 40:19,21 | shards 33:11 | sold 9:13,17 | 10:3,11 | 41:9,12,14 |
| 41:10 44:16 | share 30:16 | 9:18 | 11:8 18:25 | 41:19 42:1 |
| 44:22 45:2 | 62:19 | somebody | 23:18 25:23 | 42:1,3,5,6 |
| 45:7 47:24 | she's 64:8,14 | 13:14 15:10 | 26:11 | 42:10,12,15 |
| 49:20 50:1 | shed 41:2 | 15:18 23:6 | starting | 42:25 43:3 |
| 55:4 | shorter 56:20 | 23:9,12 | 10:23 19:14 | 43:5,11,14 |
| sell 15:23 | shortly 8:21 | 42:15 45:17 | state 7:11 | 43:15 44:16 |
| semantical | shoulder 4:5 | someone's | 12:1,3 15:9 | 44:18,22 |
| 61:19 | shouldn't | 39:20 41:1 | 15:10,16 | 45:2,7,15 |
| send 13:19 | 65:20 | 41:1 | 68:1,20 | 45:22 46:2 |
| 26:5,11,13 | show 6:4 | soon 66:23 | States 1:1,6 | 46:17,22 |
| 27:13 43:1 | 20:23 25:4 | sorry 4:16 | status 7:17 | 47:12,17 |
| 45:18 46:6 | 25:8 54:19 | 12:2 19:10 | step 14:7 | 48:12,15 |
| 55:22 56:7 | 56:19 65:14 | 34:5,25 | Steve 64:25 | 49:8,21 |
| 64:13 | showing 23:24 | 40:7 47:1 | 64:25 | 50:24 |
| sending 45:12 | 54:22 | 54:21 | sticker 2:16 | stopped 28:6 |
| 57:7,11,15 | shrugs 4:5 | sort 4:3 | 39:17,19 | 38:16 46:15 |
| sense 46:6 | side 31:14 | 21:16 | 40:5,10,23 | strike 17:3 |
| sent 6:8 | sides 34:3 | sounds 9:16 | 41:9 42:22 | 53:25 65:9 |
| 11:22 13:21 | siding 11:18 | 27:16 62:6 | 42:24 44:23 | string 56:21 |
| 25:22 26:6 | 19:11 | 67:1,2 | 65:25 | strings 57:4 |
| 26:7,9 | sign 43:10 | source 49:11 | stickers | structure |
| 27:10 42:24 | signature | SOUTHERN 1:2 | 40:13,19 | 18:10 39:9 |
| 45:3,11,15 | 66:4 | speak 41:19 | 41:23 | 39:21 41:3 |
| 55:13 56:14 | similar 15:4 | 48:19 | sticking | 41:3 51:23 |
| 56:15,16 | 19:21 20:15 | speaking 5:2 | 20:18 | 51:24 55:22 |
| 57:2,21 | 20:16 22:1 | specific 8:21 | stipulated | 56:8,11,17 |
| 59:20 64:16 | simple 4:2 | 10:10 44:2 | 3:8,9 | stuff 32:6 |
| separate | sir 67:13 | specifically | stipulation | 52:17 54:16 |
| 54:23 55:20 | sit 32:19 | 19:19 33:6 | 3:4 | 60:6 |
| September | sitting 8:3 | 39:4 56:6 | stop 28:8 | subpoenaed |
| 55:14 59:19 | 10:15,16 | spell 64:3 | 32:9,13 | 4:21 |
| 60:1,10 | 34:9 | 66:7 | 36:1,4,10 | substance |
| service 59:6 | situation | spoke 65:9 | 36:16,20,22 | 61:19 64:10 |
| 59:9 66:1 | 14:5 41:7 | spoken 50:4 | 37:2,5,10 | successfully |
| 66:16 | 47:6 | 64:18,23 | 37:14,17,24 | 59:2 |
| services | six 50:8 | 65:11 | 38:2,5,13 | suggest 32:12 |

