UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

        Plaintiff,

v.

THE CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

        Defendant.

Case No. 23-11851
Hon. Shalina D. Kumar

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 18)**

**\*\*Oral Argument Requested\*\***

Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, by and through its counsel, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., responds in opposition to Plaintiff's motion summary judgment (ECF No. 18), pursuant to Fed. R. Civ. P. 56, for the reasons stated in the accompanying brief in support of this motion.

WHEREFORE, Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, respectfully requests that this Honorable Court deny Plaintiff's motion for summary judgment, and grant any other relief deemed appropriate.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER, P.C.


/s/Matthew J. Zalewski
MATTHEW J. ZALEWSKI (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

DATED:      July 6, 2024

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

        Plaintiff,                    Case No. 23-11851
                                            Hon. Shalina D. Kumar

v.

THE CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

        Defendant.

---

**<u>BRIEF IN SUPPORT OF
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT</u>**

**\*\*Oral Argument Requested\*\***

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iii

STATEMENT OF ISSUES PRESENTED............................................................ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITIES FOR RELIEF
REQUESTED .................................................................................................... vii

COUNTER-STATEMENT OF MATERIAL FACTS ...............................................1

STANDARD OF REVIEW ....................................................................................9

ARGUMENT .......................................................................................................10

   I.   PLAINTIFF'S DUE PROCESS CLAIMS FAIL FOR LACK OF A
      PROTECTED PROPERTY RIGHT, BECAUSE PROCEDURAL
      DUE PROCESS WAS AFFORDED, AND THE ACTIONS
      ALLEGED DO NOT IMPLICATE A SUBSTANTIVE DUE
      PROCESS VIOLATION. ...............................................................................10

      A. Plaintiff lacks a constitutionally protected property right.........................10

      B. Plaintiff's procedural due process claim fails on the merits. ....................13

      C. The conduct alleged does not violate substantive due process. .................18

   II.  THE MALICIOUS PROSECUTION AND TORTIOUS
      INTERFERENCE CLAIMS ARE BARRED BY STATE
      IMMUNITY. ..........................................................................................20

   III.  PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS
      BECAUSE THE PROSECUTION ENDED WITH A PLEA
      BARGAIN, AND WAS INITIATED WITH PROBABLE CAUSE,
      WITHOUT ANY EVIDENCE OF MALICE. ...............................................22

   IV.  PLAINTIFF FAILS TO PRESENT ANY EVIDENCE SUPPORTING
      HIS TORTIOUS INTERFERENCE CLAIM. ..............................................24

CONCLUSION ...................................................................................................25

# INDEX OF AUTHORITIES

**Cases**

*3883 Connecticut LLC v. District of Columbia,* 336 F.3d 1068 (D.C. Cir. 2003)  16, 17

*Adams v. National Bank of Detroit,* 444 Mich. 329; 508 N.W.2d 464 (Mich. 1993) ..............................................................................................................................20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)...................................10

*Bevan v. Brandon Township,* 475 N.W.2d 37, 46 (Mich. Sup. Ct. 1991) ..............12

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ...............................................11

*Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991)...................................10

*Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 573 (6th Cir., 2008), *cert. denied,* 555 U.S. 1062 (2008)...................................................................................11

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).................................... vi, 10

*Chaconas v Lima Tp.,* No. 258979, 2006 WL 2312242, at *3 (Mich. App. Aug. 10, 2006) ...................................................................................................................22

*City of Rochester Hills v. Six Star, Ltd, Inc.,* 167 Mich. App. 703, 707-708, 423 N.W.2d 322 (1988) ...............................................................................................22

*Cleveland Bd. of Educ v. Loudermill,* 470 U.S. 532, 541-42 (1985)......................15

*Cummins v. Robinson Twp.,* 770 N.W.2d 421, 438 (Mich. Sup. Ct. 2009) ..... 11, 19

*Daley v. Charter Tp. of Chesterfield,* No. 11-12562, 2012 WL 1721671 at *16-17 (E.D. Mich. May 16, 2012)............................................................................ 17, 18

*Depiero v. City of Macedonia,* 180 F.3d 770, 788 (6th Cir. 1999)......................6, 15

*Dubuc v. Twp. of Green Oak,* 406 F.App'x 983, 989....................................... 17, 18

*EJS Properties, LLC v. City of Toledo,* 698 F.3d 845, 855 (6th Cir. 2012)  11, 14, 19

*Fass v Highland Park*, 326 Mich 19 (1949) ..................................................... 12, 13

*First National Bank of Arizona v. Cities Service Co,* 391 U.S. 253, 289 (1968)......9

*Friedman v. Dozorc,* 412 Mich. 1, 48; 312 N.W.2d 585 (1981) .............................23

*Genesee County Drain Comm'r v. Genesee County,* 309 Mich. App. 317, 328, 869 N.W.2d 635 (2015) ...............................................................................................22

*Golf Village North, LLC v. City of Powell, Ohio,* 42 F.4th 593 (6th Cir. 2022.) vi, 19

*Green Genie, Inc. v. City of Detroit, MI,* 63 F.4th 521 (6th Cir. 2023).............. vi, 15

*Henry v. United States,* 361 U.S. 98 (1959) ...........................................................24

*Herman v City of Detroit,* 261 Mich. App. 141, 144, 680 N.W.2d 71 (2004) ........22

iii

*Knight Enterprises, Inc. v. RPF Oil Company,* 299 Mich.App. 275; 829 N.W.2d 345 (Mich. Ct. App. 2013.)..................................................................................21

*Mack v. City of Detroit,* 467 Mich. 186, 203-204, 649 N.W.2d 47 (2002) .............21

*Mastushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)10

*Mathews v. Eldridge,* 424 U.S. 319, 348-49 (1976) ............................... vi, 14, 15, 16

