UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

|                          |                                                |
|--------------------------|------------------------------------------------|
| Plaintiff,               | Case No. 23-11851                              |
|                          | Honorable Shalina D. Kumar                     |
| v.                       | Magistrate Judge Elizabeth A. Stafford         |
|                          |                                                |
| CHARTER TOWNSHIP OF      |                                                |
| WEST BLOOMFIELD,         |                                                |
| Defendant.               |                                                |

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(ECF NO. 18)**

---

## I.    INTRODUCTION

Plaintiff Gary Grossman's claims against defendant West Bloomfield

Township (the "Township") arise from his thwarted efforts to rehabilitate a

residence on property he owns in the Township. He sues the Township for

violations of his procedural and substantive due process rights under both

the U.S. and Michigan Constitutions, malicious prosecution, and tortious

interference with a contract. ECF No. 1-1. The parties filed cross motions for

summary judgment on all claims. ECF Nos. 17, 18. These motions were fully

briefed, and the Court heard oral argument on December 11, 2024. ECF

Nos. 20-23, 25. For the reasons discussed below, the Court grants in part and denies in part the Township's motion and denies Grossman's motion.

## II.   FACTUAL BACKGROUND

Grossman purchased the subject property located on Maple Road in the Township in 2019. ECF No. 18-2. The property included an uninhabitable residence; after purchasing the property, Grossman secured building permits necessary to rectify the structure's many existing code violations. ECF Nos. 17-3-17-5; *see also* ECF No. 18-3. Construction under those permits began and continued without incident until June 2020, when the Township's Fire Department ("WBFD") notified Grossman that WBFD emergency vehicles could not access his property because the bridge portion of the driveway connecting the residence to Maple Road[1] could not support the weight of those vehicles. ECF No. 17-6, PageID.307. After WBFD rejected Grossman's proposed alternative access routes, Grossman resurfaced the concrete deck of the bridge in October 2020. ECF No. 17-2, PageID.208-09. WBFD accepted engineering reports certifying that the repaired driveway, including the bridge, could withstand the weight of emergency vehicles. ECF No. 18-7, PageID.626-27; *see also* ECF No. 18-8. Grossman concedes he

---

[1] Grossman's driveway is part of an access easement over the neighboring property. Grossman's property has no other road access.

did not apply for permits for the driveway project. *See* ECF No. 17-22.

In December 2020, the Township Environmental Manager, John Roda ("Roda") expressed concerns about the environmental impact of the driveway repair. ECF No. 17-7, PageID.359. Without any notice to Grossman, the Township issued two Stop Work Orders ("SWOs"), in December 2020 and January 2021, in connection with the environmental impact of the work undertaken for the driveway repair. ECF No. 1; ECF No. 17-7; ECF No. 18; ECF No. 21. Grossman learned of the SWOs only when an unrelated plumbing inspection scheduled for March 5, 2021 was cancelled as a result of the SWOs. ECF No. 17-2, PageID.224. The Township acknowledged at the hearing that it never posted these SWOs at the property, never mailed or otherwise delivered them to Grossman, or even issued them in writing.

In April 2021, the Township notified Grossman by email that the SWOs "will remain in place until such time as we have approvable plans/permits for grading and bridge repair work." ECF No. 17-9, PageID.371. That same email from the Township detailed the requirements necessary to secure approvals for the after-the-fact permits, specifically Environmental Use Permits, Engineering Plan Approval, and Zoning Approval. *Id*. In May 2021, Grossman submitted an application for wetland determination, the first step

identified by the Township for lifting the SWOs, but the Township rejected it as incomplete because the application did not include permission from the owner of the adjacent property (burdened by the easement) to access that property for the determination. ECF No. 17-10, PageID.373. Attempts to communicate with the owner of the adjacent property, Dr. Imad Daouk ("Doauk"), throughout the summer of 2021 were apparently unsuccessful. *See* ECF No. 17-12, PageID.386; ECF No. 17-7, PageID.358. Because Grossman did not provide a wetland determination application that included Daouk's permission to access his property before September 15, 2021, the deadline the Township gave to Grossman, the Township followed through with its threat to elevate an enforcement action against Grossman. ECF No. 17-10, PageID.373.

