UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

                Plaintiff,

v.

THE CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

                Defendant.

Case No. 23-11851
Hon. Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, by and through its counsel, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., responds in opposition to Plaintiff's Motion for Preliminary Injunction, for the reasons stated in the accompanying Brief in Support of this Response.

WHEREFORE, Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, respectfully requests that this Honorable Court deny Plaintiff's Motion for Preliminary Injunction and grant any other relief deemed appropriate.

1

Respectfully submitted,

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER, P.C.

/s/Matthew J. Zalewski
MATTHEW J. ZALEWSKI (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

DATED:     May 9, 2025

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GROSSMAN,

    Plaintiff,      Case No. 23-11851
             Hon. Shalina D. Kumar
v.           Magistrate Judge Elizabeth A. Stafford

THE CHARTER TOWNSHIP OF
WEST BLOOMFIELD,

    Defendant.

---

## BRIEF IN SUPPORT OF
## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR
## PRELIMINARY INJUNCTION

1

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. ii

STATEMENT OF ISSUES PRESENTED.............................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF
REQUESTED ....................................................................................................... iv

STATEMENT OF FACTS .....................................................................................1

    Procedural Posture .........................................................................................4

STANDARD OF REVIEW ....................................................................................5

ARGUMENT .........................................................................................................6

    I.    Plaintiff fails to state an irreparable harm, and the relief it seeks
        through a preliminary injunction would improperly grant the ultimate
        relief that it requests.................................................................................6

    II.  Plaintiff does not have a strong likelihood of success on the merits ............8

    III. Issuance of a preliminary injunction risks harm to the public interest,
         and the balancing of harms advises toward denying the preliminary
         injunction...............................................................................................12

CONCLUSION AND REQUEST FOR RELIEF....................................................15

CERTIFICATE OF SERVICE .............................................................................15

# INDEX OF AUTHORITIES

**Cases**

*Davet v. City of Cleveland,* 456 F.3d 549 (6th Cir. 2006) ........................................11

*Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, n. 20 (1987) ..................................................................................................................11

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) .............................................. iv, 6

*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992) .........................10

*McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012) .....................................................6

*Paragon Properties v. City of Novi,* 452 Mich 568, 550 N.W.2d 772 (1996) ........10

*Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978) ..................................................................................................................10

*Sumlin v. Mt. Morris Township,* No. 21-cv-10597, 2023 WL 8423381 at *1 (E.D. Mich. Mar. 22, 2023) ............................................................................. iv, 9

*Taubman Co. v. Webfeats,* 319 F.3d 770 (6th Cir. 2003) ..................................... iv, 6

*Thermatool Corp. v. Borzym,* 227 Mich App 366 (1998) .......................................7

*Thermatool Corporation v. Borzym,* 227 Mich App 366 (1988).............................. iv

*Winter v. Natural Resources Defense Council,* 55 U.S. 7, 24 (2008) ......................6

*Ypsilanti Charter Twp. v. Kircher,* 281 Mich.App. 251 N.W.2d 761, 775 (Mich. Ct. App. 2008).......................................................................................11

## STATEMENT OF ISSUES PRESENTED

I.   Should Plaintiff's motion for preliminary injunction be denied for failure to present an irreparable harm and/or because it seeks the ultimate relief requested in the Complaint, where Plaintiff claims economic damages, and asks this Court to grant the exact relief requested in the Complaint?

   Defendant answers:     Yes
   Plaintiff answers:     No

II.   Should Plaintiff's motion for preliminary injunction be denied for failure to demonstrate a strong likelihood of success on the merits, where Plaintiffs' motion for summary judgment has already been denied?

   Defendant answers:     Yes
   Plaintiff answers:     No

III.   Should Plaintiff's motion for preliminary injunction be denied where the balancing of harms and public interest weigh in favor of denying the injunction?

   Defendant answers:     Yes
   Plaintiff answers:     No

iii

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF REQUESTED

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)

*Sumlin v. Mt. Morris Township,* No. 21-cv-10597, 2023 WL 8423381 (E.D. Mich.