Page 13

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

55:23
suggested
 47:24 50:11
Suite 1:14,18
summary 8:22
 30:17
summer 10:12
 10:24
sums 35:21
supervisor
 65:3
supposed 43:1
 43:13 44:24
sure 9:1,1
 10:6,7 12:3
 13:7 14:21
 14:22 15:7
 18:17 19:14
 20:2 22:12
 23:14 24:6
 30:22 32:22
 38:2,7
 40:14 41:16
 49:1,7 64:4
 66:24
surface 24:17
surrounding
 9:3
swearing 3:6
switched
 61:10
SWO 32:9,13
sworn 3:21
 68:11
system 12:6,7
 19:24 20:11
 20:13 36:17
 36:18,19,23
 37:7,9 39:7
 39:11,12
 40:15,22
 48:11,14
 49:7,21

62:2
──────────
────T────
TABLE 2:1
take 13:5
 15:2,24
 26:1 27:11
 27:15 31:23
 31:25 32:21
 33:18 34:1
 55:6 60:23
 66:21,24
taken 1:9
 55:18
talk 17:4,8
 53:2 62:18
talked 34:16
 49:17
talking 12:16
 17:9 43:22
 56:10 60:14
 62:20
taught 44:10
tell 3:21
 7:12 22:2
 24:16 28:15
 30:19 32:8
 34:17 35:19
 36:5,7,16
 41:22 50:23
 63:16 68:11
ten 66:21
 67:4
term 22:8,9
 31:18
term's 22:14
terminology
 18:3
terms 4:6
test 33:10
 56:18
testified
 3:22 5:9,11
 5:18 58:9

testifying
 10:20
testimony
 4:21 10:18
 68:7
testing 54:10
 60:17
tests 58:22
Thank 27:17
 67:3,8,13
Thanks 57:15
 67:7
that's 3:19
 4:7 12:16
 12:16,19
 16:20,25
 17:9 18:4
 18:16 19:5
 19:18,20,25
 22:4,12,19
 22:22,24
 23:1,4,10
 23:12 24:24
 25:16 26:18
 27:1,24
 28:6 31:2,9
 31:11 33:22
 34:18 35:21
 36:14,14
 37:21,23
 38:17 40:14
 41:18 42:22
 43:12 45:17
 46:22 47:9
 48:2 51:13
 51:24 52:5
 52:10,13,15
 54:4,23
 59:5 61:11
 62:1,11,14
 65:25 66:18
there's 5:2,5
 6:5 9:2

16:20 17:18
18:17 19:9
19:13 20:2
22:1,10
23:2,2,14
29:1,3,3,3
29:4 32:12
39:19 40:12
42:1,2,12
42:24,25
43:11 44:18
45:2,14
47:24 52:1
52:23 63:5
63:6 66:9
they're 11:7
 15:1,9,15
 15:18 23:14
 41:2 43:1
 44:24 61:12
they've 8:1
thing 12:2
things 6:5
 16:11,12
 20:1,10
 28:5 31:23
 32:16 33:2
 35:17 62:21
think 11:23
 12:10 16:4
 18:4 26:7
 30:4 40:17
 51:4,11,13
 51:23 53:7
 53:11 58:5
 59:10 62:13
 63:8 64:12
 64:12,14
 65:19,19
 66:8
third 56:1
thirty 10:6
thorough

54:17
thought 12:16
 47:21
thousand
 61:22
thousands
 61:21 62:9
three 22:13
 25:7 55:20
 56:13 59:18
three- 22:15
ticket 46:14
time 5:18,19
 5:20 8:2
 9:20 10:13
 12:8,9,10
 12:11,17,21
 17:13,25
 20:12,13,17
 20:20 24:22
 35:11,22
 44:7,11,19
 48:3 52:5
 61:3,9
 63:20
timeline 48:9
 59:14
timelines
 42:14
times 8:9
 13:22 15:15
 50:6
today 3:12
 5:22
told 50:24
top 24:9
 57:23 58:2
tough 15:9
town 8:10
 58:5
township 1:5
 1:10 3:1
 5:15 6:18