*Matthews v. Blue Cross and Blue Shield of Michigan,* 456 Mich. 365, 527 N.W.2d 603 (Mich. 1998) ......................................................................................................23

*McPherson v. Kelsey,* 125 F.3d 989 (6th Cir. 1997) .................................................25

*Mettler-Walloon, LLC v. Melrose Twp.,* 761 N.W.2d 293, 306 (Mich. Ct. App. 2008) ........................................................................................................................19

*Nawrocki v Macomb County Road Comm'n*, 463 Mich. 143, 156, 615 N.W.2d 702 (2000).......................................................................................................................21

*Newman v. Township of Hamburg,* 773 F.3d 769 (6th Cir. 2014) ...........................23

*Nykoriak v. City of Hamtramck,* No. 14-11954, 2016 WL 558719 at *4 (E.D. Mich. Feb. 12, 2016) ........................................................................................................ vi

*Odom v Wayne County,* 482 Mich. 459, 760 N.W.2d 217 (2008) ..........................22

*Paeth v. Wroth Tp,* 483 Fed.Appx. 956 (6th Cir. 2012) ......................... vi, 15, 16, 17

*Peterson Novelties, Inc. v. City of Berkley,* 259 Mich. App. 1, , 623 N.W.2d 351 (2003) .....................................................................................................................23

*Ray v. Swager,* 501 Mich. 52, 62, 903 N.W.2d 366 (2017)....................................21

*Richardson v. Township of Brady,* 218 F.3d 508, 518 (6th Cir. 2000).....................12

*Ross v Consumer Power Co*, 420 Mich. 567, 620, 363 N.W.2d 641 (1984) ..........21

*Shepherd Montessori Center Milan v. Ann Arbor Chtr. Twp.,* 783 N.W.2d 695, 698 (Mich. Sup. Ct. 2010) ...........................................................................................11

*Shoemaker v. City of Howell,* 795 F.3d 553, 559 (2015)........................ vi, 6, 14, 15

*Sykes v. Anderson,* 625 F.3d 294 (6th Cir. 2010) ..................................................... vi

*Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005)..........................................11

*Tuscola Wind III, LLC v. Almer Charter Township,* 327 F. Supp.3d 1028 (E.D. Mich. 2018)…………………………………………………………………………..12

*Ward v. Mich. State Univ (On Remand),* 287 Mich. App. 76, 782 N.W.2d 514 (2010) .....................................................................................................................22

*Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir.2006) ................14

**Statutes**

Mich. Comp. Laws § 125.1501.............................................................................18

iv

Mich. Comp. Laws § 125.1512 ...............................................................................13
Mich. Comp. Laws § 125.1512(3) ..........................................................................16
Mich. Comp. Laws § 125.1516 ...............................................................................18
Mich. Comp. Laws § 125.1518 ...............................................................................18
Mich. Comp. Laws § 691.1401(b) ..........................................................................21
Mich. Comp. Laws § 691.1407(1) .................................................................... vi, 21

## Other Authorities

Mich. Building Code R 113 ...............................................................................6, 18
Mich. Building Code R.115……………………………………………..5, 6, 8, 9

## Rules

Fed. R. Civ. P. 56(a)..............................................................................................10
Fed. R. Civ. P. 56(c)..............................................................................................10

## Ordinances

Ordinance Sec. 1-12.................................................................................. 5, 6, 7, 8, 9
Ordinance Sec. 12-15 ...................................................................................................5
Ordinance Sec. 12-91 ............................................................................................6, 13
Ordinance Sec. 12-92…………………………………………………………5
Ordinance Sec. 8-308…………………………………………………………5
Ordinance Sec. 8-310 ............................................................................................6, 13
Ordinance Sec. 8-376 ............................................................................................6, 13
Ordinance Sec. 20-111…………………………………………………………..5
Ordinance Sec. 20-113…………………………………………………………..5
Zoning Ordinance 5.4 ...........................................................................................6, 13

## STATEMENT OF ISSUES PRESENTED

I.     Should Plaintiff's motion for summary judgment be denied relative to Plaintiff's procedural and substantive due process claims, where Plaintiff lacks a protected property right, procedural due process was afforded, and the actions alleged do not implicate a substantive due process violation?

      Defendant answers:      Yes
      Plaintiff answers:      No

II.    Should Plaintiff's motion for summary judgment of the malicious prosecution and tortious interference claims be denied, where those claims are barred by immunity under Michigan law?

      Defendant answers:      Yes
      Plaintiff answers:      No

III.   Should Plaintiff's motion for summary judgment of the malicious prosecution claim alternately be denied on the merits, where the prosecution concluded with a plea bargain, was supported by probable cause, and was without malice?

      Defendant answers:      Yes
      Plaintiff answers:      No

IV.    Should Plaintiff's motion summary judgment of the tortious interference claim alternately be denied on the merits, where Plaintiff relies solely on conclusory arguments, has failed to proffer any evidence to meet its initial burden under Fed. R. Civ. P. 56, and falsely asserts that the Township has not denied the claim?