The Township issued four misdemeanor citations to Grossman for violating various Township ordinances by failing to apply for permits for soil erosion, grading and draining, environmental setback features, and wetlands in connection with the repairs undertaken to the driveway bridge. ECF No. 17-11. At a May 2022 final pre-trial in the 48th District Court, Grossman pleaded responsible to four counts of double parking in exchange for the dismissal of the misdemeanor charges. ECF No. 17-12.

Following the court proceeding, Grossman, Daouk, Township

personnel, and the respective attorneys met at the property to chart a course for resolution. ECF No. 17-8, PageID.365. Roda determined that the wetland disturbance found in 2020 had resolved itself but a concern remained about the bridge area. *Id*. A meeting with a Michigan Department of Environment, Great Lakes, and Energy ("EGLE") representative was planned. *Id*. The Township appeared to be working directly with Daouk to secure permission for an engineering firm to access his property to survey it and attorneys for Grossman and the Township were negotiating "an agreement." *Id*. at PageID.367. Nevertheless, no wetland determination application was submitted, and the SWOs remain in place. ECF No. 17-22. Grossman's contractor cancelled the building permits, and Grossman filed this action against the Township for violating his procedural and substantive due process rights (Count III), malicious prosecution (Count IV), and tortious interference with a contract (Count V).[2] ECF No. 17-3; ECF No. 1-1.

## III.   ANALYSIS

### A.

Summary judgment is appropriate where the evidence in the record,

---

[2] Grossman's complaint also advances Count I, seeking declaratory relief, and Count II, seeking injunctive relief, but these claims articulate requests for remedies rather than independent causes of action. *See FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 207 (E.D. Mich. 2020).

viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516–17 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)). In reviewing a motion for summary judgment, courts are to "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessary that either party is entitled to summary judgment; it is possible that neither party meets its burden." *Peatross v. Liberty Mutual Personal Ins. Co.*, 575 F. Supp. 3d 887, 891 (E.D. Mich. 2021) (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021)). When considering the plaintiff's motion, the

evidence is viewed in the light most favorable to the defendant and the burden is on the plaintiff to show that he is entitled to judgment as a matter of law. *Id*. The opposite is true when considering the defendant's motion. *Id*.

**B.**

As a preliminary matter, the Township argues that Grossman's claims are moot because his contractor cancelled the building permits for his residence before he initiated this action. When "a court finds that it can no longer provide a plaintiff with any effectual relief, the case is generally moot." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). The Township contends that Grossman's requested declaratory relief—that the SWOs were improvidently issued—and injunctive relief—that they be rescinded—would be ineffectual because the underlying building permits for the work halted by the SWOs have been withdrawn. However, as Grossman counters and the Township does not dispute, Grossman may simply apply for new building permits, and when new permits issue, the SWOs, which remain in place, would continue to preclude any construction work on Grossman's property. Because the requested relief is required before any construction work may continue, the Township's mootness argument is without merit.

**C.**

Grossman argues that the SWOs, which halted all work on his

residence for more than two years, violated his procedural and substantive due process rights.

## 1.

Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). To establish a claim for a procedural due process violation, a plaintiff must demonstrate that he was deprived of a protected liberty or property interest and the deprivation occurred without adequate procedural protections. *Hasanaj v. Detroit Pub. Schools Community Dist.*, 35 F.4th 437, 447 (6th Cir. 2022) (citing *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) and *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017)).

Property interests are not created by the Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, whether a person has a protected property interest is traditionally a question of state law. *EJS Props. LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). In Michigan, "an individual's vested interest in the use and possession of real estate is a property interest protected by due process." *Bonner v. City of Brighton*, 848

N.W.2d 380, 391 (Mich. 2014).

"A fundamental requirement of due process of law is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (6th Cir. 2014). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal quotation omitted). The required notice must be "reasonably calculated…to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to [an action] which will adversely affect the liberty or property interests of any party ... if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adam*, 462 U.S. 791, 800 (1983). "*Mullane* does not say that the State must provide actual notice, but that it must attempt to provide actual notice." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 284 (6th Cir. 2005) (cleaned up).