Mar. 22, 2023) (ECF No. 34-1, PageID.1296)

*Taubman Co. v. Webfeats,* 319 F.3d 770, 778 (6th Cir. 2003)

*Thermatool Corporation v. Borzym,* 227 Mich App 366 (1988)

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 US 172 (1985)

**STATEMENT OF FACTS**

As this Court is aware from the prior proceedings in this case, including its resolution of the parties' cross-motions for summary judgment, this case involves a dispute regarding the Township's placement of a stop work order on building permits relating to Plaintiff's renovation of an uninhabitable home on property located at 6221 W. Maple Road in West Bloomfield Township (the "Subject Property"). Access to the Subject Property is via a long dirt drive that crosses neighboring property owned by Dr. Imad Daouk. Plaintiff has an easement to use the access drive to cross Dr. Daouk's property to access the Subject Property. The portion of the access drive on Dr. Daouk's property features a small bridge that crosses a creek.

In September 2020, Plaintiff met at the site of the bridge with Fire Marshal Byron Turnquist, who advised that the bridge needed to be repaired in order to support the weight of a firetruck and ambulance. Plaintiff then caused repairs on the bridge to be performed in October 2020, but without first obtaining permits or the permission of Dr. Daouk.

In April 2021, Turnquist again met with Plaintiff at the site of the bridge, at which time Turnquist observed that some work had been performed on the bridge, also that there had been vegetation cleared away around the bridge.

1

On December 2, 2020, Township Environmental Manager John Roda and Township Engineer Jason Rosell visited the Subject Property to inspect a sewer tap project. Plaintiff was present at the Subject Property on December 2, 2020 and spoke with Roda and Rosell. Roda and Rosell advised Plaintiff that they had observed wetland disturbance around the bridge area. In addition, Roda and Rosell advised Plaintiff of the processes and permitting that would be required for Plaintiff to correct the violations. Specifically, Plaintiff needed to apply for and obtain an after-the-fact wetland permit and grading/soil erosion & sedimentation control permit.

Plaintiff asserts that he first learned of the stop work order in March 2021 in a phone call that he made to the Township after learning that a plumbing inspection his contractor had requested had been refused due to the stop work order. Plaintiff went to the Township Hall the same day and discussed the stop work order with Township Permit Coordinator Daniel Vergun, who provided him relevant field notes and photographs. Plaintiff had numerous subsequent meetings with Township officials, who he described as making "demands," but Plaintiff never appealed the stop work order. Plaintiff was also advised through multiple e-mails – including e-mails dated April 19, 2021, May 27, 2021, and September 29, 2021 – of the steps necessary for Plaintiff to resolve the stop work order and resolve the violations that were first observed on December 2, 2020.

2

Plaintiff submitted an application for a wetland determination of the property around the bridge, but it was rejected as incomplete because he did not provide proof of permission of the underlying property owner – Dr. Daouk – to have the wetland determination conducted.

As Plaintiff never completed the wetland determination application and otherwise had not taken the steps to resolve the violations identified on December 2, 2020, Plaintiff was issued citations for work without permits in violation of the Township's ordinances regulating floodplains, environmental features, soil erosion, and grading. Plaintiff was prosecuted in the 48th District Court, where, on May 10, 2022, the Honorable Diane D'Agostini ultimately accepted Plaintiff's plea to four lesser counts of "double parking" in exchange for dismissal of the permit-related citations. It was also understood that the plea would involve working toward a side agreement that would lead to removing the stop work orders, which would start with an inspection of the bridge area with all parties the next day, and would also require the wetlands determination.

While the inspection that took place on May 11, 2022 revealed that one of two areas of wetland/erosion concern had appeared to resolve itself through the forces of nature, a second area remained in need of remediation. In the months between the May 11, 2022 inspection and the date of Plaintiff filing this lawsuit on June 30, 2023,

3

Plaintiff had not taken the steps to resolve the stop work order, and negotiations did not continue. The matter remains unresolved today.

**Procedural Posture**

Plaintiff filed the instant lawsuit in the Oakland County Circuit Court on June 30, 2023. The Township removed it to this Court on July 31, 2023. (ECF No. 1, PageID.1.) The Complaint alleged five counts: Declaratory Relief (Count I), Injunctive Relief (Count II), procedural and substantive due process (Count III), malicious prosecution (Count IV), and Tortious Interference with a Contract (Count V). Discovery closed on April 16, 2024. (2-16-24 Order, ECF No. 14, PageID.140). The parties filed cross-motions for summary judgment, which this Court resolved through an Opinion and Order dated February 12, 2025. (2-12-2025 Order, ECF No. 26, PageID.1104.)  This Court denied Plaintiff's motion in full, and granted in part the Township's motion. This Court found questions for trial on elements of the procedural and substantive due process claims, as well as on the question of *Monell* liability. The Court dismissed the malicious prosecution and tortious interference claims, and acknowledged that the declaratory and injunctive relief claims merely sought remedies without independent substantive causes of action. Thus, only Count III remains pending for trial.