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

```
7:15  9:6
11:1,4,6
28:6  43:23
46:1,13,15
63:15,15
65:3
township's
  65:7
track 61:24
  62:4
trail 2:10
  22:15,16,18
  23:5
transcript
  68:5
treated 15:12
trial 6:17
true 22:11
  23:3,6
  35:24  49:3
  68:6
truth 3:21
  68:11
try 42:9  67:5
trying 49:4,5
turning 14:18
twenty-two
  30:17  51:20
  53:19
two 29:5  34:3
  40:12,13,15
  54:23,23
  56:7
type 12:14
  42:6  47:25
typed 30:25
typical 10:24
  29:16
typically 5:2
  14:5  31:1
typo 55:23
typograph...
  56:10
```

```
            U
uh-huh 4:6,9
  25:9
uh-uh 4:6,9
ultimately
  14:11
unable 57:16
unauthorized
  37:15  39:16
underground
  59:8,10
understand
  4:11,14  5:6
  13:7  14:22
  17:8,10
  22:15
understan...
  28:23  31:1
  31:4  62:5
understood
  4:13  5:13
  45:20  49:13
unit 52:6
United 1:1,6
units 7:24,24
University
  7:11
unpaved 23:3
unpermitted
  39:16  60:9
update 31:17
upkeep 9:1,5
  11:17  14:12
  16:18  52:15
  52:18
use 4:6  6:16
  10:18  22:19
Usually 42:16
  42:16  45:7

            V
vacant 2:11
  2:15  7:16
```

```
7:18,24
11:5  13:22
14:7  18:15
19:7,15
25:16  27:23
28:14  52:23
61:2,3,4,6
61:7,10,12
61:14,15,25
62:6
vents 33:1
verbal 4:3,4
  39:4  53:3
verified 32:1
verify 31:22
videoconf...
  1:11  3:6
view 60:22
violation
  12:15,15
  13:8,12
  15:25  31:16
  31:17  46:12
  46:16,20
  49:10
violations
  2:12  11:20
  12:24  17:24
  25:20  28:18
  29:24  30:3
  30:18  43:6
  48:4,13,16
  48:19  49:9
  49:18,22
  51:3,9,14
  51:20  52:1
  53:20,21
  56:4  58:14
  60:17  66:17
visible 40:25
  41:9
visited 9:20
visual 44:13
```

```
vs- 1:4

            W
wait 66:14
walk 52:7
Walled 7:7
want 6:14
  13:3,7  16:3
  19:14  21:6
  21:7,16
  22:19  25:12
  26:17,24
  27:2  31:23
  33:18  34:11
  34:12,12
  35:18  43:9
  43:18  49:13
  56:21  62:19
wanted 41:4
  64:12
wasn't 17:13
  20:6  52:14
  59:13,24
water 19:11
  19:13  21:7
way 8:15  10:9
  20:16  21:5
  25:25  27:5
  45:17
Wayne 68:3,20
ways 42:12
we'll 27:14
we're 13:6
  16:15,16,16
  16:17  21:5
  22:22  43:22
  62:2,3
  66:23
we've 20:23
Wednesday
  1:10
weeks 6:1
went 3:17  9:3
  10:6  19:3
```

```
20:12  35:14
40:4  44:8
48:20  52:15
59:10
West 1:6,9
  3:1  5:16
  7:15  8:13
  8:13,23,23
  17:5,6
  21:20,20
  24:18  27:22
  43:22  45:21
  46:1  62:16
wet 20:2
wetland 17:12
  17:17,18,20
  17:24  18:4
  37:16  47:22
  48:12,13
wetlands 18:7
what's 7:8,18
  14:7  22:19
  36:12  43:14
whatsoever
  13:25
whichever
  22:18
who's 63:6
Whoa 54:21
window 39:21
  41:1
witness 2:2
  3:6,13  4:21
  8:6  25:8
  26:7,15
  27:2,5,7,13
  31:8,10
  67:2,6,8,14
witnesses
  31:2
wooden 24:17
woodland 18:4
words 31:15
```