      Defendant answers:      Yes
      Plaintiff answers:      No

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES FOR RELIEF REQUESTED

### Issue I

*Golf Village North, LLC v. City of Powell, Ohio,* 42 F.4th 593 (6th Cir. 2022)

*Green Genie, Inc. v. City of Detroit, MI,* 63 F.4th 521 (6th Cir. 2023)

*Mathews v. Eldridge,* 424 U.S. 319 (1976)

*Paeth v. Wroth Tp,* 483 Fed.Appx. 956 (6th Cir. 2012)

*Shoemaker v. City of Howell,* 795 F.3d 553 (6th Cir. 2015)

*Seguin v. City of Sterling Heights,* 968 F.2d 584 (6th Cir. 1992)

### Issue II

Mich. Comp. Laws § 691.1407(1)

### Issue III

*Nykoriak v. City of Hamtramck,* No. 14-11954, 2016 WL 558719 at *4 (E.D. Mich. Feb. 12, 2016)

*Sykes v. Anderson,* 625 F.3d 294 (6th Cir. 2010)

### Issue IV

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

Fed. R. Civ. P. 56

## COUNTER-STATEMENT OF MATERIAL FACTS

As an initial matter, the Township objects that Plaintiff's brief fails to conform to the formatting standards for a summary judgment brief set forth in this Court's protocol and Scheduling Order. (ECF No. 6.) Plaintiff has failed to provide a numbered statement of facts, and has largely failed to provide citations to evidence for each fact. The Township has endeavored to conform this response to the Court's Order and protocols by assigning a number to each individual paragraph of Plaintiff's statement, and responding accordingly.

1.      Admitted.

2.      The Township admits only that it prosecuted Plaintiff in the 48th District Court for performing work without permits. Plaintiff denies the balance of the allegations in the second paragraph as untrue. Other than vaguely directing the reader to "see Plaintiff's Complaint," the paragraph is devoid of citations to any evidence to support its conclusory allegations of "conspiracy," "extortion," or a causal connection to damages. In rebuttal, the Township relies upon the evidence cited in response to more specific allegations, *infra,* and all evidence and arguments referenced in its cross-motion for summary judgment. (ECF No. 17.)

3.      Admitted.

4.      The Township admits that the Subject Property was uninhabitable at the time of Plaintiff's purchase, that it had multiple pre-existing code violations, and

that Plaintiff secured permits to perform repairs to those conditions. The Township neither admits nor denies that Plaintiff secured a construction loan, or the purpose of that loan, and denies the materiality of this fact.

5.      The Township neither admits nor denies the amount that Plaintiff invested in the Subject Property and/or repairs to it, and denies the materiality of that question for purposes of summary judgment since damages are not properly calculated on summary judgment. The Township admits that the property is accessed from Maple Road via a drive that crosses adjacent property owned by a neighbor, Dr. Imad Daouk, and that the drive includes a small bridge over a creek. The Township does not contest Plaintiff's characterization of the structural makeup of the bridge, or its condition at the time that Plaintiff acquired the Subject Property.

6.      Admitted that Plaintiff had multiple meetings or discussions with West Bloomfield Township Fire Department personnel, who expressed concerns about the bridge's ability to support fire apparatus.

7.      Admitted only that the Fire Marshal expressed concerns about the ability of fire equipment to cross the bridge.

8.      The Township neither admits nor denies the specific dates on which Plaintiff performed the work described on the bridge, or whether the neighbor concurred in the work, and denies the materiality thereof. The Township admits that Plaintiff performed the work on the bridge without any permits. As to the balance of

2

the allegations, the Township admits only that, upon completion of the repairs and receipt of an engineering report, the Township Fire Department had no remaining concerns about the structural integrity of the bridge.

9. Admitted that, on December 2, 2020, Plaintiff met with the Township Environmental Manager and Engineer at the Subject Property and neighbor's property on which the bridge is located, and that both expressed concerns. For further answer, the Township Environmental Manager and Township Engineer more specifically advised Plaintiff that they had observed wetland disturbance around the bridge area, advised Plaintiff of the processes and permitting that would be required for Plaintiff to correct the violations; specifically, that Plaintiff needed to apply for and obtain an after-the-fact wetland permit and grading/soil erosion and sedimentation control permit. (IWT20-0130 Record, ECF No. 17-7, PageID.359; Code Enforcement EN 21-1338 Record, ECF No. 17-8, PageID.361.)

Admitted that the Fire Marshal ultimately advised that the department's equipment would cross the bridge, subject to a load rating report, and the Fire Department has no remaining concerns about the capacity of the bridge.

Neither admitted nor denied that Plaintiff requested a meeting "several days," later, and denied that the fact is material to the cross-motions.

Admitted that Plaintiff was advised on March 4, 2021 of the stop work order as Plaintiff sought a plumbing inspection, but denied that it was his first notice of

the stop work orders. In addition to the notice of the violations provided by the Environmental Manager and Engineer on December 2, 2020, on April 19, 2021, the Planning and Development Services Director advised Plaintiff of the steps that needed to be taken to bring the property into compliance with the Township's codes, and specifically advised that "the stop work order will remain in place until such time as we have approvable plans/permits for the grading and bridge repair work." (April-May 2021 E-Mail Chain, ECF No. 17-9, PageID.371.)

10-16.     The Township answers paragraphs 10-16 together, as they are closely interrelated. The Township denies that Plaintiff has not been provided any additional information about the stop work orders or violations on the Subject Property or the work he performed without permits on the bridge on the neighboring property. In addition to the information provided on December 2, 2020 and April 19, 2021 (referenced in answer to Paragraph 9), Plaintiff was also advised through e-mails, dated May 27, 2021 and September 29, 2021 of the steps necessary to resolve the stop work order and resolve the violations that were first observed on December 2, 2020. (April-May 2021 E-Mail Chain, ECF No. 17-9, PageID.370-371, Aug.-Sept. 2021 E-Mail Chain, ECF No. 19-10, PageID.373-375.)