The Township Ordinance sections governing code violations and stop work orders provides that after a written notice that work on any property

within the township should stop due to a violation of the Ordinance's building code, a stop work order may be issued immediately if there is an imminent danger to persons, property, or the environment from the violation. WBT Ord. 1-12. Without imminent danger, a stop work order may be issued if the property owner does not appear at the township as specified in the notice and show or demonstrate good cause for it being issued. *Id*. The notice must allow at least one full township day for the property owner's appearance. *Id.* Stop work orders must be in writing and shall be given to the owner of the property involved or posted on the property in a manner which will be in plain view. *Id*. The stop work order shall state the scope of the stop work order and the conditions under which work may resume. *Id*.

The Township concedes that the SWOs were not posted at the property or reduced to a writing delivered to Grossman. The Township does not dispute its failure to adhere to its Ordinance's notice provisions but instead argues that even if a municipality fails to fully comply with the notice requirements of its own ordinances, that failure did not deprive Grossman of his procedural due process rights. Indeed, "such a failure does not automatically translate into a deprivation of procedural due process under the United States Constitution." *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015). The Constitution demands only "that the notice as given

be reasonably calculated to alert" the recipient of the depriving action "and any avenues available for challenging those" actions. *Id*.

Yet "this does not mean that notice is a mere gesture. Instead, notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance." *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 455 (6th Cir. 2023) (internal quotations omitted).

> These general principles are well-established, but there are no bright-line rules regarding how such notice must be given or how many details it must include. Rather, the sufficiency of notice requires a fact-based analysis that seeks to determine whether the notice is reasonably calculated to inform the Plaintiffs of the allegations against them and provide a means for responding to the allegations.

*Gardner v. Evans*, 811 F.3d 843, 847 (6th Cir. 2016) (quoting *Silvernail v. Kent County*, 385 F.3d 601, 605 (6th Cir. 2004)) (cleaned up); *see also Karkoukli's*, 409 F.3d at 285 (the Constitution requires the government's effort at notice "be reasonably calculated to apprise a party of the pendency of the action").

The Township argues it provided actual notice of Grossman's violations and the issuance of the SWOs by way of telephone conversations and emails. The Township offers no authority suggesting verbal or email notice of ordinance violations or imposition of stop work orders alone

satisfies the procedural due process notice requirements. To the contrary, the cases relied upon by the Township all involved written notices delivered to the plaintiffs. *See, e.g.*, *Shoemaker*, 795 F.3d at 560 (City posted four door-hanger notices and mailed three Notification of Ordinance Violation letters in addition to telephone conversation with plaintiff about the charges levied against him); *Paeth v. Worth Twp.*, 483 F. App'x 956, 962 (6th Cir. 2012) (stop work order with instructions posted on subject property); *DiPiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (plaintiff received ticket and a mailed summons for a court appearance before he was deprived of any liberty interest).

Moreover, Grossman maintains that, even if the Township's method of notification passed constitutional muster, the content of its notice lacked the information regarding an opportunity to appeal or object necessary to satisfy procedural due process requirements. Certainly, the undocumented and undelivered SWOs offered Grossman no information on any appeal process, and the Township conceded at the hearing that there is no record of any communication with Grossman regarding the appeal process. Nevertheless, "when state-law remedies 'are established by published, generally available' materials, failure to include a statutorily required notice does not offend due process because a person 'can turn to these public sources to learn about

the remedial procedures available to him.'" *Garner Properties & Mgt. v. Charter Township of Redford*, 2017 WL 3412080, at *3 (E.D. Mich. Aug. 8, 2017) (quoting *West Covina v. Perkins*, 525 U.S. 234, 241 (1999)).

The Township argues that Grossman's means of recourse were established by published, generally available Township ordinances, and thus its failure to provide that information did not violate Grossman's due process rights. But the Ordinance it cites, West Bloomfield Township Ordinance 8-1, merely indicates that the Township adopts, administers, and enforces the Stille-DeRossett-Hale-Single-State Construction Code Act ("SCCA"), M.C.L. 125.1501, *et seq.* WBT Ord. 8-1, 8-2. The SCCA provides in relevant part that

> if the enforcing agency makes any other decision pursuant or related to this act, or the code, an interested person, or the person's authorized agent, may appeal in writing to the [construction] board of appeals. The board of appeals shall hear reasons for the decision with the enforcing agency from whom the appeal was taken not more than 30 days after submission of the appeal. Failure by the board of appeals to hear an appeal and file a decision within the time limit is a denial of the appeal for purposes of authorizing the institution of an appeal to the commission. A copy of the decision and statement of the reasons for the decision shall be delivered or mailed, before filing, to the party taking the appeal.