The Court held a status conference with the parties' counsel on February 26, 2025. During the conference, Plaintiff's counsel communicated his intent to file the

4

instant motion for leave for a preliminary injunction. The Court also referred this matter to a settlement conference with Magistrate Judge Stafford, which is now scheduled to take place on June 6, 2025. In addition, on April 18, 2025, Plaintiff filed a motion for leave to file an amended complaint to add a takings claim (ECF No. 32), which the Township has opposed (ECF No. 34), and is currently pending before the Court.

Plaintiff filed the instant motion for a preliminary injunction on April 18, 2025. (ECF No. 31.) The proposed injunction asks for a sweeping "preliminary" injunction to "lift the Stop Work Orders that are placed on the Subject property, require that Defendant must issue construction permits to allow Plaintiff to perform the rehabilitative work, to require Defendant to conduct building inspections, and once the inspected work has been approved, to promptly issue a Certificate of Occupancy for the Subject Property." (Plaintiff's Brief, ECF No. 31, PageID.1149.) This relief is essentially identical to the ultimate relief sought by Plaintiff in the Complaint. (See, e.g. Complaint, ECF No. 1-1, PageID.26-27.)  The Township now opposes the motion as failing to satisfy multiple standards of the preliminary injunction analysis.

## **STANDARD OF REVIEW**

It is well-established that "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council,* 55 U.S.

5

7, 24 (2008). Thus, "[t]he party seeking a preliminary injunction bears the burden of justifying such relief." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). When deciding whether to issue a preliminary injunction, the Court considers the following factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

## ARGUMENT

**I.     Plaintiff fails to state an irreparable harm, and the relief it seeks through a preliminary injunction would improperly grant the ultimate relief that it requests.**

Plaintiff's claim for injunctive relief should fail at the outset based on the fact that his alleged harm is not irreparable, and not appropriate to be issued at the preliminary injunction stage. First, Plaintiff has pled a claim for economic damages. Where "any damages would be economic in nature and fully compensable monetarily," there is "no potential for irreparable harm." *Taubman Co. v. Webfeats,* 319 F.3d 770, 778 (6th Cir. 2003).

Additionally, the substance of Plaintiff's request for preliminary injunctive relief is virtually identical to his request for relief should he prevail on the merits of his claim. (Compare Motion Request for Relief, ECF No. 31, PageID.11149 with

6

Complaint, ECF No. 1-1, PageID.26-27.) Where granting a preliminary injunction would result in granting a plaintiff "the relief that [it] would be entitled to if [it was] to prevail in a trial on the merits," the preliminary injunction should be denied. *Thermatool Corp. v. Borzym,* 227 Mich App 366, 339 (1998).

Indeed, to grant Plaintiff the ultimate relief that he seeks at the preliminary injunction stage would impose "an injury on defendants that cannot be undone if they should prevail at trial" *Id.* As further explained in the balancing of harms section, *infra,* to enjoin the enforcement of the stop work order at this point and allow Plaintiff to proceed with the project would likely create a situation in which Plaintiff invests more money in the renovation project, pulls additional permits, and potentially enters new contracts with contractors – all of which would be halted again if this case is resolved in the Township's favor at trial, and which could potentially become independent subjects of future litigation, thus exposing the Township to further risk of exposure to liability beyond those relating to the stop work order in this case. Moreover, the extraordinary speculative relief that Plaintiff seeks in this preliminary injunction relating to permits, inspections, and a long-in-the-future request for Certificate of Occupancy far exceeds the narrow focus of this lawsuit, asks for relief relating to speculative future disputes, and essentially asks this Court to exercise superintending control over the Township's administration of its building code despite the fact that, if Plaintiff has future issues with the Township, he would

7

have administrative remedies under the applicable state codes. As such, granting such broad relief at the preliminary injunction stage would both exceed the scope of relief indicated by the Complaint, and frustrate the Township's state-mandated role as the administrator of the building codes.