Page 15

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| 31:17 | works 26:21 | 53:25 | **1** | 23-11851 1:5 |
| **work** 28:5 | world 47:16 | Yep 9:10 | **1** 2:10 20:24 | 248.220.1415 |
| 30:17 31:20 | 64:7 | 20:18 28:17 | 21:11 | 1:15 |
| 32:9,13 | wouldn't 40:9 | you'd 50:7 | **1-11** 46:14 | 248.489.4100 |
| 36:1,4,10 | wrap 66:23 | 64:3 | **10** 1:10 3:2 | 1:19 |
| 36:16,20,22 | write 13:19 | you're 5:4 | 68:7 | **25** 2:11 66:2 |
| 37:2,5,10 | writing 29:7 | 10:20,21 | **10:43** 67:4,9 | **250** 1:18 |
| 37:14,15,15 | 45:15 | 16:11 24:19 | **10:53** 67:5 | **26** 68:21 |
| 37:17,24 | written 39:4 | 26:14 33:19 | **10:54** 67:10 | **27555** 1:18 |
| 38:3,5,13 | 46:12 | 37:1 38:21 | **10:55** 67:16 | |
| 38:14,17,19 | wrong 22:6 | 38:22 43:13 | **165** 1:14 | **3** |
| 38:21,21,22 | 34:21 62:6 | 49:2 52:6 | | **3** 2:4,12 30:6 |
| 38:23 39:1 | wrote 13:4 | 55:6 60:24 | **2** | 58:8 |
| 39:3,6,10 | 25:19 28:21 | you've 5:11 | **2** 2:11 25:5 | **30** 2:12 |
| 39:16,16,21 | 31:11 | 5:18 8:22 | 28:14 51:19 | **30665** 1:14 |
| 39:23 40:10 | | 31:24 32:1 | **2017** 52:9 | **33** 2:13 |
| 40:12,16,19 | **X** | 40:19 46:3 | **2018** 9:22,22 | |
| 40:21 41:2 | | 47:24 64:18 | 9:23,24 | **4** |
| 41:9,12,14 | **Y** | | 10:10,24 | **4** 2:13 33:17 |
| 41:16,19 | yeah 4:1 9:22 | **Z** | 19:2,5 | **48331** 1:19 |
| 42:1,1,3,5 | 11:11,16,22 | **Z** 63:11 | 20:15 23:19 | **48334** 1:15 |
| 42:6,10,12 | 12:18,19 | Zalewski 1:17 | 34:23 61:13 | |
| 42:15,25 | 13:1 14:4,4 | 3:9 5:2 6:1 | **2019** 9:14,23 | **5** |
| 43:3,5,11 | 15:15 20:1 | 6:14,20,23 | 19:5 52:9 | **5** 2:14 54:20 |
| 43:14,15 | 20:6 26:4 | 6:25 25:21 | 52:12,22 | 54:22 55:2 |
| 44:11,16,18 | 26:15,19,21 | 25:24 26:4 | 66:2 | **55** 2:14 |
| 44:22 45:2 | 27:2,4 29:3 | 26:13,16,19 | **2020** 7:13 | |
| 45:7,15,22 | 29:4,4,5 | 26:21 27:4 | 9:13 | **6** |
| 46:2,14,17 | 30:12 32:23 | 27:6,10,16 | **2021** 19:6,15 | **6** 2:15 60:21 |
| 46:23 47:12 | 33:4,8,10 | 46:25 47:3 | 54:5 60:10 | 60:23 |
| 47:14,17 | 33:14 34:25 | 67:1,7,15 | **60** 2:15 | |
| 48:12,15 | 35:11,13,21 | Zoble 63:11 | **2022** 20:22 | **6221** 8:13,23 |
| 49:8,21 | 36:14 37:21 | zoning 36:15 | 24:4,23 | 17:5 21:20 |
| 50:2,24 | 38:10 39:18 | 38:22 42:7 | 28:1,2 | 24:18 |
| 54:14,15,18 | 52:9 60:25 | zoom 1:11 3:5 | 34:24,25 | **65** 2:16 |
| 59:22,22 | 62:10,11,17 | 21:3,17,17 | **2024** 1:10 3:2 | **67** 68:6 |
| 60:7,9,15 | 63:5,17 | 21:24 25:8 | 50:12 68:8 | |
| 66:15 | 64:12 66:8 | 26:3 34:8 | 68:13 | **7** |
| worked 59:13 | year 10:10,13 | 35:18 60:21 | **2027** 68:21 | **7** 2:16 65:15 |
| workers 41:5 | 61:23 | 65:15 | **21** 2:10 55:14 | **7-25-19** 2:16 |
| working 28:3 | years 5:14 | | 59:19 60:1 | |
| 28:4,11 | 7:14,20 | **0** | **22** 59:16 | **8** |
| 55:19 | 17:22 43:21 | 000009 25:2 | 68:13 | |
| | 44:14 53:16 | 00001 21:12 | **23** 53:6,8 | **9** |
| | | | | **9:05** 1:11 3:3 |

Page 16

Grossman v Charter Twp. of West Bloomfield

Brian Harris
4/10/2024

| | | | | |
|---|---|---|---|---|
| **9:38** 27:18 | | | | |
| **9:43** 27:14 | | | | |
| **9:44** 27:19 | | | | |

Page 17