Defendant admits that the Township's Ordinances and applicable building codes set forth steps for issuing stop work orders relative to a variety of different permits, but denies Plaintiff's characterization and grouping of those steps in the

4

manner that he has, as Plaintiff's approach incorrectly merges elements for different types of stop work orders into a single package. More fundamentally, the Township denies that Plaintiff's reference to procedures under Ordinance Secs. 8-308, 12-15, 20-111, and 20-113, are applicable to this matter. Sec. 8-308 pertains to procedures relative to the revocation of a permit issued under the Grading and Drainage article of the Code. (Ord Sec. 8-308, ECF No. 17-16, PageID.437.) Here, Plaintiff did *not* have a permit issued under that Code section. Rather, the stop work order was placed on the building permit on the Subject Property. Similarly, the procedures under Ord. Sec. 12-92 requiring hearings for stop work orders relates specifically to stop work orders placed, *on permits for work in floodplains or wetlands,* which Plaintiff did not have. (Ex. 1, Code Article V, Ch. 12 Excerpt.) Moreover, the procedures of Code Sec. 20-111 and 20-113 are irrelevant because those provisions apply to stop work orders for permits to do work in a public right-of-way, which is not involved here. (Ex. 2, Code Article III Excerpt.) The Township therefore denies each allegation in Paragraphs 10-16 asserting that the stop work order procedures in these sections were not followed, because it denies the premise that they were applicable.

Thus, the only stop work procedures in play in this case are those set forth in Ordinance Sec. 1-12, pertaining to stop work orders, generally (Ex 3, Code Sec. 1-12), and the provisions of the Michigan Building Code pertaining to stop work orders. Mich. Building Code R. 115 (ECF No. 17-19, PageID.476.) These allow a

5

stop work order to be placed immediately. The Michigan Building Code also provides a means of appeal of decisions of the Building Official to the Construction Board of Appeals. Mich. Building Code R. 113 (ECF No. 17-19, PageID.475.) Contrary to Plaintiff's interpretation, neither the Environmental Commission nor the Township Board has any role in stop work orders related to general building permits.

To the extent that the Township's issuance of the stop work order did not fully follow each procedure relevant to stop work orders in Code Sec. 1-12 and Mich. Building Code. R. 115, the Township denies any inference that this equates to a constitutional due process violation. *See, e.g., Shoemaker, infra,* at 560.

17.    Admitted that the stop work orders were not posted on the property or delivered via written notice. Denied that Plaintiff was never informed as to the nature of the violations at the Subject Property. (See Paragraphs 9 and 10, *supra.*) Plaintiff has repeatedly been advised of the violations and procedures to resolve them, and was again put on notice when he was issued a ticket that delineated violations of ordinances regulating floodplains[1], environmental features[2], soil erosion[3], and grading[4]. (Ticket, ECF No. 17-11, PageID.377.)

18.    Denied as untrue. The fact that Plaintiff lacked the proper permits for

---

[1] Ordinance Ch. 12, Article V, Sec. 12-91, ECF No. 17-13, PageID.392.
[2] Zoning Ordinance 5.4, ECF No. 17-14, PageID.399.
[3] Ordinance Ch. 8, Article XV, Sec. 8-376, ECF No. 17-15, PageID.423.
[4] Ordinance Ch. 8, Article XIII, Sec. 8-310, EF No. 17-16, PageID.438.

the work that he was cited for and for which the stop work order was placed is substantiated in the responses and materials referenced in response to Paragraphs 9, 10, and 17, *supra.* For further answer, the Township has not performed additional inspections of the work deemed to be out of compliance because Plaintiff has not initiated the processes to bring those items into compliance, and therefore the Subject Property and bridge area are not ripe for re-inspection.

The Township admits that it prosecuted Plaintiff in the 48th District Court, that an inspection occurred the next day. The Township denies as untrue that the Court "ordered" the inspection. Plaintiff admitted in his responses to the Township's Requests for Admission that the Court *did not* do this. (Resp. to Requests to Admit No. 2, ECF No. 17-22, PageID.489.) (*See, also,* Hearing Transcript, ECF No. 17-12, PageID.384-388.) The Township admits that Plaintiff pled to four counts of double parking in exchange for dismissal of the work-without-permit tickets.

Denied that the inspection should have occurred earlier. Plaintiff does not cite the authority upon which he claims that a "compliance recheck inspection" should have occurred months earlier. Such language does not appear in the only stop work provisions applicable to this matter, those being Code Sec. 1-12, and the regulations of the Michigan Building Code. Upon information and belief, Plaintiff is referring to procedures relative to stopping work on the permits that he did not possess.

19.     Denied as characterized. While the inspection that took place on May

7

11, 2022 revealed that one of two areas of wetland/erosion concern had appeared to resolve itself through the forces of nature, a second area remained in need of remediation. (EN21-1338 Record, p. 5, ECF No. 17-8, PageID. 365.)

20. Admitted only that the Fire Marshal's concerns were assuaged by the engineering report. The Township denies the balance of the allegations as characterized, and denies their materiality to the outcome of these motion, as the Township's issues were not merely with whether "maintenance" of the bridge occurred, but with work without permits in environmentally sensitive areas, and with violations of the Township's ordinances, which are separate and distinct from any MDOT requirements. (*See,* answers to Paragraphs 9, 10, and 17.)

21. Admitted that the concerns about the fire department access across the bridge have been resolved. Denied that the issues of the fire department are material or even relevant to the resolution of the cross-motions for summary judgment.

22. Denied as untrue that the enforcement pertained merely to maintenance of the bridge, that the state's assessment is controlling of the result of the Township's ordinance enforcement, and that there was no reason to place a stop work order on the building permit based on the location of the bridge work. Plaintiff admits that he has an easement across the bridge to benefit the Subject Property, and that he performed the work on the bridge. The relevant ordinances address the act (and thus the actor). Both Township Code Sec. 1-12 and Mich. Building Code R. 115.3

8

provide that a person who performs *any* work on a property for which a stop work order has been issued has be deemed to be in violation. (Ex. 3, Code Sec. 1-12(b); Mich. Building Code R. 115.3, ECF No. 17-19, PageID.476.)