M.C.L. 125.1514.

In *Garner*, the court determined that the published statute the

defendant city relied upon to set forth the procedures for appeal did not actually set forth the procedures for appeal. 2017 WL 3412080, at *4. Here too, the SCCA "does not contain the procedures for the appeal, such as the proper form and/or fee." *Id*. The Township cited no other public source of remedial measures beyond its Ordinance, and the Court found none that relates to stop work orders.[3]

Without a posted or otherwise delivered stop work order conveying the means for objecting to it, and without evidence of a readily ascertainable appeal mechanism for contested stop work orders, the Township's

_____

[3] The Court found a form titled "Construction Board of Appeals Application" (the "Application form") on the Township website when it searched the phrase "board of appeals." https://wbtownship.org. The Application form was the third-listed result for that search and could also be accessed by selecting "Forms," then "Building Forms," then "Other." *Id*. The website offers no other information regarding the construction board of appeals or the process of appealing a stop work order. Although the Application form indicates the amount of the fee, as well as the number of copies of the application required, it does not appear applicable to contesting stop work orders. Rather, it explicitly and exclusively addresses "decision[s] rendered by the Building Official *in denying an application for permit*...." *See* https://cms4files1.revize.com/westbloomfieldtwp/Building/188_Construction_Board_Appeals_Application.pdf (emphasis added). Because nothing on the Application form pertains to or suggests it applies to an appeal of a stop work order, it alone cannot serve to inform a stop work order recipient of the available remedial measures. *See, e.g., Garner*, 2017 WL 3412080, at *4 (where the argued appeals process applied to a completely different type of appeal, the court determined that no reasonable person would understand it to be the relevant appeal mechanism).

undocumented SWOs did not provide Grossman with procedural due process before depriving him of his property interests.

The Township argues that, notice issues aside, Grossman's procedural due process rights were satisfied by his post-deprivation opportunity to contest the SWOs. The Township contends that a full review was available to Grossman in the 48th District Court in response to the misdemeanor charges the Township filed against him for the same ordinance violations which allegedly formed the basis for the SWOs. Grossman did not legally challenge the alleged ordinance violations in that proceeding; instead, he accepted a plea bargain, agreeing to pay fines for double parking in exchange for the dismissal of the misdemeanor charges. ECF No. 17-12.

The Township correctly notes that a party cannot create a due process violation by shunning an available review opportunity. *See Dubuc v. Green Oak Twp.*, 406 F. App'x 983, 989 (6th Cir. 2011) (holding parties who do not avail themselves of review opportunities cannot use their inaction against the defendants in claiming a violation of due process). But even assuming the criminal proceeding against Grossman had been an opportunity to challenge the SWOs on his property such that it could be deemed a procedural safeguard against a deprivation of his property interest,[4] the Court must still

---

[4] As discussed below, it is not clear to the Court that the state court criminal

assess the constitutional adequacy of that safeguard. *See Kaminski*, 865 F.3d at 347 (citing *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (internal quotation omitted). In the seminal *Mathews* case, the Supreme Court set forth four factors to consider in determining whether the process provided is sufficient:

> (1) the private interest that will be affected by the official action;
> (2) the risk of an erroneous deprivation;
> (3) the probable value, if any, of additional or substitute procedural safeguards; and
> (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*.

Neither Grossman nor the Township discuss the *Mathews* factors in their motions. The Court doubts that a building official's unreviewed determination to issue undocumented stop work orders, followed long after by a court hearing on the merits of adjacent criminal charges against the property owner—charges initiated only at the Township's discretion—could fully protect against an erroneous deprivation of Grossman's right to

---

proceeding would have squarely addressed the SWOs or the property interests they impacted.

maintain control over his home, an especially significant private interest. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 53-54 (1993) (the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents are valuable rights of property ownership with historic and continuing importance). Nevertheless, because neither party has established the absence of genuine issues of material fact or that they are entitled to judgment as a matter of law regarding the sufficiency of the process provided, neither party has met its burden for summary judgment on Grossman's procedural due process claim. Accordingly, the Court denies both motions as to this claim.