**II.    Plaintiff does not have a strong likelihood of success on the merits.**

As noted, *supra,* the applicable standard of review for a preliminary injunction requires an evaluation of whether the movant has a "strong" likelihood of success on the merits. It is notable that Plaintiff's argument on this element shies away from use of the word "strong" in favor of simply advocating a "likelihood" of success. Nor is it fair to characterize Plaintiff's likelihood of success as "strong" at this point. This Court has already ruled on the parties' cross-motions for summary judgment, and the only remaining claims are the procedural and substantive due process claims in Count III of the Complaint. This Court clearly did not find either party's arguments to be so "strong" as to warrant success at the summary judgment stage, but instead has set issues relating to these claims for trial based on the possibility that a "reasonable" juror could go in either direction. Thus, at this point, the potential result is, at best, a tossup.

Plaintiff alternatively claims that he is likely to succeed on his newly proposed takings claim, which, as of the date of this response, the Court has not granted leave for Plaintiff to add to the Complaint. Therefore, the proposed takings claim is not a

8

proper basis upon which to base its request for the instant preliminary injunctive relief. As argued in the Township's response to Plaintiff's Motion for Leave, Plaintiff should not even be construed as having a strong likelihood (or any likelihood) of success on being granted leave to amend, let alone in litigating the claim. Coming as it does after discovery has closed, after summary judgment motions have been decided, and without reference to any new facts or circumstances of actions by the Township that Plaintiff was unaware of at the time that Plaintiff filed the original Complaint, the motion for leave is of the type that this Court has previously denied as untimely and prejudicial to a defendant. *See, e.g., Sumlin v. Mt. Morris Township,* No. 21-cv-10597, 2023 WL 8423381 at *1 (E.D. Mich. Mar. 22, 2023) (ECF No. 34-1, PageID.1296), citing *Duggins v. Steak 'N Shake,* 195 F.3d 828, 834 (6th Cir. 1999).

Even if the takings claim were to be evaluated on the merits, Plaintiff has a low likelihood of success. Before a takings claim can be ripe, Plaintiff must show that the government entity charged with making a decision has reached a final decision regarding the application of the regulations to the property at issue. *See, e.g., Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir. 2002), *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 US 172 (1985) (reversed on other grounds), *Electro-Tech, Inc. v. H.F. Campbell, Co,* 433 Mich. 57, 62, 445 N.W.2d 61, 62-63 (1989), *Paragon Properties v. City of Novi,* 452 Mich.

568, 576-577, 550 N.W.2d 772, 775 (1996). Here, while Plaintiff complains about the issuance of the stop work order, he had the opportunity to pursue an appeal to the Township's board of appeals for a final decision on the matter, but did not do so. Likewise, to the extent that he takes issue with the Township's application of the environmental and wetlands provisions of its general ordinances and/or Zoning Ordinance, Plaintiff had the opportunity to seek a final decision in the form of an appeal and/or interpretation from the Township's Environmental Commission and/or Zoning Board of Appeals, which he did not no. Accordingly, a takings claim with respect to any of these subjects is not ripe.

Even if Plaintiff were construed as having a live takings claim that invokes this Court's subject matter jurisdiction, he has a low likelihood of success on the substantive merits. A regulatory taking does not occur unless it denies a property owner "all economically beneficial or productive options for its use." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016 (1992). The economic viability of the land is evaluated under a balancing test that considers: 1) the character of the government's action, 2) the economic impact of the regulation on the property; and 3) the extent to which the government's action has interfered with direct investment-backed expectations. *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 124 (1978). Notably, neither injunctive relief nor compensation for a taking is available in relation to the abatement of illegal activity through nuisance

10

abatement proceedings. *Dearborn Lodging, Inc. v. City of Dearborn,* No. 11-10057, 2012 WL 1079892 at *8 (E.D. Mich. March 30, 2012), citing *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 491, n. 20 (1987), *Davet v. City of Cleveland,* 456 F.3d 549, 553 (6th Cir. 2006), and *Ypsilanti Charter Twp. v. Kircher,* 281 Mich.App. 251, 761 N.W.2d 761, 775 (Mich. Ct. App. 2008).

Here, Plaintiff cannot show that the stop work order or the enforcement of the environmental/wetlands ordinances deprive Plaintiff of all economic viability or marketability of the property. If Plaintiff simply followed the path that the Township outlined for resolving the stop work order, he could be on his way to proceeding with the renovation. Moreover, insofar as the Township is enforcing its ordinance provisions relating to work without permits and disturbances of wetlands/environmentally sensitive areas, it is exercising its power of nuisance abatement and to address illegal activity, which, as noted *supra,* does not support a takings claim.