23. Denied that the EGLE opinion is controlling on the Township's enforcement of its ordinances, or addresses the full scope of the four ordinance violations that were identified by the Township.

24. Denied as untrue that Plaintiff has completed the steps necessary to resolve the violations and stop work orders, but admitted that Plaintiff continuously denies that he needs to comply with the Township's ordinances or correct the identified violations, based on his insistence that the law does not apply to him.

25. The Township neither admits nor denies the number of lawyers Plaintiff has cycled through related to this matter, and denies that the fact is material. The Township denies the balance of the characterizations in this paragraph, which are repetitive of the allegations in Paragraphs 9, 10, 17, and 18, the answers to which are incorporated by reference as though fully stated herein.

26. The Township denies that Plaintiff is entitled to the relief that Plaintiff seeks. It is the Township that is entitled to summary judgment. (ECF No. 17.)

### STANDARD OF REVIEW

A motion for summary judgment shall be granted only when the "movant shows that there is no genuine dispute as to any material fact and the movant is

9

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where the trier of fact could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Inferences from the underlying facts are viewed in a light most favorable to the nonmoving party. *Mastushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of identifying the basis of the summary judgment motion and portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Only then must the nonmoving party produce evidence supporting its claim and to make the case that a genuine question of material fact exists. *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991). The nonmoving party can make this showing by citing to particular evidence or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

### ARGUMENT

I. **PLAINTIFF'S DUE PROCESS CLAIMS FAIL FOR LACK OF A PROTECTED PROPERTY RIGHT, BECAUSE PROCEDURAL DUE PROCESS WAS AFFORDED, AND THE ACTIONS ALLEGED DO NOT IMPLICATE A SUBSTANTIVE DUE PROCESS VIOLATION.**

**A. Plaintiff lacks a constitutionally protected property right.**

Plaintiff seeks summary judgment of Count III, which alleges both procedural and substantive due process violations under both the Michigan and U.S.

Constitutions. To prevail on both claims, Plaintiff must prove that he has a constitutionally protected property right. *Green Genie, Inc. v. City of Detroit, MI,* 63 F.4th 521, 526 (6th Cir. 2023); *EJS Properties, LLC v. City of Toledo,* 698 F.3d 845, 855 (6th Cir. 2012).[5] The Due Process Clause "does not protect everything that might be described as a benefit." *Green Genie,* 63 F.4th at 526, citing *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005). Plaintiff must have more than an abstract desire for it or unilateral expectation of the alleged right; rather, he must have a "legitimate claim of entitlement to," in this case, continuation of a building permit absent a stop work order. *R.S.W.W. Inc. v. Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005), citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *Braun v. Ann Arbor Chtr. Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).

"Constitutionally protected property interests are not created by the Constitution itself but rather by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *R.S.W.W. Inc. v.* 397 F.3d at 435. Thus, "[w]hether a person has a 'property' interest is a traditionally a question of state law." *EJS Properties,* 698 F.3d at 855.

---

[5] As the Michigan Constitution's provisions are construed coextensively with their federal counterparts, they are appropriately considered together. *Shepherd Montessori Center Milan v. Ann Arbor Chtr. Twp.,* 783 N.W.2d 695, 698 (Mich. 2010); *Cummins v. Robinson Twp.,* 770 N.W.2d 421, 438 (Mich. 2009).

11

Even where substantial sums of money have been expended, the mere application for a permit is not enough to vest a property right. *Seguin v. City of Sterling Heights,* 968 F.2d 584, 591 (6th Cir. 1992), citing *Bevan v. Brandon Township,* 438 Mich. 385, 402, 475 N.W.2d 37, 46 (Mich. Sup. Ct. 1991). Importantly, A property owner "acquires no vested right to use their property for a purpose forbidden by law." *Fass v Highland Park*, 326 Mich. 19, 27, 39 N.W.2d 336, 340 (Mich. 1949). Notably, there also is no protected property right in *procedures themselves. Tuscola Wind III, LLC v. Almer Charter Township,* 327 F.Supp.3d 1028, 1041 (E.D. Mich. 2018); *Richardson v. Township of Brady,* 218 F.3d 508, 517-518 (6th Cir. 2000).

Here, Plaintiff's motion dedicates a single sentence to its claim of a protected property right, without citation to any legal authorities, asserting, "Plaintiff has a protected property interest that attaches to his ownership of the real property that is the subject of this dispute." (Plaintiff's Resp. to Township's MSJ, ECF No. 18, PageID.515.) However, Plaintiff's approach is at too high of a level of generality, as accepting such an approach swallows the case law identifying the many circumstances recognized in the precedent that do *not* constitute a protected property right, regardless of ownership of property (*see, e.g.,* cases cited, *supra,* regarding the need to have a protected property interest in the benefit sought, and the lack of a protected interest in procedures themselves or in an activity that violates the law.)

Taking the approach of determining whether Plaintiff has a protected property right in the continuation of the building permit absent a stop work order points to examining the Township's Ordinances that provide that permits shall be required for work in wetlands (Ord. Sec. 12-91, ECF No. 17-13, Page ID.392), require a permit application for work in an environmental setback area (ZO Sec. 5.4.B.iii, ECF No. 17-14, PageID.400), make it unlawful to make changes to the earth without a soil erosion control permit (Ord. Sec. 8-376, ECF No. 17-15, PageID.423), and require permits to be obtained for enumerated soil grading and drainage activities (Ord. Sec. 8-310, ECF No. 17-16, PageID.438) Plaintiff was cited for violations of each of these provisions. (Ticket, ECF No. 17-11, PageID.377.) Plaintiff's active permits relative to the subject property were not for any of these activities within the access easement area. (Permit PB19-0599, ECF No. 17-3, PageID.286; Permit M19-0518, ECF No. 17-4, PageID.288; Permit PP19-0266, ECF No. 17-5, PageID.290). Where work is being undertaken contrary to issued permits, it is unlawful, and a stop work order may be placed. Mich. Comp. Laws § 125.1512. As Plaintiff's activities exceeded the scope of the permits in which he argues he has a protected property right, and that work was unlawful, Plaintiff lacks a protected property right in the continuation of the permits that were subject to the stop work orders. *Fass, supra*.