## 2.

The Fourteenth Amendment's due process protections have a substantive component as well as a procedural one. *Golf Village North, LLC v. City of Powell*, 42 F.4th 593, 598 (6th Cir. 2022). To prevail on a substantive due process claim, a plaintiff must demonstrate (1) a constitutionally protected interest that (2) was infringed upon by arbitrary and capricious state action. *Id*. at 601. The Township argues that Grossman cannot demonstrate either prong.

Regarding the first prong, as discussed above, an individual's vested interest in the use and possession of real estate is a property interest

protected by due process. *See Bonner*, 848 N.W.2d at 391.

As for the second prong, the Township argues that Grossman has not alleged and cannot supply evidence to support a finding that its actions in issuing and sustaining the SWOs were arbitrary and capricious. Indeed, the Sixth Circuit's standard for arbitrary and capricious is quite high—a plaintiff must show that there is no rational basis for the decision. *Golf Village*, 42 F.4th at 601. An action is arbitrary and capricious if it "is not supportable on any rational basis or willful and unreasoning…without consideration and in disregard of the facts or circumstances of the case." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992); *see also Johnson v. City of Saginaw*, 980 F.3d 497, 513 (6th Cir. 2020) (internal quotations omitted) (state action violative of substantive due process if it is "willful and unreasoning, shocks the conscience, was extremely irrational, or lacks some factual basis); *see also Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) ("government action amounts to a constitutional violation…if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational"). Courts have found the high standard for arbitrary and capricious action satisfied where government actions are so irrational that they do not comport with traditional ideas of fair play and decency. *See Golf Village*, 42 F.4th at

601 (citing *Paterek v. Village of Armada*, 801 F.3d 630, 648-49 (6th Cir. 2015) and *Shoemaker*, 795 F.3d at 567).

Grossman argues that the Township violated his substantive due process rights not only by issuing the SWOs but also by preventing him from curing them. The Township argues that its issuance of the SWOs was rationally related to and advanced its interest in protecting the environment from unpermitted work, but it does not directly address the basis for its continued restrictions on Grossman's property.

To avoid violating substantive due process rights, government action must have a rational basis both for its objective and for the means used to advance it. *See Williams v. City of Detroit*, 54 F.4th 895, 900-01 (6th Cir. 2022). Additionally, even if an initial restriction of property is not violative of substantive due process, continued constraint may be arbitrary and capricious. *See Estate of Moore v. City of Warren*, 2024 WL 329129, at *6 (E.D. Mich. Jan. 29, 2024) (citing *Ostipow v. Federspiel*, 2023 WL 6367753, at *3 (6th Cir. Sept. 29, 2023)).

Here, the Township continues to enforce the SWOs, having rejected Grossman's submitted application for wetland determination, the first step identified by the Township for lifting the SWOs, because he had not secured his neighbor's permission to allow the Township access to his property. This

Township decision, which made the remedial requirement contingent upon a third party over whom Grossman had no control, ostensibly precluded Grossman from any relief from the SWOs. Moreover, the Township's insistence that Grossman secure his neighbor's permission for Township personnel to access the neighbor's property before processing Grossman's application for after-the-fact environmental permits and approvals thwarted any possible redress of the alleged environmental disturbance, thus undermining the Township's objective for the issuance and continued application of the SWOs. Grossman's procured report from an EGLE officer finding that there was in fact no environmental damage to the property surrounding Grossman's driveway further undercut the basis for the continued application of the SWOs. *See* ECF No. 18-7, PageID.644.

Based on these facts, a reasonable jury could find that the Township's actions were not a rational way to advance its purported goal—to remediate the alleged environmental degradation resulting from Grossman's driveway repair—and thus were arbitrary and capricious. A reasonable fact-finder could likewise find that the Township's refusal to process Grossman's preliminary application for after-the-fact approvals and permits did not comport with the notions of fair play and decency. *See Johnson,* 980 F.3d at 515; *see also Paterek*, 801 F.3d at 648-49 (when a reasonable jury could

find that the municipal defendant acted arbitrarily and capriciously, genuine issues of material fact preclude summary judgment). Summary judgment is therefore denied on Grossman's substantive due process claim.