Ultimately, as Plaintiff does not have a "strong" likelihood of success either on its existing due process claims, or his hoped-for takings claim, his motion for preliminary injunction should be denied.

11

**III.    Issuance of a preliminary injunction risks harm to the public interest, and the balancing of harms advises toward denying the preliminary injunction.**

The remaining two preliminary injunction factors are closely aligned. Here, the relief that Plaintiff seeks would not preserve the status quo, but would disrupt it. Plaintiff submits that there are no third-parties that would be harmed by the injunction, but that is not accurate. First, recall that the work that Plaintiff performed without permits and in disruption of the wetlands and environmentally sensitive areas is not even on his property; rather, it is within an easement that he has over his neighbor's property. To lift the stop work order that derives from the Township's effort to bring into compliance Plaintiff's work outside of the permits that he had for the house renovation (and which he alternately has claimed he had a right to due because of the rights afforded by the access easement to his property, but simultaneously claims is not his responsibility because it is really on Dr. Daouk's property), harms Dr. Daouk's interest in ensuring that Plaintiff has not caused his underlying property to be in compliance with the Township's ordinances. It also harms the public interest insofar as the Township's wetlands and environmental ordinances are specifically geared toward ensuring the public, health, safety, and welfare is not disturbed by unlawful activities in wetlands and environmentally sensitive areas.

12

More generally, injunctive relief at this stage would harm the Township's enforcement of its ordinances, and its administration of the state's building code, which expressly allows the Township to stop work on a permit for a property where work is being conducted outside of the scope of that permit. Here, work in wetlands and environmentally sensitive areas was not within the scope of Plaintiff's permit for work to a structure on Plaintiff's property. As noted in the statement of facts, *supra,* Plaintiff has been told repeatedly what process he needs to follow in order to resolve the stop work order, but he simply refuses to follow that process. Preliminary injunctive relief that would grant Plaintiff the ultimate relief he seeks in this case would give him freedom to escape compliance with that process that is grounded in the Township's ordinances that exist for the benefit of the public health, safety, and welfare.

Insofar as injunctive relief is an equitable remedy, the Court should also find that, given the timing of this motion, the equities weigh in the Township's favor toward denying the motion. Plaintiff complains that the Township has not done anything to lift the stop work order during the pendency of this lawsuit. But, aside from having the ability to act on the Township's path for resolving the stop work prior to filing the lawsuit, Plaintiff could have pursued this preliminary injunction motion as early as two years ago, when Plaintiff first filed the lawsuit. Instead, he waited until the eve of trial. While Plaintiff claims that the urgency is created by the

13

potential foreclosure and sale of his property by his lender, this potential contingency was foreseeable two years ago; indeed, the Complaint acknowledged that Plaintiff "had contractual relationship with lending institutions," (ECF No. 1-1, PageID.30), which Plaintiff presumably knew could result in foreclosure if Plaintiff stopped paying on the loan or discontinued renovation activities that were a condition of the loan. For whatever reason, like the takings claim that is the subject of his Motion for Leave to Amend, Plaintiff sat on his rights and chose not to pursue injunctive relief until nearly two years later, and only after its attempt at summary judgment was defeated. In light of his dilatory behavior, Plaintiff should not now be rewarded with the ultimate relief he seeks in connection with this late filed motion for "preliminary" relief.

Finally, the Township cross-references its arguments in Argument Section I, *supra,* with respect to the scope of the relief requested in this Motion. If this Court is ultimately inclined to grant some form of preliminary injunctive relief, the Township submits that an order as broad as Plaintiff has proposed is inappropriate. The Township submits that, any Order for preliminary injunctive relief should be limited to the circumstances actually at issue in this case, and not enjoin the Township from administering future building permits, inspections, and Certificate of Occupancy review in the normal course of business with reference to its obligations under state law.

14

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Defendant, CHARTER TOWNSHIP OF WEST BLOOMFIELD, respectfully requests that this Honorable Court DENY Plaintiff's Motion for Preliminary Injunction and grant any other relief deemed appropriate.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER, P.C.

/s/Matthew J. Zalewski
MATTHEW J. ZALEWSKI (P72207)
Attorneys for Defendant
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
(248) 489-4100
mzalewski@rsjalaw.com

DATED:    May 9, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Dawn Hallman

15