**B. Plaintiff's procedural due process claim fails on the merits.**

Even if Plaintiff were deemed to have a protected property right, Plaintiff's

<div align="center">13</div>

arguments as to why he should be granted summary judgment are misguided and completely devoid of any legal analysis. All Plaintiff's motion does is assert that the stop work order was not posted on the property or delivered to Plaintiff. These facts are, ultimately, not in dispute. However, Plaintiff's assertion that he had no notice of the violations or procedure for correcting the violations is belied by the record evidence of the Township's repeated communications with Plaintiff. To the extent that Plaintiff tries to infer a procedural due process violation based on deviations from select technical steps in the stop work order process, this does not automatically equate to a deprivation of *constitutional* procedural due process, and should not be found to be a constitutional deprivation in this case.

Procedural due process is understood as requiring fairness in procedures when depriving somebody of life, liberty or property. See, e.g., *EJS Properties,* 698 F.3d at 855. Plaintiff has to show that the Township did not afford him "adequate procedural rights prior to depriving [her] of the property interest." *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir.2006)." *Id.* "[A]t its essence, due process can be summarized as 'the requirement that a person . . . be given notice . . . and [an] opportunity to be heard." *Shoemaker v. City of Howell,* 795 F.3d 553, 559 (6th Cir. 2015), citing *Mathews v. Eldridge,* 424 U.S. 319, 348-49 (1976).

In reviewing whether procedural due process has been afforded, pre- and post-deprivation procedures should be "considered together as a single package."

*Shoemaker,* at 559. Notice is sufficient where the property owner "was clearly aware that the City considered him to be in violation of the Ordinance." *Id.,* at 560.

While the Complaint raises allegations about what procedures were required under different Township Ordinances or state codes pertaining to stop work orders under various circumstances, these allegations are inapposite. Even where a municipality does not "fully comply with its own Ordinance, such a failure 'does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution.'" *Shoemaker,* 795 F.3d at 560, citing *Depiero v. City of Macedonia,* 180 F.3d 770, 788 (6th Cir. 1999). Indeed, "what process is due under the Constitution is not equivalent to the procedures outlined by statutes or ordinances, and so a violation of them does not automatically point to a due process violation." *Paeth v. Wroth Tp,* 483 Fed.Appx. 956, 962 (6th Cir. 2012), citing *Cleveland Bd. of Educ v. Loudermill,* 470 U.S. 532, 541-42 (1985), and *DePiero v.* 180 F.3d at 788 (6th Cir. 1999). Instead, the due process analysis considers:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguard; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Paeth,* 483 Fed.Appx at 962, quoting *Mathews,* 424 U.S. at 335.

In *Paeth,* the plaintiffs alleged a violation of due process based on the posting

15

of a stop work order without prior notice, which the Court found to be in deviation from the requirements of Mich. Comp. Laws § 125.1512(3). *Paeth,* 483 Fed.Appx. at 960. The plaintiffs had been renovating a home on their property, including expanding its building footprint. *Id.,* at 959. The Township determined that the plaintiffs' construction violated the Township's setback ordinance. *Id.* The plaintiffs sought a variance from the Township's Zoning Board of Appeals, which denied the variance, but the circuit court eventually reversed the decision. *Id.* However, during this time the plaintiffs' building permit had expired, so the stop work order was issued due to the plaintiffs' lack of an active permit. *Id.,* at 960. Evaluating the circumstances under the *Mathews* factors, the Sixth Circuit determined that no procedural due process violation existed, reasoning, in relevant part:

> Even assuming the Paeths had a valid permit and an attendant property interest in continuing construction on their home, that interest was not an extremely weighty one. At most, the Paeths were engaging in part-time construction at the time the stop work order was issued. The order came with instructions for how to apply for a new permit, a process that could have taken less than a day and that involved affording the Paeths an opportunity to be heard. Had the Paeths performed these steps, they would have been briefly inconvenienced by the stop work order, but the issue would have been resolved quickly. . . The idea that their choice to ignore the proffered procedure this time can create a federal cause of action resulting in $325,000 in damages makes little sense.

*Paeth,* 483 Fed.Appx. at 962 (emphasis original).

Further, the Sixth Circuit cited *3883 Connecticut LLC v. District of Columbia,* 336 F.3d 1068 (D.C. Cir. 2003) as a "remarkably similar" situation, in which a stop

16

work order posted without notice was found not to be a procedural due process violation given that procedures were available to the plaintiff to challenge the order, including an appeal process. *Paeth,* 483 Fed.Appx. at 963, citing *3883 Connecticut,* 336 F.3d at 1073. The plaintiffs' claimed interest had to "be balanced against the municipality's 'significant interest in maintaining its capability to act swiftly to bring an immediate halt to construction work that poses a threat to public health and safety or to the environment." *Id.,* citing *3883 Connecticut,* 483 Fed.Appx. at 1074.