### D.

The Township also argues it is entitled to summary judgment on Grossman's federal claims under *Monell v. New York City Dep't of Soc. Servcs.*, 436 U.S. 658, 694 (1978). Typically, a municipality avoids § 1983 liability unless it can be shown that the unconstitutional actions it is charged with committing are the result of a municipal policy or custom. *Paterek*, 801 F.3d at 651. A plaintiff can show a policy or custom through: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Municipal "liability can be established by showing that an official with final decision making authority ratified the illegal actions." *Paterek*, 801 F.3d at 651 (internal quotations omitted); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[P]roof that municipality's…authorized decisionmaker has intentionally

deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.").

In *Paterek*, the Sixth Circuit held that officials "imbued with the primary responsibility for enforcing the [municipality]'s zoning ordinances (and determining whether an ordinance had in fact been violated)" were officials with final decision-making authority. 801 F.3d at 652. Here, even if Roda, who had responsibility for enforcing the environmental ordinances, was not a final decisionmaker, the record evidence reflects that Township Supervisor, Steve Kaplan, who otherwise would hold such authority, knew of and arguably ratified the actions the code enforcement officers. *See* ECF No. 17-2, PageID.260-62.

Grossman testified at deposition that he solicited the help of a Township board member to advocate on his behalf. *Id*. The board member reported back to Grossman that Kaplan stated that Grossman's only recourse was to sue the Township. *Id*. Grossman also testified to meeting directly with Kaplan and other Township officials to plead his case for lifting the SWOs. *Id*. Grossman testified that Kaplan mainly listened to Grossman's pleas for relief but commented that "my people are too busy to be doing all this. If this was real, this would be a seven-figure settlement." *Id*. at PageID.262. Kaplan's responses and failure to intervene could be construed

as either an acknowledgement that other Township officials, namely Roda, held final decision-making authority or as a ratification of the Township's actions against Grossman.

Based on this evidence, the Court finds that there is at least a genuine issue of material fact as to whether an official with final decision-making authority triggered or ratified the Township's actions. The Township is not entitled to summary judgment on *Monell* grounds.

**E.**

The Township argues that Grossman's malicious prosecution claim fails as a matter of law because Grossman fails to show, as he must, that the criminal proceedings against him terminated in his favor. A case resolved by way of a plea bargain does not resolve in a plaintiff's favor for purposes of a malicious prosecution claim. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001); *Nykoriak v. City of Hamtramck*, 2016 WL 558719, at *4 (E.D. Mich. Feb. 12, 2016). Contrary to Grossman's claims that the charges against him were merely dismissed, the record reflects that the misdemeanor charges were dismissed in favor of four counts of double parking, to which he agreed to accept responsibility—in other words, a plea bargain. *See* ECF No. 17-12. The Township is thus entitled to summary judgment on Grossman's malicious prosecution claim.

**F**.

The Township argues that it is entitled to governmental immunity to Grossman's tort claims under M.C.L. 691.1407. If a governmental agency commits an intentional tort, such as tortious interference with a contract, during the exercise or discharge of a governmental function, the governmental agency is immune from tort liability. *Genesee Cnty. Drain Comm'r v. Genesee Cnty.*, 869 N.W.2d 635, 642 (Mich. Ct. App. 2015). Grossman does not contest that the Township was exercising or discharging a government function in issuing and sustaining the SWOs. Accordingly, the Township is immune from Grossman's tort claims and entitled to summary judgment on the tortious interference with a contract claim.

## IV.   CONCLUSION

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Township's motion for summary judgment (ECF No. 17) and **DENIES** Grossman's motion for summary judgment (ECF No. 18). Grossman's claims for procedural and substantive due process violations (Count III) may proceed to trial; his malicious prosecution (Count IV) and tortious interference claims (Count V) are **DISMISSED WITH PREJUDICE**.

Date: February 12, 2025                s/Shalina D. Kumar
                                       Shalina D. Kumar
                                       United States District Judge