Similarly, where prior notice of a stop work order being issued was not provided, but a plaintiff was aware that his construction activities were outside the scope of an issued permit, and the plaintiff could have appealed stop work orders to a Township's construction board of appeals but did not do so, no procedural due process violation was implicated. *Daley v. Charter Tp. of Chesterfield,* No. 11-12562, 2012 WL 1721671 at *16-17 (E.D. Mich. May 16, 2012) (ECF No. 17-17, PageID.447.) The Eastern District of Michigan concluded, "Plaintiff here 'did not avail himself of his postdeprivation opportunities, and he should not be able to now use his inaction against Defendant Township in claiming a violation of due process.'" *Id.,* at *17-18, citing *Dubuc v. Twp. of Green Oak,* 406 F.App'x 983, 989 and *Santana v. City of Tulsa,* 359 F.3d 1241, 1244 (10th Cir. 2004) (cleaned up).

Here, like in *Paeth, Daley, and DuBuc,* and as detailed in the Statement of Facts, *supra,* Plaintiff was repeatedly provided notice of the fact that the work he

17

performed was in violation of the Township's Codes and of the procedures that were necessary to come into compliance with the Township's codes, and had the ability to appeal the stop work order but did not do so.

Plaintiff clearly objects to the requirements of the Township, but he was not without recourse relative to the stop work order or the determinations of the Township's administrators as to what was required to restore his permits. Pursuant to Township Ordinance Sec. 8-1, the Township has adopted the Michigan Building Code and administers the Stille-DeRosset-Hale Single State Construction Code Act, Mich. Comp. Laws § 125.1501 et. seq. (Ord. Chapter 8, ECF No. 17-18, PageID.471.) Decisions and interpretations of the Building Official can be appealed to the local board of appeals. (Mich Building Code R 113.1, ECF No. 17-19, PageID.475); Mich. Comp. Laws § 125.1514. The local board's decision can then be appealed to the State Construction Code Commission ("SCCC"). *Id*; Mich. Comp. Laws § 125.1516. From there, the party may file an appeal of right of the SCCC's decision to the Michigan Court of Appeals. Mich. Comp. Laws § 125.1518. Yet, Plaintiff did not pursue these remedies. As in *Daley* and *DuBuc,* Plaintiff's inaction does not equate to a procedural due process violation the Township.

### C. The conduct alleged does not violate substantive due process.

Plaintiff's substantive due process argument is presented again in conclusory fashion, largely buttressed by hyperbolic interpretations of the fact pattern, without

18

any evidentiary citations to support Plaintiff's claims of arbitrariness or to negate the rational basis for the Township's identification and enforcement of the violations.

Since no fundamental right is alleged in this case, review is under the rational basis test. The conduct must be arbitrary in the constitutional sense; that is, it must "shock the conscience." *Cummins,* 770 N.W.2d at 703, citing *Mettler-Walloon, LLC v. Melrose Twp.,* 281 Mich.App.184, 200-201, 761 N.W.2d 293, 306 (Mich. Ct. App. 2008). **A plaintiff must negate every conceivable basis that might support the Township's actions or show that they are based "solely on reasons totally unrelated to the pursuit of the State's goals."** *Houdek v Centerville Twp,* 276 Mich.App.568, 583, 741 N.W.2d 587, 597 (Mich Ct. App. 2007), emphasis added. The Sixth Circuit has recently cautioned that there are very few cases in the land use context that meet this standard. *Golf Village North, LLC v. City of Powell, Ohio,* 42 F.4th 593, 601 (6th Cir. 2022.) While Plaintiff references a 2014 case for the mere proposition that a substantive due process claim can prevail where "arbitrary and capricious" action is shown, the Sixth Circuit has more recently clarified that the conduct must be "so shocking as to shake the foundations of this country." *Id.,* at 602, citing *EJS Properties,* 698 F.3d 845, 862.

Here, again, the Township's issuance of the stop work order and requirements for the remedying the stop work order were rationally related to Township's interest in enforcing the Building Code and the four ordinances that Plaintiff's unpermitted

19

work violated. It also advanced its interest in protecting the environment. *Paeth, supra.* Plaintiff has not pled, briefed, nor elicited any evidence to so much as even suggest that such run-of-the-mill enforcement activities are conscience-shocking, nor to rebut the Township's asserted rational basis for the identification and enforcement of the violations. And, while Plaintiff repeatedly makes the claim that the work he performed in the bridge area was not on *his* property, that attempt at an excuse falls flat in light of the fact that the ordinances that were applied by the Township to Plaintiff make the *acts* unlawful, and do not limit enforcement to being against the owner of the property on which those acts took place. Indeed, if Plaintiff's approach were adopted, then no building contractor could ever be held liable for work performed without a permit on property owned by another. It is undisputed that Plaintiff performed the work on and around the bridge area, thus giving the Township a rational basis for directing the violations to *him.*

## II. THE MALICIOUS PROSECUTION AND TORTIOUS INTERFERENCE CLAIMS ARE BARRED BY STATE IMMUNITY.

Plaintiff argues that summary judgment of Counts IV and V, alleging state law claims of malicious prosecution and tortious interference with contracts should be entered in his favor, but Plaintiff completely fails to plead around the Township's broad immunity from these state-law-based tort claims.

Malicious prosecution is an intentional tort. *See, e.g., Adams v. National Bank of Detroit,* 444 Mich. 329, 335; 508 N.W.2d 464, 466 fn. 6 (Mich. 1993). So, too, is

tortious interference with a contract. *Knight Enterprises, Inc. v. RPF Oil Company,* 299 Mich.App. 275, 280; 829 N.W.2d 345, 348 (Mich. Ct. App. 2013.)

Under Michigan law, government agencies and their employees are immune from tort liability when they are engaged in a governmental function. *Ray v. Swager,* 501 Mich. 52, 62, 903 N.W.2d 366 (2017). Mich. Comp. Laws § 691.1407(1) states:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.

Thus, "a party suing a unit of government must plead in avoidance of governmental immunity…by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Mack v. City of Detroit,* 467 Mich. 186, 203-204, 649 N.W.2d 47 (2002).

Such immunity is "expressed in the broadest possible language." *Nawrocki v Macomb County Road Comm'n*, 463 Mich. 143, 156, 615 N.W.2d 702 (2000). A "governmental function" is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance or other law." Mich. Comp. Laws § 691.1401(b) (codifying the definition used in *Ross v Consumer Power Co*, 420 Mich. 567, 620, 363 N.W.2d 641 (1984)). Whether an activity is a governmental function is resolved with reference to "the general activity, not the specific conduct involved" at the time of the alleged tort. *See, e.g., Ward v.*

21

*Mich. State Univ (On Remand),* 287 Mich. App. 76, 782 N.W.2d 514 (2010); *Herman v City of Detroit,* 261 Mich. App. 141, 144, 680 N.W.2d 71 (2004). There is no intentional tort exception to immunity. *Genesee County Drain Comm'r v. Genesee County,* 309 Mich. App. 317, 328, 869 N.W.2d 635 (2015); *Odom v Wayne County,* 482 Mich. 459, 760 N.W.2d 217 (2008).

The actions Plaintiff alleges against the Township relate to building code enforcement and ordinance enforcement, both of which are governmental functions for immunity purposes. *Chaconas v Lima Tp.,* No. 258979, 2006 WL 2312242, at *3 (Mich. App. Aug. 10, 2006) (ECF No. 17-20, PageID.478); *City of Rochester Hills v. Six Star, Ltd, Inc.,* 167 Mich. App. 703, 707-708, 423 N.W.2d 322 (1988).

As the Township's immunity is broad, no exceptions apply, and Plaintiff has not even attempted to plead around the fact that the general nature of the activities at issue are governmental functions, the Township is immune from Counts IV and V, and Plaintiff's motion for summary judgment must be denied.

### III. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS BECAUSE THE PROSECUTION ENDED WITH A PLEA BARGAIN, AND WAS INITIATED WITH PROBABLE CAUSE, WITHOUT ANY EVIDENCE OF MALICE.

While the Township's immunity should fully resolve Plaintiff's malicious prosecution claim, it also fails on the merits. Under Michigan law, the standard for malicious prosecution varies for civil or criminal proceedings. Here, both are at issue, as Plaintiff was charged with both civil infractions and misdemeanors.

22

To prevail on a malicious prosecution claim in a civil matter, Plaintiff must prove: 1) that the prior proceedings terminated in favor of plaintiff; 2) the absence of probable cause; and, 3) malice. *Friedman v. Dozorc,* 412 Mich. 1, 48; 312 N.W.2d 585 (1981). He must also show special injury. *Id.,* at 38-39, 49.

In the criminal context, the Plaintiff must show "(1) that the defendant initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross and Blue Shield of Michigan,* 456 Mich. 365, 378, 527 N.W.2d 603, 609-610 (Mich. 1998)

Under Michigan law, where a case is resolved through a plea bargain, it is not considered to have been resolved in Plaintiff's favor. *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich. App. 1, 21, 623 N.W.2d 351, 363 (2003). Here, Plaintiff acknowledges that the citations were resolved as part of a plea bargain through which Plaintiff pled to lesser charges. (Plaintiff's Brief, ECF No. 18, PageID.509, fn. 11.)

Moreover, the citations were supported by probable cause. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Newman v. Township of Hamburg,* 773 F.3d 769, 776 (6th Cir. 2014), quoting *Henry v. United States,* 361 U.S. 98, 102

23

(1959). Here, as discussed, *supra,* the Township's Environmental Manager and Engineer observed disturbances to suspected wetlands and soil erosion around the bridge area. Plaintiff admits that he caused the work to be performed, without permits. Given that the four ordinance sections under which Plaintiff was cited prohibit the very type of work that was observed on December 2, 2020, the citations were supported by probable cause. Finally, aside from conclusory allegations, the Complaint is devoid of evidence of malicious conduct, and no evidence of malice has been produced or elicited during discovery. Plaintiff's motion must be denied.

## IV.   PLAINTIFF FAILS TO PRESENT ANY EVIDENCE SUPPORTING HIS TORTIOUS INTERFERENCE CLAIM.

While, again, the tortious interference claim should be resolved solely with respect to the Township's immunity, Plaintiff's attempt to obtain summary judgment on the merits is woefully undeveloped and fails to establish the absence of a material question of fact in his favor. Plaintiff asserts that the Township had knowledge of contracts with third parties, but never identifies which contracts, or how the Township had knowledge. Plaintiff asserts that the Township "maliciously" interfered with those contracts, but neither the Statement of Facts nor argument contain any references to record evidence to show what acts Plaintiff is describing as malicious. Plaintiff appears to hope to wash way these deficiencies by falsely claiming that "Defendant has not provided a valid defense to its conduct and has not disputed that it tortuously interfered with Plaintiff's contracts." (Plaintiff's Brief,

24

ECF No. 18, PageID.521.) However, one need only look to the Township's Answer to the Complaint to show that the Township denied tortious interference with contracts (Answer, ECF No. 2, PageID.106-107), and to this brief and the Township's cross-motion for summary judgment to see its immunity defense. As Plaintiff has not even met his initial burden under the standard of review for a summary judgment motion, his merits arguments should be deemed waived,[6] and his motion must be denied.

## CONCLUSION

For these reasons, Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, respectfully requests that this Honorable Court deny Plaintiff's motion for summary judgment, and grant any other relief deemed appropriate.

<div style="margin-left: 50%;">

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER, P.C.

/s/Matthew J. Zalewski
MATTHEW J. ZALEWSKI (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

</div>

DATED: July 6, 2024

---

[6] *McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.")

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the Court's efile system, by selecting efile and eserve, which will send notification all attorneys of record.

/s/ Matthew J. Zalewski